UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| LINEX TECH INC, | No. C 13-00159 CW (MEJ) |
| Plaintiff, | **DISCOVERY ORDER RE: PROTECTIVE ORDER** |
| v. | (Dkt. No. 142) |
| HEWLETT PACKARD CO, *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

On April 11, 2013, pursuant to Judge Claudia Wilken's Standing Order, the parties in this matter filed a joint discovery letter detailing a dispute over the terms of the protective order that will govern discovery and source code in this action.[1] Dkt. No. 142. On April 16, 2013, Judge Wilken referred the matter to the undersigned for discovery purposes. Dkt. No. 143. After considering the parties' positions, the Court **ORDERS** that Defendants' proposed Protective Order is adopted and will govern in this matter.

## II. OVERVIEW

In the letter, Linex states that since December 2012, the parties have been attempting to agree on the terms of a protective order. Letter at 1. Linex proposed – and at some point thereafter, Defendants agreed – that the protective order entered in a related International Trade Commission investigation involving the same parties and non-parties, under which both parties and non-parties produced documents and/or source code, should serve as the model for drafting the protective order

---

[1] On April 29, 2013, Qualcomm Atheros, Inc., filed a letter raising its concerns regarding the parties proposed protective orders. Dkt. No. 166. Atheros explains that Linex has served it with a subpoena for documents, source code, and deposition testimony. *Id.* at 1. The Court has reviewed Atheros' letter, but finds its concerns sufficiently addressed by Defendants in the parties' joint letter.

1  in this action. *Id.* While the parties have agreed to certain modifications to the protective order, they
2  disagree as to seven substantive modifications that Linex seeks to implement. Defendants oppose
3  Linex's proposed protective order, arguing that it weakens key provisions aimed at ensuring the
4  confidentiality and security of source code. *Id.* at 5. Defendants also contend that Linex has failed to
5  involve the third parties whose confidential information is at stake. *Id.* at 6. Thus, Defendants urge
6  the Court to adopt their protective order which mirrors that entered in the ITC investigation.
7  Defendants advance that, "[b]y using source code provisions in Defendants PO that the third-party
8  suppliers have previously agreed to, Defendants seek to avoid burdening this Court with needless
9  third-party motion practice and protective order disputes." *Id.*
10      The Court will review each of the seven areas of contention in turn.

### III. ANALYSIS

12      First, Linex seeks a finding from the Court that the discovery from the ITC investigation shall
13  be treated as produced or disclosed in this action. *Id.* at 2. Linex represents that "[t]he parties agree
14  that the ITC discovery is relevant in this case, and Linex submits that such discovery should be
15  deemed as produced or disclosed here." *Id.* Defendants, however, argue that, "[u]nder the terms of
16  the ITC PO, the parties to the ITC investigation cannot consent to reusing in this case confidential
17  information produced by third parties at the ITC – only those third parties may consent to re-use." *Id.*
18  at 6. Rather, Defendants contend that there is no dispute that discovery that *the parties* previously
19  produced in the ITC investigation should be deemed produced in this action. *Id.* The Court has
20  considered the parties' arguments and agrees with Defendants that the ITC protective order does not
21  allow third-party discovery to be deemed produced or disclosed in this lawsuit. However, because it
22  is undisputed that the ITC protective order does not impose the same limitation on discovery
23  produced by the parties, such discovery may be deemed as produced in this case. Accordingly, the
24  Court rejects Linex's proposed language and adopts Defendants' proposed provisions for the section
25  entitled "Information Produced in ITC Action." *See* Letter, Ex. 1 at 4.
26      Second, Linex seeks to include a provision increasing the number of individuals who may
27  review source code from four to ten. *Id.* at 2; Ex. 1 at ¶ 17(a). Linex submits that because many

additional products and relevant chipsets are at issue in this case, it expects that at least four of its outside counsel will need to review the relevant source code and the prior cap of four individuals will hinder its ability to have its outside counsel and experts effectively review the code. Defendants oppose increasing the number of individuals who may review the code, arguing that in the ITC investigation, Linex was able to manage the review of source code with four individuals and none of the chip suppliers objected to this limit. *Id*. at 6-7. At this juncture, the Court agrees with Defendants that Linex has failed to present a persuasive basis for its proposed modification, particularly in light of the fact that this cap did not inhibit Linex from effectively completing its source code review in the ITC investigation. If the cap later proves unworkable in this case, Linex may move for reconsideration of this ruling. Accordingly, the Court rejects Linex's proposed language in ¶ 17(a).

Third, Linex seeks to include language increasing the pages of source code that can be printed. *Id*. at 2. The ITC protective order stated that printed portions that exceed 50 continuous pages or 1,000 total pages shall be rebuttably presumed excessive and not done for a permitted purpose. *Id*. Linex proposes modifying those numbers to 100 and 1,500 pages, respectively. *Id*. In support, it argues that during the ITC investigation, it reviewed source code related to hundreds of accused products and relevant chipsets and printed thousand of pages of code. *Id*. Because of the page limitations, Linex argues that it will only be able to print limited portions of the code. *Id*. It also argues that because additional products and relevant chipsets are at issue in this case, it will need to print additional source code to present its case for those new products. *Id*. Defendants, however, contend that by increasing the limits on printed pages, Linex is simply attempting to bypass the protective order restrictions that prevent a party from reviewing source code outside the secure source code room. *Id*. at 7. They argue that this both frustrates the confidentiality provisions in the protective order and increases the risk of a security breach. *Id*. The Court has carefully considered the parties' positions and agrees with Defendants that Linex's proposed modification undermines the protective order's restrictions preventing a party from reviewing source code outside the secure room and weaken confidentiality protections. The Court therefore rejects Linex's proposed numbers and adopts the caps previously used in the ITC protective order, as submitted by Defendants in ¶ 17(g).

