**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LINEX TECHNOLOGIES, INC.,<br><br>Plaintiff,<br>v.<br><br>HEWLETT-PACKARD COMPANY,<br>APPLE COMPUTER INC.,<br>ARUBA NETWORKS, INC.,<br>MERU NETWORKS, AND<br>RUCKUS WIRELESS,<br><br>Defendants. | Civil Case No.: 4:13-CV-00159-CW<br><br>**AMENDED STIPULATED PROTECTIVE ORDER REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIALS** |

Pursuant to Federal Rule of Civil Procedure 26(c), and in order to facilitate the production and receipt of information during discovery in the above-referenced action, Plaintiff Linex Technologies, Inc. ("Linex") and Defendants Apple Inc. ("Apple"), Hewlett-Packard Company ("HP"), Aruba Networks, Inc. ("Aruba"), Meru Networks, Inc. ("Meru"), and Ruckus Wireless, Inc. ("Ruckus") (collectively "Defendants") stipulate, subject to the approval of the Court, to entry of the following amended order for the protection of documents, testimony, or information containing or reflecting confidential, proprietary, trade secret and/or commercially sensitive information that may be produced or otherwise disclosed by a party or by non-parties during the course of this action. Designations made under this Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below.

**PURPOSES AND LIMITATIONS**

The parties acknowledge that they desire to use the Order No. 1 Protective Order entered on June 9, 2011 in Investigation No. 337-TA-775 at the International Trade Commission, the Supplement to Protective Order entered on October 11, 2011 in Investigation No. 337-TA-775, and the August 26, 2011 Stipulation Among Private Parties in Investigation No. 337-TA-775 as precedent for the provisions in this Order, and the further modification that Section 3(iii) of this

Order ("Discovery Material Designated As "Confidential Business Information") applies to retained experts, and not just to technical experts.

The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery, or in the course of making initial or supplemental disclosures under Rule 26(a). The parties further acknowledge that this Order does not entitle them to file Protected Material under seal. Without written permission from the Producing Party or a court order secured after appropriate notice to all interested persons, a party may not file in the public record in this action any Protected Material. A party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5 and General Order 62. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5 and General Order 62, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5(d) and General Order 62 is denied by the court, then the Receiving Party may file the Protected Material in the public record pursuant to Civil Local Rule 79-5(e) unless otherwise instructed by the court. Nothing in this section shall in any way limit or detract from this Order's requirements as to Source Code.

Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for this case or any related appellate proceeding, and shall not be used directly or indirectly for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function. Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

Cross-Production of Defendant Confidential Material. No Defendant is required to produce its Protected Material to any other Defendant or Defendants, but nothing in this Order shall preclude such production. Notwithstanding the provisions of this Protective Order, to the extent that any one of the Defendants in this litigation provides Protected Material under the

terms of this Protective Order to Plaintiff, Plaintiff shall not disclose one Defendant's Protected Material to any other Defendant or Defendants, without the express prior written consent of the Defendant that produced the Protected Material. To the extent that a party makes a filing with the Court that includes the Protected Material of two or more parties or third-parties, the filing party shall move to file such Protected Material under seal and shall only disclose the materials filed under seal to the outside counsel of the parties or third-parties whose Protected Material was included in the filing. Outside counsel who receive Protected Material pursuant to this provision may not disclose the Protected Material to anyone other than necessary secretarial and support personnel assisting such counsel, or expert witnesses who are authorized to access Protected Material under the terms of this Protective Order. This Order does not confer any right to any one Defendant to access the Protected Material of any other Defendant.

Information Produced in ITC Action.

Protected Material produced in Investigation No. 337-TA-775 at the International Trade Commission by any Party to this case shall be treated as if it had been produced in this case without any need for re-designation or re-production, and that all outside counsel of record in this case shall have access to Protected Material produced by any Party in Investigation No. 337-TA-775, regardless of whether such outside counsel had access to such materials in Investigation No. 337-TA-775. To the extent that any one of the Defendants in this litigation provided Protected Material to Plaintiff under the terms of the protective order in Investigation No. 337-TA-775, Plaintiff shall not share that material with the other Defendants in this litigation, absent express written permission from the producing Defendant. This paragraph does not confer any right to any Defendant to access the Protected Material of any other Defendant produced in Investigation No. 337-TA-775. Whenever Outside Counsel for a Defendant requests consent to access the Protected Material of any other Defendant or Defendants produced in Investigation No. 337-TA-775 on an Outside Attorneys' Eyes Only basis, consent shall not be unreasonably withheld. This paragraph does not confer any right to any Party or Outside Counsel to access the Protected Material of any third party produced in

Investigation No. 337-TA-775, absent express written consent of the third party which supplied the Protected Material in Investigation No. 337-TA-775, or an order of the Court.