3

Fourth, Linex seeks to insert language excluding copies of source code made for use at trial from the five-copy limit on printed source code. *Id*. at 3. It argues that the five-copy limit "strains" its ability to utilize source code during discovery and hinders its ability to present evidence at trial because it must provide copies of trial exhibits to the Court, counsel, and relevant witnesses. *Id*. Defendants argue that trial exception is unreasonable because it provides no limit on the number of copies that can be made at trial and removing the restriction jeopardizes the security of the confidential source code. *Id*. at 7. Defendants also argue that Linex did not object to using five copies of source code at the ITC hearing, which it contends does not differ significantly from trial. *Id*. After considering the parties' arguments, the Court agrees with Defendants that Linex has not presented a persuasive reason to exclude the cap on printed copies of source code for purposes of trial. The cap previously proved workable in the ITC hearing and increasing the number of copies of printed source code increases the potential for unwarranted disclosure. The Court therefore strikes the phrase "or trial" from ¶ 17(h).

Fifth, Linex seeks to insert language allowing a receiving party to create electronic images or copies of source code for presentation at trial in the form of demonstrative exhibits without first receiving express written permission from the producing party. *Id*. at 3; Ex. 1 at ¶ 17(j). Linex contends that by creating demonstrative exhibits, parties can present discrete and relevant portions of the code to efficiently and more effectively discuss the function and relevance of the code. *Id*. at 3. Its proposed language allows parties to do this without seeking permissions from the producing party for purposes of presenting evidence at trial for the benefit of the fact finder. Defendants argue that this is just another attempt by Linex to bypass the five-copy limit, which also increases the risk of inadvertent exposure of confidential source code, especially given that the copy would be electronic in form and easily transmittable. *Id*. at 7-8. The Court agrees with Defendants and strikes Linex's proposed language in ¶ 17(j).

Sixth, Linex seeks to modify the ITC protective order with respect to use of source code during depositions. *Id*. at 3-4; Ex 1 at ¶ 17(k). Its proposed provision indicates that "the party taking the deposition will retain one hard copy of the exhibit and will serve other parties as required." *Id*. at

4. It also provides that "the Producing Party shall make available a laptop, for use by the deponent, containing the CSC and having tools that are sufficient for viewing and searching the CSC. Depositions that require use of a laptop containing the CSC shall take place at the office of the Producing Party or another location agreed to by the Producing Party." *Id*. In support of this language, Linex argues that requiring the receiving party to identify the source code it wishes to use in advance of the deposition invades work product and its proposed modification remedies this by allowing the receiving party to bring copies of the code for use during a deposition. *Id*. at 4. It also argues that a witness will often refer to several source code modules to understand and provide context regarding other modules. *Id*. By requiring a producing party-provided laptop with the source code for the witnesses' use at depositions, it ensures that the witness will be able to testify as to the relevance of that portion of code even if those portions have not been printed and made available to the witness. *Id*. Defendants object to Linex's proposal to allow the party taking the deposition to retain a hard copy of any deposition exhibit containing source code. *Id*. at 8. They argue that the producing party has more incentive than the receiving party to protect its own source code and should therefore have control over the source code at all times. *Id*. Defendants do not address Linex's proposed language requiring the producing party to provide a laptop with source code and search tools for the deponent's use. With respect to the language allowing the receiving party to retain one hard copy of the exhibit, the Court agrees with Defendants that concerns regarding preserving confidentiality weigh against this procedure. As to the language regarding use of the laptop, while Defendant has not raised any specific objection to this provision, the Court is unpersuaded by Linex's proffered justification for this requirement. Linex did not indicate that it was a recurring problem during the ITC investigation. The Court therefore rejects Linex's proposed provision and adopts Defendants' language for ¶ 17(k) regarding depositions.

Finally, Linex seeks to modify the procedure for monitoring review of source code. *Id*. at 4. The ITC protective order and Supplement allow a producing party to monitor source code review by sitting in with the reviewing party during the source code review or by observing the review through a glass window. *Id*. Linex contends that to preserve work product conversations, any monitoring of

5

the source code review should be limited to observing the review through a glass window. *See* Ex. 1 at ¶ 17(l). Defendants object to the modification on the grounds that the ITC protective order provides that the producing party, not the receiving party, dictates where the review occurs, and because some of the parties require that the source code be kept in a windowless room for security purposes. *Id.* at 8. As to Defendants' first ground for objection, the Court does not see anything in Linex's proposed language modifying that the producing party dictates where the review occurs. However, as to Defendants' second ground, because some of the parties require their source code to be kept in a windowless room, the option of having a person sit in the room during the review allows the review to occur without interfering with the producing party's security measures. The Court therefore rejects Linex's proposal to limit the method of monitoring review to a glass window.

## IV. CONCLUSION

For the reasons set forth above, the Court **ORDERS** that Defendants' proposed Protective Order shall be entered in this matter.

**IT IS SO ORDERED.**

Dated: April 30, 2013

_____
Maria-Elena James
United States Magistrate Judge