## DEFINITIONS

(a) Confidential Business Information means information which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either (i) impairing the Commission's Court's ability to obtain such information as is necessary to perform its statutory functions; or (ii) causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission Court is required by law to disclose such information.

(b) "Discovery Material" means all items or information, including from any non-party, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced or disclosed by a Producing Party, as defined below, in connection with discovery or Rule 26(a) disclosures in this case.

(c) "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party and (ii) partners, associates, and staff of such counsel to whom it is reasonably necessary to disclose the information for this litigation.

(d) "Party" means any party to this case, including all of its officers, directors, employees, consultants, retained experts, and outside counsel and their support staffs.

(e) "Producing Party" or "supplier" means any Party or non-party that discloses or produces any Discovery Material in this case.

(f) "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER" or

"CONFIDENTIAL SOURCE CODE – OUTSIDE ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER," as provided for in this Order. Protected Material shall not include: (i) advertising materials that have been actually published or publicly disseminated; and (ii) materials that show on their face they have been disseminated to the public.

(g) "Receiving Party" means any Party who receives Discovery Material from a Producing Party.

(h) "Confidential Source Code" or ("CSC") refers to all human-readable programming language text that defines software, firmware, or electronic hardware descriptions, and shall include, without limitation: computer code; scripts; assembly; object code; source-code listings and descriptions of source code; object-code listings and descriptions of object code; Hardware Description Language (HDL); Register Transfer Level (RTL) files describing any portion of the hardware design of any ASIC or other chip; similarly-sensitive implementation details; files containing text written in "C," "C++," assembler, VHDL, Verilog, and/or digital signal processor (DSP) programming languages; "include files"; "make" files; link files; any other human-readable text files used in the generation and/or building of any software that is directly executed on a microprocessor, microcontroller, or DSP; and accompanying documentation.

**DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL BUSINESS INFORMATION"**

1. Confidential Business Information is information which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either (i) impairing the Court's ability to obtain such information as is necessary to perform its statutory functions; or (ii) causing substantial harm to the competitive

position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Court is required by law to disclose such information.

2. (a) Any information submitted, in discovery or in a pleading, motion, or response to a motion either voluntarily or pursuant to an order, in this action, which is asserted by a supplier to contain or constitute Confidential Business Information shall be so designated by such supplier in writing, or orally at a deposition, conference or hearing, and shall be segregated from other information being submitted. Documents shall be clearly and prominently marked on their face with the legend: "[SUPPLIER'S NAME] CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER," or a comparable notice. Such information, whether submitted in writing or in oral testimony, shall be treated in accordance with the terms of this Protective Order.

(b) The Court may determine that information alleged to be confidential is not confidential, or that its disclosure is necessary for the proper disposition of the proceeding, before, during or after the close of trial. If such a determination is made by the Court, opportunity shall be provided to the supplier of such information to argue its confidentiality prior to the time of such ruling.

3. In the absence of written permission from the supplier or an order by the Court, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than: (i) outside counsel for parties to this action, including necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) retained experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of the products, devices or component parts which are the subject of this investigation); (iv) the Court and its staff.

4. Confidential Business Information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(i)[1] and (iii) unless he or she shall have first read this Order and shall have agreed, by executing the Acknowledgment and Agreement to be Bound By Protective Order in the form attached as Exhibit A: (i) to be bound by the terms thereof; (ii) not to reveal such Confidential Business Information to anyone other than another person designated in paragraph 3; and (iii) to utilize such Confidential Business Information solely for purposes of this action.

5. If the Court orders, or if the supplier and, if applicable, all other entities whose confidential business information is contained in the supplier's confidential business information agree, that access to, or dissemination of information submitted as Confidential Business Information shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this Order, and such persons shall be considered subject to it, unless the Court finds that the information is not Confidential Business Information as defined in paragraph 1 hereof.

6. Any Confidential Business Information submitted to the Court in connection with a motion or other proceeding within the purview of this action shall be submitted to the Court via a proper motion to seal pursuant to Civil Local Rule 79-5 and General Order 62. Any portion of a transcript in connection with this action containing any Confidential Business Information submitted pursuant to paragraph 2 above shall be filed under seal. When any Confidential Business Information submitted in accordance with paragraph 2 above is included in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such confidential portions and separately label them "[SUPPLIER'S NAME] CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO

[1] Necessary secretarial and support personnel assisting counsel need not sign onto the protective order themselves because they are covered by counsel's signing onto the protective order.

PROTECTIVE ORDER." Before a court reporter or translator receives any such information, he or she shall have first read this Order and shall have agreed in writing to be bound by the terms of this Order by executing the Acknowledgement and Agreement to be Bound by Protective Order in the form attached as Exhibit A.

7. Publicly Known Material. The restrictions upon, and obligations accruing to, persons who become subject to this Order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Court rules, after an opportunity for hearing, was publicly known at the time it was supplied to the Receiving Party or has since become publicly known through no fault of the Receiving Party.

8. Challenging Designations of Confidential Business Information. If, while this action is before the Court, a party to this Order who is to be a recipient of any Confidential Business Information submitted in accordance with paragraph 2 disagrees with respect to such a designation, in full or in part, it shall notify the supplier in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this Order. If prior to, or at the time of such a conference, the supplier withdraws its designation of such information as being subject to this Order, but nonetheless submits such information for purposes of the action, such supplier shall express the withdrawal, in writing, and serve such withdrawal upon all parties and the Court. If the recipient and supplier are unable to concur upon the status of the subject information submitted as Confidential Business Information within ten days from the date of notification of such disagreement, any party to this action may raise the issue of the designation of such a status to the Court who will rule upon the matter. The Court may *sua sponte* question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

9. Notice of Disclosure. No less than ten days (or any other period of time designated by the Court) prior to the initial disclosure to a proposed expert of any Confidential Business Information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and detailed

employment history to the supplier. If the supplier objects to the disclosure of such Confidential Business Information to such proposed expert as inconsistent with the language or intent of this Order or on other grounds, it shall notify the recipient in writing of its objection and the grounds therefor prior to the initial disclosure. If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the supplier shall submit a motion raising the issue with the Court within seven (7) days. The submission of such Confidential Business Information to such proposed expert shall be withheld pending the ruling of the Court.

10. Inadvertent Disclosure Not Authorized by Order. If Confidential Business Information submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this Protective Order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the supplier and the Court and, without prejudice to other rights and remedies of the supplier, make every effort to prevent further disclosure by it or by the person who was the recipient of such information.

11. Final Disposition. Upon final termination of this case, each recipient of Confidential Business Information that is subject to this Order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 above, including all copies of such matter which may have been made. Alternatively, the parties subject to this Order may, with the written consent of the supplier, destroy all items containing Confidential Business Information and certify to the supplier (or his counsel) that such destruction has taken place. This paragraph shall not apply to the Court, which shall retain such material pursuant to statutory requirements and for other record keeping purposes, but may destroy those additional copies in its possession which it regards as surplusage. For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals.

12. If any Confidential Business Information which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this action, such a nonparty shall be considered a "supplier" as that term is used in the context of this Order.

13. Each nonparty supplier shall be provided a copy of this Order by the party seeking information from said supplier.

**DISCOVERY MATERIAL DESIGNATED AS CONFIDENTIAL SOURCE CODE - OUTSIDE ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER**

14. Confidential Source Code" ("CSC") refers to all human-readable programming language text that defines software, firmware, or electronic hardware descriptions, and shall include, without limitation: computer code; scripts; assembly; object code; source-code listings and descriptions of source code; object-code listings and descriptions of object code; Hardware Description Language (HDL); Register Transfer Level (RTL) files describing any portion of the hardware design of any ASIC or other chip; similarly-sensitive implementation details; files containing text written in "C," "C++," assembler, VHDL, Verilog, and/or digital signal processor (DSP) programming languages; "include files"; "make" files; link files; any other human-readable text files used in the generation and/or building of any software that is directly executed on a microprocessor, microcontroller, or DSP; and accompanying documentation. CSC is a form of, and shall be afforded all of the same protections as, "Confidential Business Information" as defined in Paragraph 1 hereto unless otherwise provided in Paragraphs 14-22. The restrictions herein on CSC do not apply to publicly-available source code (e.g., code available as open source code).

15. To the extent that a party wishes to obtain access to any other party's (or a third party's) CSC, the following procedures may apply at the option of the Producing Party. Nothing in this Order shall be construed as a representation or admission by a Producing Party that CSC is properly discoverable in this action, or as an obligation to produce CSC. To the extent the production of any CSC is or becomes necessary to the prosecution or defense of the case, the Producing Party may designate any of its CSC as "[PRODUCING PARTY'S NAME] CONFIDENTIAL SOURCE CODE — OUTSIDE ATTORNEYS' EYES ONLY — SUBJECT TO PROTECTIVE ORDER." The protections conferred by Paragraphs 14-22 of this Order cover not only "CSC," but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof. Nothing herein shall alter or change in

any way the discovery provisions of the Court, or the Local Rules. Identification of any individual pursuant to this Protective Order does not necessarily make that individual available for deposition, or any other form of discovery outside of the restrictions and procedures of the Court or the Local Rules.

16. Unless otherwise ordered by the Court, CSC designated as "[PRODUCING PARTY'S NAME] CONFIDENTIAL SOURCE CODE — OUTSIDE ATTORNEYS' EYES ONLY — SUBJECT TO PROTECTIVE ORDER" shall be subject to the provisions set forth in Paragraphs 14-22 of this Order, and may be disclosed, subject to those paragraphs, solely to:

(a) Outside Counsel representing the parties to this action, including necessary secretarial and support personnel regularly employed by and assisting such counsel, except that, unless otherwise agreed, no outside counsel who is involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465,1468 n.3 (Fed. Cir. 1984), shall have access to CSC designated as "[PRODUCING PARTY'S NAME] CONFIDENTIAL SOURCE CODE — OUTSIDE ATTORNEYS' EYES ONLY — SUBJECT TO PROTECTIVE ORDER;"

(b) Any outside expert or consultant retained by a party for the purposes of this action and who satisfies Paragraph 3(iii) of this Order, provided that disclosure is only to the extent necessary to perform such work; and provided that: (i) such expert or consultant has agreed to be bound by the provisions of this Order (see, e.g., Paragraphs 3-4, 9 ), (b) such expert or consultant is not involved in competitive decision-making (see *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984)), on behalf of a party or a competitor of a party in the technical subject matter of the confidential business information produced, and (c) no unresolved objections to such disclosure exist after proper notice has been given to all parties as set forth in Paragraphs 3-4, 9;

(c) "Professional Vendors," persons or entities that provide litigation support services (e.g., photocopying; videotaping; court reporting; stenography, translating; designing and preparing exhibits, graphics, or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors who have been retained by outside

counsel in this action, and are not anticipated to become employees of a competitor of [PRODUCING PARTY], provided that Professional Vendor have agreed to be bound by the provisions of this Order by signing a copy of Exhibit A as required by Paragraph 4 of this Order. This definition includes ESI vendors, professional jury or trial consultants retained in connection with this Investigation retained by such consultants to assist them in their work. Professional vendors do not include consultants who fall within the definition of outside consultant;

(d) the Court and its employees;

(e) witnesses during a deposition, court hearing, or trial who: (i) are employees of the Producing Party and (ii) were either authors of the CSC or recipients of the CSC in the ordinary course of business;

(f) any mediator who is assigned by the Court or agreed upon by the parties to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Order;

(g) any other person with the prior written consent of the Producing Party.

**DISCLOSURE AND REVIEW OF SOURCE CODE**

17. The following provisions apply to the production of CSC that is designated "[PRODUCING PARTY'S NAME] CONFIDENTIAL SOURCE CODE — OUTSIDE ATTORNEYS' EYES ONLY — SUBJECT TO PROTECTIVE ORDER," unless otherwise agreed to by the Producing Party of such CSC:

(a) All CSC shall be made available to the Receiving Party for inspection at a location selected by the Producing Party. The location selected by the Producing Party must be able to comply with all provisions in this Order, including the time period during which the CSC must be made available, and expenses associated with any third-party commercial location chosen by the Producing Party are the responsibility of the Producing Party alone. The CSC shall be available for inspection on at least one stand-alone computer provided by the Producing Party and running either Mac OS X Snow Leopard or a reasonably-current version of the

Microsoft Windows operating system. No more than a total of four (4) individuals identified by the Receiving Party shall have access to the room in which the Producing Party produces its CSC at any given time.

(b) The Producing Party shall install tools on the computer(s) that it provides that are sufficient for viewing and searching the CSC produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business. The Receiving Party's outside counsel and/or experts may request that commercially-available software tools for viewing and searching CSC be installed on the CSC Computer, provided, however, that such other software tools are reasonably necessary for the Receiving Party to perform its review of the CSC consistent with all of the protections herein. Specific tools that may be used include, but are not limited to: Visual Slick Edit; Source-Navigator; PowerGrep; and ExamDiff Pro (or other similar programs). The Receiving Party must provide the Producing Party with the web link, CD or DVD containing such licensed software tool(s) at least ten (10) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the CSC Computer. The Receiving Party shall not at any time use any compilers, interpreters or simulators in connection with the Producing Party's CSC.

(c) In order to verify that its CSC has not later been altered, the Producing Party may benchmark the materials before and after they are provided but shall not install any keystroke or other monitoring software on the CSC Computer.

(d) The CSC computer(s) shall be made available from 9 am to 5 pm (local time), Monday through Friday (excluding holidays), and, if necessary, at other times upon mutual agreement of the Producing Party and Receiving Party.

(e) The Receiving Party shall identify any individual who will be given access to the CSC at least ten (10) days prior to the first time any such individual is given access to the CSC. The Producing Party may object to providing access to any persons so identified within ten (10) days after the identification. If the Producing Party does not object to the individual within (10) days, the individual will be deemed as being able to access CSC. The Producing Party may

raise objections after said ten (10) day period if the Producing Party learns new information about the individual(s) identified that is relevant and material to any new unresolved objections regarding that individual's access to the CSC; in that event, the Producing Party will have ten (10) days from the date of its notice of said new information to raise an objection. The Receiving Party shall provide two (2) day notice any time each such individual is given access to the CSC after the first time, although the parties will be reasonable in accommodating notice of less than two (2) days. If an objection to an individual is made by the Producing Party, it will be the burden of the Producing Party to prove that the individual should not be authorized to inspect the Producing Party's CSC.

(f) Proper identification of all authorized persons shall be provided prior to any access to the secure room or the CSC computer(s). Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State or the District of Columbia in the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Absent such identification, access to the secure room or the CSC computer(s) will be denied. All persons entering and leaving the secure room are required to sign a CSC Access Log, providing the date and time.

(g) The CSC computer(s) shall be equipped with a high-speed laser printer (with commercially reasonable printing speeds) to print copies of the CSC. Any printed copies of the CSC shall include the line numbers and file path and name in the header. The Receiving Party may print limited portions of the CSC only when reasonably necessary to facilitate the Receiving Party's preparation of filings with the Court, expert reports, and hearing exhibits, and shall print only such portions as are relevant to the claims and defenses in the case and are reasonably necessary for such purpose. The Receiving Party shall not print CSC in order to review blocks of CSC elsewhere in the first instance, *i.e.*, as an alternative to reviewing that CSC electronically on the CSC computer(s), as the parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of CSC for review and analysis elsewhere. If the Producing Party objects that the printed portions are excessive and/or not done for a permitted purpose, the Producing Party shall make such objection known to the

Receiving Party within five (5) days. Printed portions which exceed 50 continuous pages or 1000 total pages shall be rebuttably presumed excessive and not done for a permitted purpose. If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Producing Party shall be entitled to seek the Court's resolution of whether the printed CSC in question is narrowly tailored and was printed for a permitted purpose. The burden shall be on the Receiving Party to demonstrate that such printed portions are no more than is reasonably necessary for a permitted purpose and not merely printed for the purposes of review and analysis elsewhere. No more than a total of ten (10) individuals identified by the Receiving Party shall have access to the printed portions of CSC (except insofar as such code appears in any filing with the Court or expert report in this case).

(h) The printed CSC shall be labeled with "[PRODUCING PARTY'S NAME] CONFIDENTIAL SOURCE CODE — OUTSIDE ATTORNEYS' EYES ONLY — SUBJECT TO PROTECTIVE ORDER." Outside counsel for the Producing Party will keep the originals of these printed documents, and copies shall be made for outside counsel for the Receiving Party within 24 hours. The Producing Party shall Bates number, copy, and label "[PRODUCING PARTY'S NAME] CONFIDENTIAL SOURCE CODE — OUTSIDE ATTORNEYS' EYES ONLY" on any pages printed by the Receiving Party. The Receiving Party's outside counsel may make no more than five (5) additional paper copies of any portions of the CSC received from a Producing Party, not including copies attached to court filings or used at depositions.

(i) In addition to other reasonable steps to maintain the security and confidentiality of the Producing Party's CSC, when not in use, printed copies of the CSC maintained by the Receiving Party must be kept in a secure location in a locked storage container to which only persons identified in Paragraph 16 have access. No electronic copies of the CSC shall be provided by the Producing Party beyond the CSC Computer.

(j) Except as provided in this Order, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the CSC from any paper copy of CSC for use in any manner

(including, by way of example only, the Receiving Party may not scan the CSC to a PDF or photograph the code) or electronically filing ECF exhibits under seal pursuant to Court order granting a motion to seal. Images or copies of CSC shall not be included in correspondence between the parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible. Counsel shall use the following procedure in meeting and conferring regarding the use of CSC in filings: If a Receiving Party reasonably believes that it needs to submit a portion of CSC as part of a filing with the Court, that Receiving Party shall make that request to the Producing Party in writing. As soon as practicable thereafter, but in no event later than three (3) business days following that request, the Producing and Receiving parties shall meet and confer as to how to make such a filing while protecting the confidentiality of the CSC. They will cooperate with one another in good faith to ensure that the Court is provided with sufficient evidence to create an adequate administrative record with regard to any filings by the Receiving Party in which the Receiving Party believes it is necessary to submit CSC. Those parties further agree (1) to use no more CSC in such filings than is reasonably necessary to accomplish the purpose for which such CSC is being relied upon and (2) that if CSC to be cited in such filings exceeds ten (10) lines of code, then the CSC must be attached in an exhibit rather than embedded in the body of the filing. The electronic copies of the CSC shall be included on the log required by Paragraph 17(o) and any other information required by Paragraph 17(o) shall be included on the log. This Order does not require the Receiving Party to log (1) the names of court personnel who might receive the CSC filed under seal, or (2) the names of the outside counsel or other authorized individuals for other Receiving Parties who can review the CSC filed under seal. For the avoidance of doubt, the Receiving Party must log the names of its own outside counsel or other authorized individuals who can review the CSC filed under seal. Additionally, any such electronic copies must be labeled "[PRODUCING PARTY'S NAME] CONFIDENTIAL SOURCE CODE — OUTSIDE ATTORNEYS' EYES ONLY — SUBJECT TO PROTECTIVE ORDER" as provided for in this Order. The Receiving Party shall not under any circumstances perform Optical Character

Recognition ("OCR") or similar functionality to convert the printed portions of the CSC (Paragraph 17(j)) into machine readable text.

(k) For depositions, the Receiving Party shall not bring copies of any printed CSC. Rather, at least five (5) days before the date of the deposition, the Receiving Party shall notify the Producing Party about the specific portions of CSC it wishes to use at the deposition, and the Producing Party shall bring printed copies of those portions to the deposition for use by the Receiving Party. Copies of CSC that are marked as deposition exhibits shall not be provided to the court reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. All paper copies of CSC brought to the deposition shall be securely destroyed in a timely manner following the deposition.

(l) Other than the CSC Computers and printer provided by the Producing Party, no electronic devices, including but not limited to laptops, floppy drives, zip drives, or other hardware shall be permitted in the secure room. Nor shall any cellular telephones, personal digital assistants, Blackberries, cameras, voice recorders, Dictaphones, telephone jacks, or other devices be permitted inside the secure room. No non-electronic devices capable of similar functionality shall be permitted in the secure room. The person(s) conducting the CSC review for the Receiving Party shall be permitted to take notes relating to the CSC but the notes may not include any verbatim copying of the CSC into the notes and any notes may not be made electronically onto the CSC Computers or any other computer. In addition, all such notes will be taken on bound (spiral or other type of permanently bound) paper notebooks. No loose paper or other paper that can be used in a printer may be brought into the secure room. No copies of all or any portion of the CSC may leave the room in which the CSC is inspected except as otherwise provided herein. Further, no other written or electronic record of the CSC is permitted except as otherwise provided herein. The Producing Party may monitor the activities of the Receiving Party's representatives during any CSC review by sitting with them in the secure room or by observing the CSC review through a glass window.

(m) Other than as provided in this Order, the Receiving Party will not copy, remove, or otherwise transfer any CSC from the CSC Computer(s) including, without limitation,

copying, removing, or transferring the CSC onto any recordable media or recordable device, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind. The person(s) reviewing CSC for the Receiving Party will not transmit any CSC in any way from the location where the CSC review is conducted.

(n) Unless otherwise agreed in advance by the Producing Party and the Receiving Party in writing, following each day on which inspection is done under this Order, the Receiving Party's outside counsel and/or experts shall remove all notes, documents, and all other materials from the secure room. The Producing Party shall not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.

(o) The Receiving Party shall maintain a CSC Access Log identifying each hard copy (or electronic copy as permitted by Paragraph 17(j)) of CSC that it has in its possession and, for each and every time the hard copy (or electronic copy as permitted by Paragraph 17(j) of the CSC is viewed: (i) the name of each person who viewed the CSC; (ii) the date and time of access; (iii) the length of time of access; and (iv) whether any, and if so what, portion of the CSC was copied. The Producing Party shall be entitled to a copy of the log upon providing one (1) day advance notice to the Receiving Party. Within thirty (30) days after the issuance of a final, nonappealable decision resolving all issues in this action, the Receiving Party must serve upon the Producing Party the CSC Access Log. All persons to whom the paper copies of the CSC were provided must certify in writing that all copies of the CSC were returned to Counsel of Record for the Producing Party and that they will make no use of the CSC or of any knowledge gained from the CSC in any future endeavor.

18. Access to and review of the CSC shall be strictly for the purpose of investigating the claims and defenses at issue in this action. No person shall review or analyze any CSC for purposes unrelated to this action, nor may any person use any knowledge gained as a result of

reviewing CSC in this action in any other pending or future dispute, proceeding, patent prosecution, or litigation.

19. Nothing in this Order shall be deemed a waiver of a party's right to object to the production of CSC. Absent a subsequent and specific court or agency order, nothing herein shall obligate a party to breach any non-party license agreement relating to such CSC, but any party from whom CSC is requested must promptly comply with any notice requirements and request permission to produce the CSC as set forth in such non-party license agreement and must furnish copies of all communications to and from the non-party relating to compliance with that agreement.

20. The parties further acknowledge that some or all of the CSC may be owned by nonparties and outside a party's possession, custody or control. Nothing herein shall be deemed a waiver of any non-party's right to object to the production of CSC or object to the manner of any such production.

**PROSECUTION BAR**

21. Any Outside Counsel, consultant or expert retained on behalf of a Receiving Party who has accessed Producing Party's CSC — whether in electronic form or otherwise — must agree in writing that, for a period of two (2) years after the date of the Final Disposition in this action, it will: (i) not create or assist in the creation of any source code directly intended for commercial purposes that involves or relates to the type of signal processing in wireless communication devices at issue in this action; and (ii) not be involved in the substantive prosecution of patents or patent applications relating to the subject matter of the claims of the patents at issue in this action (including but not limited to any application claiming priority to or otherwise related to the patents asserted in this action), before any foreign or domestic agency, including the United States Patent and Trademark Office for the period of time specified herein. For purposes of this paragraph, "substantive prosecution" is defined as "obtaining disclosure materials for new inventions, inventions under development, and inventions contained in pending patent applications, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing

for such inventions, writing, reviewing, or approving new applications, continuation applications, divisional applications, or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution," as defined by the Federal Circuit in *In re Deutsche Bank Trust Company Americas*, 605 F.3d 1373, 1380 (Fed. Cir. 2010). This prohibition on substantive patent prosecution shall begin when Future Product CONFIDENTIAL BUSINESS INFORMATION and/or CONFIDENTIAL SOURCE CODE is first received by the affected individual, and shall end two (2) years after the Court issues its final judgment or the parties settle this action. This prosecution bar is personal to the person receiving such Future Product CONFIDENTIAL BUSINESS INFORMATION and/or CONFIDENTIAL SOURCE CODE and shall not be imputed to any other person or entity who did not receive Future Product CONFIDENTIAL BUSINESS INFORMATION and/or CONFIDENTIAL SOURCE CODE. Notwithstanding these restrictions, such consultants and/or experts shall not be precluded from conducting or participating in any academic work or from consulting in any future litigation that may involve related technology, so long as such academic or consulting work does not involve creating or assisting in the creation of any source code directly intended for commercial purposes that involves or relates to the subject matter of the claims of the patents at issue in this action.

22. Nothing in this Order shall limit any Producing Party from use of its own documents and information, nor shall it prevent the Producing Party from disclosing its own confidential information, documents, or things to any person. Such disclosure shall not affect any designations made pursuant to the terms of this Order, so long as the disclosure is made in a manner that is reasonably calculated to maintain the confidentiality of the information.

**INADVERTENT PRODUCTION OF PRIVILEGED MATERIAL**

23. Any inadvertent disclosure or production of document(s) shall not be deemed a waiver of, nor prejudice to, any privilege or immunity with respect to any such inadvertently-produced information or document(s) that may attach thereto, including without limitation the attorney-client privilege, the joint-defense privilege, and the work-product doctrine (collectively, "Privileged Material"), provided that the party that made the inadvertent

production of any Privileged Material notifies the Receiving Party(ies), in writing, promptly after discovery of such inadvertent production. If, upon its review of the information received, the Receiving Party can readily determine that the Producing Party inadvertently produced Privileged Material, the Receiving Party shall promptly notify Outside Counsel for the Producing Party by email. All copies of any such inadvertently-produced Privileged Material shall be returned to counsel for the Producing Party or destroyed within five (5) business days of such notice at the election of the Producing Party's counsel, who shall retain a copy of the subject Privileged Material until a final, nonappealable decision is entered on all issues in this action. Also within ten (10) business days of such notice, the Producing Party shall serve a privilege log for the Privileged Materials.

24. If a dispute arises concerning the privileged nature of any Privileged Material that was inadvertently produced, the involved Parties shall meet-and-confer in good faith in an effort to resolve the dispute. If they are unable to resolve the dispute, the Receiving Party may file a motion to compel the production of such Privileged Materials. In no case will the return of any demanded Privileged Material be delayed or refused for any reason, including but not limited to a party's objection to the demand or by the filing of a motion to compel, nor may a party assert the fact of the inadvertent production as a ground for retaining possession of the subject Privileged Material until resolution the parties' dispute. The Receiving Party will not use or refer to any information contained within the Privileged Material at issue, including in deposition or at trial or in any Court filing (including any motion to compel production of the Privileged Materials), unless and until the dispute has been resolved, for example, until a motion to compel that Privileged Material is granted by a Court, except as such information may appear in any applicable privilege log.

## INADVERTENT FAILURE TO DESIGNATE PROPERLY

25. The Parties agree that any inadvertent failure to designate documents, Discovery Material, testimony or other information with one of the designations provided for in this Order shall not be deemed a waiver of, nor prejudice to, any applicable designation with respect to the confidentiality of such information or document(s), provided that the Producing Party notifies

the Receiving Party in writing promptly after discovery of such inadvertent failure to designate. A Receiving Party shall not be in breach of this Order for any use of such discovery information before the receiving party received notice of the inadvertent failure to designate. Once a Receiving Party has received notice of the inadvertent failure to designate pursuant to this provision, the Receiving Party shall treat such discovery information as the appropriately designated level pursuant to the terms of this Order. If Discovery Material is designated subsequent to production, the Receiving Party shall promptly collect any copies that have been provided to individuals so that they can be relabeled with the correct confidentiality designation. If, upon review of the information produced, the Receiving Party can readily determine that the Producing Party inadvertently failed to designate the information with one of the designations provided for in this Order, the Receiving Party shall promptly notify the Producing Party.

**DISCOVERY FROM EXPERTS OR CONSULTANTS**

26. The parties shall not seek discovery or testimony regarding: (1) drafts of expert reports, declarations, or affidavits; (2) retained experts' notes or their staffs notes; (3) written or oral communications between retained experts and counsel; or (4) written or oral communications between retained experts and their staff. Those limitations apply to (i) trial testimony; (ii) all forms of discovery, including written discovery and oral depositions; and (iii) materials generated in connection with this action and any currently-pending proceeding involving any of the parties in this action.[2]

27. Notwithstanding the foregoing, expert reports, declarations, and affidavits must disclose all information (including documents and things) considered in forming the opinions set forth in the expert reports, declarations, and affidavits, including any information provided by counsel or by the expert's staff, although communications forwarding such information are

[2] For purposes of this Order, "any currently-pending investigation, litigation or proceeding involving any of the parties in this action" includes (i) Southern District of Florida, Civ. No. 05-80300; (ii) Eastern District of Texas, 2:07-cv-00222-JDL and 2:07-cv- 00223-DF-CE; and (iii) District of Delaware, 1:1 l-cv-00400-UNA.

not discoverable pursuant to Paragraph 26. Likewise, there shall be no limitation on (1) inquiring into the basis of any of the opinions expressed by any expert in his or her reports, declarations, or affidavits, including the manner by which such opinions were reached, and the information an expert considered in forming the opinions set forth in his or her expert reports, declarations, or affidavits; or (2) requesting expert materials from any currently-pending proceeding involving any of the parties as identified in paragraph 26.

28. Nothing in the Protective Order, including Paragraphs 26-27, shall alter or change in any way the requirements in Paragraphs 14-20 regarding Confidential Source Code, and Paragraphs 14-20 shall control in the event of any conflict.

**OTHER MATTERS**

29. Subpoenas or Court Orders. By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that the information may be relevant and subject to disclosure in another case. Any person or Party subject to this Order who is subpoenaed or ordered by any court, arbitral, administrative, or legislative body to produce or disclose another Party's Protected Material, or becomes subject to a motion to produce or disclose another Party's Protected Material, shall give prompt written notice to that Party so that the Party may have an opportunity to move for a protective order regarding the production of Protected Materials implicated by the subpoena, order or motion.

30. Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future. By stipulating to this Order, the Parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

31. Termination of Matter and Retention of Jurisdiction. The Parties agree that the confidentiality obligations and terms of this Protective Order shall survive and remain in effect after the Final Disposition of the above-captioned matter. The Court shall retain jurisdiction after Final Disposition of this matter to hear and resolve any disputes arising out of this Protective Order.

32. Successors. This Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

33. Right to Assert Other Objections. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order. This Order shall not constitute a waiver of the right of any Party to claim in this action or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this action or any other proceeding.

34. Modification by Court. This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order *sua sponte* in the interests of justice. The United States District Court for the Northern District of California is responsible for the interpretation and enforcement of this Order. All disputes concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court for the Northern District of California.

35. Discovery Rules Remain Unchanged. Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the Northern District of California, or the Court's own orders. Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for Northern District of California, or the Court's own orders.

36. Privilege Logs. The cut-off date for logging Privileged Material shall be May 6, 2011. That is, Privileged Materials communicated to or from counsel for the Parties after that May 6, 2011 cut-off date do not need to be included on any privilege log.

37. Materials produced under this Order must be stored and maintained by a Receiving Party in the United States at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

38. Nothing in this Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon confidential materials produced under this Order, provided that counsel does not disclose the material itself except as provided in this Order.

39. Nothing in this Order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Court concerning the issue of the status of CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER or CONFIDENTIAL SOURCE CODE - OUTSIDE ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER materials.

SO ORDERED this ___ day of _____, 2013

____________________________

Maria-Elena James
United States Magistrate Judge

**EXHIBIT A**

Acknowledgement and Agreement To Be Bound by Protective Order

I, __________________________, acknowledge that I have received a copy of the Protective Order ("Order") in *Linex Technologies, Inc. v. Hewlett-Packard Company et al.*., Case No. C.A. No. 4:13-CV-00159-CW. Having read and understood its terms, I agree to be bound by the Order, agree that any Protected Materials I receive in this case shall only be used in this matter, and consent to the jurisdiction of said Court for any proceeding to enforce the terms of the Order.

Name of individual: ________________________________________

Present occupation/job description: ________________________________

____________________________________________________________

____________________________________________________________

Name of Company or Firm: ____________________________________

Address: __________________________________________________

Dated: _________________________

______________________________

[Signature]