*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

Robert F. McCauley (SBN 162056)
Robert.mccauley@finnegan.com
FINNEGAN, HENDERSAN, FARABOW,
GARRETT & DUNNER, LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203
Telephone:  (650) 849-6600
Facsimile:  (650) 849-6666

Vincent P. Kovalick (*Pro Hac Vice*)
Vincent.kovalick@finnegan.com
Barry W. Graham (*Pro Hac Vice*)
Barry.graham@finnegan.com
Richard H. Smith (*Pro Hac Vice*)
Richard.smith@finnegan.com
Troy E. Grabow (*Pro Hac Vice*)
Troy.grabow@finnegan.com
Laura P. Masurovsky (*Pro Hac Vice*)
Laura.masurovsky@finengan.com
Rajeev Gupta (*Pro Hac Vice*)
Rajeev.gupta@finnegan.com
Kenie Ho (*Pro Hac Vice*)
Kenie.ho@finnegan.com
Cecilia Sanabria (*Pro Hac Vice*)
Cecilia.sanabria@finnegan.com
Jia Lu (*Pro Hac Vice*)
Jia.lu@finnegan.com
Robert D. Wells (*Pro Hac Vice*)
Robert.wells@finnegan.com
FINNEGAN, HENDERSAN, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400

*Attorneys for Linex Technologies, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| LINEX TECHNOLOGIES, INC., | CASE NO. 4:13-cv-00159-CW (MEJ) |
| Plaintiff, | **LINEX'S OPPOSITION TO DEFENDANTS' MOTIONS FOR FEES AND LINEX'S REQUEST TO DEFER CONSIDERATION OF FEES AND COSTS** |
| v. | |
| HEWLETT-PACKARD COMPANY,, APPLE COMPUTER INC., ARUBA NETWORKS, INC., MERU NETWORKS, INC., RUCKUS WIRELESS, INC., | DATE: July 31, 2014 TIME: 2:00 p.m. PLACE: Courtroom 2 |
| Defendants. | JUDGE: Hon. Claudia Wilken |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

# Table of Contents

Opposition to Defendants' Motions for Attorneys' Fees...................................................1

I.     Relevant Facts .........................................................................................................1

II.     Legal Standard ........................................................................................................4

III.     Argument .................................................................................................................5

      A.     That Linex prevailed on 8 out of the 9 disputed claim terms demonstrates that Linex's suit was not frivolous, objectively unreasonable, or brought in bad faith. ...............................................................................................................6

      B.     For the one claim term on which Linex did not prevail, Linex's claim construction and infringement positions were not frivolous or objectively unreasonable as evidenced by the voluminous literature on spread-spectrum-OFDM systems and the expert opinions of Dr. Prucnal. ........................................7

      C.     That Linex's patents have been reviewed twice by the USPTO and found valid over the Paulraj '599 patent further demonstrates that Linex's suit was not frivolous, objectively unreasonable, or brought in bad faith. ................................9

      D.     Aruba, Meru, and Ruckus improperly seek, in a fees motion, summary judgment on an issue that the Court already declined to decide.............................10

      E.     Defendants erroneously argue a pattern of vexatious litigation.............................11

      F.     Attacks on Linex's damages theories are irrelevant and even if considered, are without basis in fact or law. .....................................................................................12

           1.     Damages theories are irrelevant at this stage. .............................................13

           2.     If this Court considers the parties' damages theories, the Court should find Defendants' damages positions without merit. ...................................14

      G.     If the Court determines that Defendants are entitled to attorney's fees, the award should either be zero based on the lack of detail Defendants submit to support their motion or be significantly reduced based on the exorbitant amount Defendants seek. ....................................................................................16

           1.     Defendants failed to meet their burden of providing the necessary detail to support an award of attorney's fees. .............................................16

           2.     Based on the limited and deficient documentation that Defendants have provided, the fee amounts Defendants seek are excessive and include expert witness and other fees that are not recoverable under Section 285.....................................................................................................17

           3.     The Court should deny Aruba, Meru, and Ruckus's motion for fees that were not incurred in this case, but were instead expended during the ITC Investigation, which was dismissed before litigation got underway in this case. .................................................................................19

      H.     This case is not "exceptional" under any standard. .............................................21

LINEX'S OPPOSITION TO DEFENDANTS' MOT. FOR FEES, AND
LINEX'S REQ. TO DEFER CONSIDERATION
Case No. 4:13-cv-00159-CW  (MEJ)

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Request to Defer Consideration of Fees and Costs..........................................................................23

Conclusion ...............................................................................................................................................24

LINEX'S OPPOSITION TO DEFENDANTS' MOT. FOR FEES, AND
LINEX'S REQ. TO DEFER CONSIDERATION
Case No. 4:13-cv-00159-CW  (MEJ)

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  23 F.3d 374 (Fed. Cir. 1994)...................................................................19

*Apple, Inc. v. HTC Corp.*,
  1:11-cv-00611-GMS (D. Del. filed Jan. 14, 2011) ...................................7

*Apple Inc. v. Motorola, Inc.*,
  Nos. 2012-1548, -1549, 2014 WL 1646435 (Fed. Cir. April 25, 2014).....................13, 15, 16

*Bianco v. Globus Med., Inc.*,
  2:12-CV-00147-WCB, 2014 WL 1904228 (E.D. Tex. May 12, 2014) ............................5, 22

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*,
  532 U.S. 598 (2001) ...................................................................13

*Classen Immunotherapies, Inc. v. Biogen Idec*,
  CIV. WDQ-04-2607, 2014 WL 2069653 (D. Md. May 14, 2014).........................21

*Comark Commc'ns, Inc. v. Harris Corp.*,
  156 F.3d 1182 (Fed. Cir. 1998)...................................................................8

*CreAgri, Inc. v. Pinnaclife, Inc.*,
  11-CV-6635-LHK, 2014 WL 2508386 (N.D. Cal. June 3, 2014) ......................5, 22

*EON Corp. IP Holdings, LLC v. FLO TV Inc.*,
  CV 10-812-RGA, 2014 WL 2196418 (D. Del. May 27, 2014)..........................5, 22

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011)...................................................................14

*Fromson v. W. Litho Plate & Supply Co.*,
  853 F.2d 1568 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme
  Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) .........................14

*Funai Elec., Ltd. v. Daewoo Elecs. Corp.*,
  No. C-04-01830JCS, 2009 WL 1110825 (N.D. Cal. Apr. 24, 2009) ......................17

*Hardisty v. Astrue*,
  592 F.3d 1072 (9th Cir. 2010) ...................................................................12

*Hewlett-Packard Co. v. MicroJet Tech. Co.*,
  3:10-cv-02175-JW (N.D. Cal. filed May 20, 2010)...................................................................7

*Home Gambling Network Inc., v. Piche*,
  2:05-CV-610-DAE, 2014 WL 2170600 (D. Nev. May 22, 2014)..........................21

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

*In re Online DVD Rental Antitrust Litig.*,
 C 09-2163 PJH, 2012 WL 1414111 (N.D. Cal. Apr. 20, 2012) .............................................24

*In re Ricoh Co., Ltd. Patent Litig.*,
 C 03-02289 JW, 2010 WL 8961328 (N.D. Cal. Sept. 29, 2010).........................................24

*IP Innovation L.L.C. v. Red Hat, Inc.*,
 No. 2:07-cv-447 (E.D. Tex. Oct. 13, 2010), Dkt. No. 273 at 2 (Rader, J.)............................21

*Kronberg v. Hale*,
 180 F.2d 128 (9th Cir. 1950) ...................................................................................13

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936).............................................................................................23

*Linex Techs., Inc. v. Belkin Int'l*, 2:07-cv-00222-JDL
 (E.D. Tex. Jun. 1, 2007).........................................................................................3

*Lumen View Tech., LLC v. Findthebest.com, Inc.*,
 13 CIV. 3599 DLC, 2014 WL 2440867 (S.D.N.Y. May 30, 2014).......................................21

*Marconi Wireless Tel. Co. v. United States*,
 320 U.S. 1 (1943).....................................................................................10, 12, 13

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
 726 F.3d 1359 (Fed. Cir. 2013).................................................................................20

*Monolithic Power Sys. v. O2 Micro Int'l.*,
 No. 4:08-cv-04567 CW, Dkt. No. 449 (N.D. Cal. Mar. 3, 2011) ...................................19, 20

*Navarro v. Gen. Nutrition Corp.*,
 C 03-0603 SBA, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005) ..........................................18

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
 134 S. Ct. 1749 (2014) ...............................................................................4, 5, 6, 21

*Park–In–Theatres, Inc. v. Perkins*,
 190 F.2d 137 (9th Cir. 1951) ..............................................................................5, 22

*Polarity, Inc. v. Diversified Techs., Inc.*,
 No. C-06-0646 EMC, 2006 WL 345634 (N.D. Cal. Nov. 29, 2006).....................................13

*Rock Creek Ltd. P'ship v. State Water Res. Control Bd.*,
 972 F.2d 274 (9th Cir. 1992) ...................................................................................20

*Steffens v. Regus Group, PLC*,
 08-CV-1494-LAB, 2012 WL 628235 (S.D. Cal. Feb. 24, 2012) .........................................24

*Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*,
 851 F.2d 342 (Fed. Cir. 1988)................................................................................3, 7

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

*United States v. Sine*,
    493 F.3d 1021 (9th Cir. 2007) ................................................15

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) ................................................16

**STATUTES**

35 U.S.C. § 251 ................................................4

35 U.S.C. § 285 ................................................ passim

35 U.S.C. § 285 (2) ................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 54 ................................................10

Fed. R. Civ. P. 54(d) ................................................23

Fed. R. Evid. 802 ................................................15

*McCormick on Evidence* § 318 ................................................15

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

Plaintiff Linex Technologies, Inc. ("Linex") submits (1) Linex's opposition to Apple Inc. ("Apple") and Hewlett-Packard Company's ("HP") Motion for Attorneys' Fees Under 35 U.S.C. § 285, (2) Linex's opposition to Aruba Networks, Inc. ("Aruba"), Meru Networks, Inc. ("Meru"), and Ruckus Wireless, Inc.'s ("Ruckus") Motion For Attorneys' Fees Under 35 U.S.C. § 285, and (3) Linex's Request to Defer Consideration of Fees and Costs.

**OPPOSITION TO DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES**

There is simply no basis for an award of attorney's fees in this case. Linex asserted its patent rights against Defendants in this Court and the International Trade Commission (ITC) based on its reasonable, good-faith understanding of the technology and art. As with most patent suits, claim construction played a pivotal role. Defendants over-emphasize the fact that they won the claim construction for the term "spread spectrum signals" and that the Court construed that disputed term in the same manner ████████████████████████████████████████████ ███████████████████ Defendants seemingly forget, however, that the Court construed the majority of the claim terms—the remaining 8 out of 9 disputed claim terms—in Linex's favor, completely rejecting Defendants' (████████████████████) proposed constructions for those terms. Also, Linex's patents have been reviewed twice by the U.S. Patent and Trademark Office (USPTO) and found valid. Linex's positions were more than reasonable. In fact, the very reference that the Court relied upon to issue summary judgment of invalidity for some of the asserted claims was considered by the USPTO during prosecution of the patent-in-suit, further demonstrating Linex's good-faith belief of the validity of its patents. Defendants cannot legitimately claim that Linex had no basis for its proposed constructions and positions on infringement and validity, or that this is an exceptional case that merits an award of fees. Defendants overplay their victory. And the Court should deny Defendants' motion.

## I.   Relevant Facts

In this hotly contested claim construction phase of the case, Linex won 8 out of the 9 disputed claim constructions. Dkt. No. 333 at 6, 11, 15, 19. During the claim construction process,

1

LINEX'S OPPOSITION TO DEFENDANTS' MOT. FOR FEES, AND
LINEX'S REQ. TO DEFER CONSIDERATION
Case No. 4:13-cv-00159-CW  (MEJ)

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

the Court grouped the nine disputed terms into four general categories of terms.[1]  *Id.* at 5.  The four categories were: (a) "spread spectrum signals," (b) "codes," (c) "combining" claim terms, and (d) "separating" claim terms.  *Id.*  The Court adopted Linex's proposed constructions for "codes," the "combining" claim terms, and the "separating" claim terms, and adopted Defendants' proposed construction for "spread spectrum signals."  *Id.* at 6, 11, 15, 19.

Concurrently with filing their claim construction brief, Defendants moved for (1) summary judgment of noninfringement based on Defendants' proposed constructions for each of the nine disputed terms and (2) summary judgment of invalidity based on Linex's proposed constructions in view of the Paulraj '599 patent.  Dkt. No. 268-4 at 22, 31.  Using Defendants' construction of "spread spectrum signals"—the only disputed construction that Defendants won—the Court granted summary judgment of noninfringement and denied summary judgment of invalidity for half of the asserted claims: claims 121, 131, and 132 of the '219 patent, and claims 101 and 102 of the '812 patent.  Dkt. No. 333 at 29-34.  The Court granted summary judgment of invalidity and did not grant summary judgment of noninfringement for the remaining asserted claims: claims 97, 107, 108, of the '219 patent, and claims 97 and 98 of the '812 patent.[2]  *Id.* at 35.

---

[1]  During mediation between the parties, the mediators—Magistrate Judge Paul S. Grewal and Judge Wayne D. Brazil—recommended that Linex streamline the case and narrow the issues, for example, by reducing the number of asserted claims and/or claim terms.  Dkt. No. 299-1 at ¶ 4.  The mediators pointed out that the language of the '322 claims seemed complicated for a jury.  *Id.*  On January 15, 2014, Linex informed Defendants that it would streamline the case by dropping the asserted claims of the '322 patent and the asserted method claims of the '219 and '812 patents (i.e., claims 9 and 10 of the '322 patent; claims 109, 119, 120, 133, 144, and 145 of the '219 patent; and claim 106 of the '812 patent).  *Id.*  The Court dismissed those claims on March 20, 2014, leaving only the following claims at issue: claims 97, 107, 108, 121, 131, and 132 of the '219 patent; and claims 97, 98, 101, and 102 of the '812 patent.  Dkt. No. 309; Dkt. 311.  After the parties voluntarily dismissed the claims of the '322 patent and the method claims of the '219 patent, 3 of the 12 originally disputed terms became moot because they were relevant only to the dismissed claims.  Dkt. No. 200 at 3-5 (claim term nos. 3, 7, and 11 became moot).  That left 9 of the original 12 claim terms in dispute.  Dkt. No. 200 (claim term nos. 1, 2, 4-6, 8-10, and 12 remained in dispute).

[2]  The Court's claim construction/summary judgment order contains a clerical error that incorrectly refers to claim 109, where it should instead refer to claim 97, of the '219 patent.  *See, e.g.*, Dkt. No. 333 at 26, 29, 35.  Claim 109 of the '219 patent was previously dismissed and not at issue for claim construction or summary judgment.  Dkt. Nos. 309 and 311.

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

1    In 2011, Linex filed a petition at the ITC requesting a "Section 337 investigation," which the

2    ITC instituted.  Because compensatory damages are not available in an ITC proceeding, Linex also

3    filed a parallel district court action to seek damages for Defendants' infringement of the '322 and

4    '219 patents.[3]  Defendants and Linex agreed to stay the district court case pending resolution of the

5    ITC Investigation.  The district court lifted the stay after the ITC Investigation was voluntarily

6    dismissed.  Dkt. No. 28.

7    Although irrelevant to this Court's claim construction rulings, during the ITC pre-hearing

8    briefing stage, █████████████████████████████████████████████████

9    ███████████████████████████████████████████████████████████████

10   █████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████   The ITC Investigation, however, was

12   dismissed *prior* to a ruling by the ITC on any of these issues.  Notably, Defendants did not oppose

13   the dismissal and at no time moved for fees or costs incurred during the ITC Investigation.

14   In a prior litigation against different parties, Linex successfully asserted the '322 patent.  *See*

15   *Linex Techs., Inc. v. Belkin Int'l*, 2:07-cv-00222-JDL (E.D. Tex. Jun. 1, 2007) ("the Texas Case").

16   Specifically, the accused infringers in the Texas Case obtained a license to Linex's '322 patent.  Dkt.

17   No. 345-6 at 30-31.  The Texas Case ended after the last infringer stipulated that its "products that

18   comply with any version of the 802.11n standard infringe the claims of the '322 patent."  Ex. B, at 3

19   (accused infringer Phoebe Micro, Inc. stipulating to infringement and agreeing that only damages-

20   related issues needed to be presented for trial).

21   Defendants assert that Linex should have known that this Court would not adopt Linex's

22   proposed construction because of the claim construction order that Judge Love issued in the Texas

---

23

24   [3]  The '812 patent was added to the present case after the ITC Investigation concluded.  The '812

25   patent had not yet issued from the U.S. Patent and Trademark Office at the time the ITC
     Investigation was instituted.

26   [4]  The staff attorney's positions may or may not be adopted by the ALJ, who in the first instance

27   issues an initial determination.  That initial determination is reviewed before it is adopted or rejected
     by the Commission.  It is well established that ITC decisions are not binding on district courts.

28   *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 851 F.2d 342, 343 (Fed. Cir. 1988).

LINEX'S OPPOSITION TO DEFENDANTS' MOT. FOR FEES, AND
LINEX'S REQ. TO DEFER CONSIDERATION
Case No. 4:13-cv-00159-CW  (MEJ)

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

1   Case.  Dkt. No. 353 at 3; Dkt. No. 346-3 at 8.  Judge Love did ***not*** construe "spread spectrum

2   signals" the same way this Court did.  *Compare* Dkt. No. 333 at 6 (this Court's construction for

3   "spread spectrum signals") *with* Dkt. No. 235-16 at 20 and 22, attached hereto as Ex. C for ease of

4   reference (Judge Love's construction for "plurality of spread-spectrum signals").  For example,

5   Judge Love construed "spread spectrum signals" as "signals processed with one or more codes that

6   distributes each signal across the available bandwidth," which—unlike this Court's construction—

7   does not require that the "codes" be used to process "unknown data."  Dkt. No. 235-16 at 22.

8        Importantly, neither the '219 patent nor the '812 patent at issue here was litigated in the

9   Texas Case because both of those patents resulted from broadening reissue proceedings completed

10   ***after*** the Texas Case.  Reissue proceedings are procedures at the USPTO where an Examiner

11   reviews previously issued patents a second time.  35 U.S.C. § 251.  Here, Linex submitted several

12   references—including the Paulraj '599 patent that formed the basis of the Court's summary

13   judgment of invalidity—to the USPTO for the Examiner's consideration during the reissue

14   proceedings.  Dkt. No. 235-5 at 2, col. 1; Dkt. No. 235-6 at 2, col. 1.  The Examiner found Dr.

15   Schilling's inventions in the '219 and '812 patents to be valid during this second review and allowed

16   the patents to issue without claim limitations that were present in the claim terms Judge Love

17   construed, e.g., "subchannels."  On March 15, 2011, the USPTO issued the '219 patent, and

18   November 20, 2012, the '812 patent.

19   **II.   Legal Standard**

20        The Supreme Court recently held in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.* that

21   an "exceptional case" under 35 U.S.C. § 285 is "one that stands out from others with respect to the

22   substantive strength of a party's litigating position (considering both the governing law and the facts

23   of the case) or the unreasonable manner in which the case was litigated."  134 S. Ct. 1749, 1755

24   (2014).  The Court emphasized that the "totality of the circumstances" should be considered in

25   determining whether a case is exceptional.  *Id.*  In making that determination, factors courts should

26   consider include whether the case was frivolous or advanced unreasonable legal or factual positions.

27   *Id.* at 1756 n.6.

28

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

The Supreme Court further relied on pre-2005 cases—i.e., cases from before the 2005 *Brooks Furniture* decision—to provide guidance on how to apply the "totality of the circumstances" standard as re-instated by the *Octane Fitness* decision.  *Id.* at 1753.  For example, pre-2005 cases by the Ninth Circuit have "viewed the award of fees not 'as a penalty for failure to win a patent infringement suit,' but as appropriate 'only in ***extraordinary*** circumstances.'"  *Id.* (*quoting Park–In–Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)) (emphasis added).  "The exercise of discretion in favor of [awarding fees] should be bottomed upon a finding of ***unfairness or bad faith*** in the conduct of the losing party, or ***some other equitable consideration of similar force***, which makes it ***grossly unjust*** that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear."  *Park–In–Theatres*, 190 F.2d at 142 (emphasis added).

Accordingly, finding an "exceptional" case and thus an award of attorney's fees under the *Octane Fitness* standard is still the exception, not the rule, and is reserved for egregious circumstances.  Indeed, since *Octane Fitness*, courts in the Northern District of California and other districts have found no cause to award attorney's fees despite having disposed of cases on summary judgment.  *See, e.g.*, *CreAgri, Inc. v. Pinnaclife, Inc.*, 11-CV-6635-LHK, 2014 WL 2508386, at *9-12 (N.D. Cal. June 3, 2014) (finding patent owner's case not objectively baseless even though court granted summary judgment of invalidity against patent owner); *EON Corp. IP Holdings, LLC v. FLO TV Inc.*, CV 10-812-RGA, 2014 WL 2196418, at *2 (D. Del. May 27, 2014) (finding the strength of patentee's case was not so conspicuously deficient as to justify the award of attorney's fees even though the court granted summary judgment of invalidity on all asserted patent claims); *Bianco v. Globus Med., Inc.*, 2:12-CV-00147-WCB, 2014 WL 1904228, at *2 (E.D. Tex. May 12, 2014) (finding inventorship claim not to be in bad faith, frivolous, or otherwise exceptionally meritless despite the court ruling against inventor after making factual findings based on evidence at trial).

## III.   Argument

This is a garden-variety patent case, where one side won and one side lost on summary judgment.  Here, Dr. Donald Schilling, the inventor of pioneering wireless technologies in the 1990s

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

1   and the patents-in-suit and founder of Linex, in good faith asserted that Defendants infringed his

2   patents.  Unfortunately, this Court disagrees.  That, however, does not elevate this "run-of-the-mill"

3   case to an "exceptional" one justifying an award of attorney fees.  *Octane Fitness*, 134 S. Ct. at 1757

4   (a case must "sufficiently set itself apart from mine-run cases to be 'exceptional'").  Defendants

5   primarily rely on the Texas Case—to which Defendants were not parties and which did not involve

6   the patents-in-suit— ███████████████████████████ as their basis to allege

7   that this case is exceptional.  Nothing in those prior proceedings demonstrates that Linex's suit was

8   frivolous, objectively unreasonable, or exceptionally meritless.  Defendants erroneously interpret the

9   construction from the Texas Case, give too much weight to ███████████████

10  ████████ ignore this Court's rejection of an overwhelming number of Defendants' claim

11  construction positions, and disregard that the UPSTO considered the very prior art reference that this

12  Court relied upon for invalidity, to cobble together an argument that is unsupported by the facts or

13  the law.  The evidence shows that Linex has a good faith basis for its positions on claim

14  construction, infringement, and validity.

15          Aruba, Meru, and Ruckus additionally allege that Linex's damages theory lacked foundation

16  and thus, constitutes litigation misconduct.  A review of each side's damages theories, were that

17  even relevant at this stage, reveals that it is Defendants who presented suspect damages theories, not

18  Linex.  As explained further below, Defendants' contentions on Linex's damages theories are both

19  irrelevant and unfounded.

20          **A.      That Linex prevailed on 8 out of the 9 disputed claim terms demonstrates
                      that Linex's suit was <u>not</u> frivolous, objectively unreasonable, or brought**
21          **in bad faith.**

22          The Court rejected 8 out of 9 of Defendants' proposed constructions.  Dkt. No. 333 at 6, 11,

23  15, 19.  That alone demonstrates that Linex's positions in this case were not frivolous or objectively

24  unreasonable.  ████████████████████████████████

25  ██████████████████████████████████████████

26  ████████████████████████████████████

27  ██████████████████████████████████████

28  █████████████████████████████████████████

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

Further, the ITC Investigation never went to trial and was never decided on its merits.  The ALJ was not bound in any way ███████████████████████.  Moreover, even if the ALJ had ████████████████████████ and the Commission had adopted the ALJ's ruling, those findings would not have been binding on this Court.  *Texas Instruments Inc.*, 851 F.2d at 343 ("ITC determinations regarding patent issues should be given no res judicata or collateral estoppel effect.").  Thus, even if the ITC had addressed the merits and ruled in either Linex's or Defendants' favor, the parties would still have had to re-litigate the merits in this Court.  Parties routinely litigate the same issues at the ITC and in district court for the simple reason that the ITC has no authority to award damages.  *Id.* ("The ITC can issue only an exclusion order barring future importation or a cease and desist order barring future conduct.").  This is true in every case brought in the ITC and in district court.  Surely, it cannot be the case that filing a suit in district court and a petition in the ITC is vexatious.  Apple and HP, for example, have done exactly the same when they asserted their patents against HTC and MicroJet, respectively.  *Apple, Inc. v. HTC Corp.*, 1:11-cv-00611-GMS (D. Del. filed Jan. 14, 2011) (Apple asserting four patents against HTC in district court, which it also asserted against HTC in ITC Investigation No. 337-TA-797); *Hewlett-Packard Co. v. MicroJet Tech. Co.*, 3:10-cv-02175-JW (N.D. Cal. filed May 20, 2010) (HP asserting six patents against MicroJet, which it also asserted against MicroJet in ITC Investigation No. 337-TA-723).  Other examples are legion.

**B.     For the one claim term on which Linex did not prevail, Linex's claim construction and infringement positions were not frivolous or objectively unreasonable as evidenced by the voluminous literature on spread-spectrum-OFDM systems and the expert opinions of Dr. Prucnal.**

In their motions for fees, Defendants reargue their claim construction positions to allege Linex's construction was meritless.  It was not frivolous or unreasonable for Linex to contend that "spread spectrum signals" should be construed broadly to cover spread spectrum systems that were known in the art, and are not limited to the preferred embodiment.  Without rehashing Linex's claim construction arguments, Linex refers to the evidence cited in its claim construction briefs in support of its proposed construction.  Dkt. No. 235 at 8-12 (Linex's opening claim construction arguments

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

for "spread spectrum signals"); Dkt. No. 273-4 at 6-9 (Linex's reply brief arguments on claim construction for "spread spectrum signals").  As demonstrated in these briefs, Linex's positions were firmly grounded in fact and law and were not objectively unreasonable.  *Id.*  Dr. Paul Prucnal—a highly respected engineer and Professor at Princeton University, an expert in the field of wireless communication systems—provided ample basis for Linex's proposed claim construction and infringement positions in a detailed and thoughtful expert report, in declarations, and supporting exhibits.  Ex. D, at 8-45, 63-68 (expert report discussing various types of spread spectrum systems known in the art, including OFDM spread spectrum systems, and the proper construction for "spread spectrum signals"); Dkt. No. 235-1 at ¶¶ 67-73 (expert declaration discussing different forms of spread spectrum systems, including "OFDM" spread spectrum systems known in the art); Dkt. No. 273-6 at ¶¶ 39-47 (expert declaration explaining how spread spectrum systems do not need to spread payload data).

Tellingly, Defendants did not move for summary judgment of noninfringement under Linex's proposed construction for "spread spectrum signals," effectively conceding that a jury could find infringement under Linex's construction.  While it is true that the Court found Defendants' construction for "spread spectrum signals" more persuasive, it was on that sole basis that Defendants prevailed, leading unfortunately to a finding for summary judgment against Linex.  Losing, however, does not mean that the losing party's position was submitted in bad faith or otherwise makes a case exceptional.  Linex's proposed construction was reasonable, based on the commonly-understood meaning of "spread spectrum signals" at the time of the invention.  Ex. D, at 8-45, 63-68.  Whether or not a court will limit a claim term to specific disclosures in a patent is unpredictable and presents a difficult question, particularly since the Federal Circuit's case law on whether to read elements from the specification into the claims is somewhat unclear and unsettled.  Indeed, the parties both cited case law supporting opposite conclusions on this legal issue.  *See, e.g.,* Dkt. No. 235 at 6, 25 (Linex opening claim construction brief citing *Decisioning.com, Inc. v. Federated Dep't Stores, Inc.*, 527 F.3d 1300 (Fed. Cir.  2008) and *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998)); Dkt. No. 268-4 at 12 (Defendants' responsive claim construction brief citing *Verizon Servs. Corp. v. Vonage Holdings Corps.*, 503 F.3d 1295 (Fed. Cir. 2007)).

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

Even under Defendants' proposed construction for "spread spectrum signals," Linex presented a well-grounded and good-faith basis to argue that Defendants' accused products infringe Linex's patents.  It was not frivolous or objectively unreasonable to contend that the OFDM aspects of the accused products use spread spectrum techniques within the meaning of the asserted claims. Widespread technical literature describes numerous OFDM systems as "spread spectrum."  *See, e.g.*, Dkt. No. 235-33 at 679 (1998 technical journal article describing an "OFDM Spread Spectrum System"); Dkt. No. 235-32 at 1670 (1994 technical journal article describing an "OFDM" system using "spread spectrum" signals); Dkt. No. 235-61 at 903 (1994 technical journal article describing a "spread spectrum technique" in an "OFDM" system); Ex. E (1994 patent—USPN 5,282,222— entitled "Method and Apparatus . . . in Wireless Communications Using OFDM Spread Spectrum").

Dr. Prucnal provided substantial evidence in his expert reports and declarations that Defendants' accused OFDM products are in fact spread spectrum systems.  Ex. D, at 40-45, 91-92, 102-103 (explaining spreading in 802.11n standard and infringement under Defendants' construction for "spread spectrum signals"); Dkt. No. 273-6 at ¶¶ 84-88, 91-98 (explaining infringement under Defendants' construction for "spread spectrum signals").  Dr. Schilling, the inventor, informed the USPTO numerous times and testified unequivocally in this matter that the '219 and '812 patents cover any and all types of spread spectrum system, regardless of whether they use OFDM.  Dkt. No. 346-15 at 257:17-21 (Schilling transcript); Dkt. No. 235-67 at 1 (2008 declaration); Dkt. No. 235-15 at 1 (2010 declaration); Dkt. No. 235-22 at 1 (2011 declaration).

**C.    That Linex's patents have been reviewed twice by the USPTO and found valid over the Paulraj '599 patent further demonstrates that Linex's suit was <u>not</u> frivolous, objectively unreasonable, or brought in bad faith.**

Although the Court granted summary judgment of invalidity for certain of the asserted '219 and '812 patent claims, Defendants cannot plausibly argue that Linex had no reasonable basis to assert the validity of these claims.  The '219 and '812 patents were reissued.  Dkt. No. 235-5 at 1; Dkt. No. 235-6 at 1.  As such, the claimed inventions were examined and found valid twice by the USPTO after the issuance of the '322 patent from which they descend.  Importantly, Linex submitted the Paulraj '599 patent—the very reference that the Court relied on when issuing summary judgment of invalidity—to the USPTO during the reissue proceedings.  The Examiner considered

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

1  the Paulraj '599 patent and did not find the claims anticipated or rendered obvious.  Dkt. No. 235-5

2  at 2, col. 1; Dkt. No. 235-6 at 2, col. 1.  Accordingly, Linex had a good-faith basis to assert invalidity

3  in this case.

       **D.    Aruba, Meru, and Ruckus improperly seek, in a fees motion, summary
              judgment on an issue that the Court already declined to decide.**

6         Aruba, Meru, and Ruckus argue in their motion that claims 97, 121, 131, and 132 of the '219

7  patent and claims 97 and 98 of the '812 patent (the "non-spread-spectrum claims") are not infringed

8  because "codes" are not "conveyed along with [and in] said signals."  Dkt. No. 353 at 6.  The Court

9  did not find noninfringement of those claims.  Defendants attempt, inappropriately, to litigate

10 through the back-door—i.e., in this fees motion—an issue on which they did not prevail on summary

11 judgment.  Dkt. No. 333.  The Court lacks jurisdiction to decide this issue at this post-judgment

12 stage and therefore, should decline this invitation.  Fed. R. Civ. P. 54; *Marconi Wireless Tel. Co. v.*

13 *United States*, 320 U.S. 1, 47 (1943) (finding that the court only had power to reconsider decisions

14 made "prior to entry of its final judgment").

15        Even if the Court considers this issue, the Court should find that Defendants' products do

16 infringe the non-spread-spectrum claims.  ███████████████████████████████████████

17 ████████████████████████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████████████████████

19 ██████████████████████████████████████████████████████████████████████

20 ████████████   Accordingly, Defendants' products meet the claim limitation "codes conveyed along

21 with" and "in" the signals.[5]  *See also* Dkt. No. 273-4 at 19-20.

---

23 [5]  Aruba, Meru, and Ruckus's noninfringement argument also contradicts their invalidity arguments.
24 On the one hand, for noninfringement, ████████████████████████████████  Dkt. No. 353 at 6.  On the other hand,
25 for invalidity, they allege that the Paulraj and Marzetta references anticipate by disclosing a training
   signal that is "conveyed along with [and in] said signals."  In contrast, Linex presents
26 consistent arguments: First, Linex asserts the Paulraj and Marzetta references do not disclose how
   "codes" (if any) are "conveyed along with [and in] said signal," such as whether they are conveyed
27 in the same packet (i.e., the signal) that contains payload data.  Dkt. No. 273-6 at ¶¶ 71, 95, 102.

28 ████████████████████████████████████████████████████████████████████████

                                                                        (continued...)

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

1    **E.    Defendants erroneously argue a pattern of vexatious litigation.**

2    In an attempt to show a pattern of vexatious litigation conduct, Defendants allege that:

3    Like the Texas Court ████████████████, the Court construed
     "spread spectrum signals" as "signals corresponding to data which has
4    been processed with one of more codes that distribute and increase the
     bandwidth of the data across the available bandwidth."

5

6    Dkt. No. 353 at 3; *see also* Dkt. No. 346-3 at 8.  This is incorrect.

7    In the Texas Case, Judge Love construed two different claim terms of the '322 patent:

8    "spread-spectrum subchannel signals" and "plurality of spread-spectrum signals."  Dkt. No. 235-16

9    (Parts I and Part IV).  Judge Love construed the former to mean "signals, corresponding to each of

10   the subchannels of data, which have been processed with one or more codes that distributes each

11   signal across the available bandwith" (*id.* at 20), and the latter to mean "a plurality of signals

12   processed with one or more codes that distributes each signal across the available bandwidth" (*id.* at

13   22).  The difference is significant to this dispute.  How those terms are used in the claims is also

14   significant.  For the first term "subchannel signals," the '322 claim language itself correlates

15   subchannel signals with subchannels of data, and thus, the inclusion of "data" in the construction of

16   "subchannel signals" mirrors the claim language.  For the second term "plurality of spread spectrum

17   signals," which is closer to "spread spectrum signals," Judge Love did ***not*** include the word "data" in

18   his construction, and the claim is not so limited.  Moreover, Judge Love did not hold that "data" as

19   used in claim 9 of the '322 patent is synonymous with and limited only to "unknown data."

20   Therefore, Linex submits that the Texas Case's construction covered spread spectrum signals

21   that were not limited to "unknown data" processed with codes to increase the bandwidth.  The Texas

22   Case's construction actually shows that this case presents a claim construction issue on which two

23   district courts have differed.  Tellingly, the accused infringers in the Texas Case chose to take a

24   license to Linex's '322 patent.  Dkt. No. 345-6 at 30-31.  The last accused infringer stipulated that its

25   _____
     (…continued)

26   ████████████████████████████████████████████

27   ████████████████████████████████████████████████

28   ████████████████████████

1  "products that comply with any version of the 802.11n standard infringe the claims of the '322

2  patent" and agreed that only damages-related issues needed to be presented for trial.  Ex. B`, at 3.

3        Even assuming *arguendo* that Judge Love's construction was limited as Defendants argue,

4  the only patent-at-issue in that case was the '322 patent, whereas in this case, the claims of the '219

5  and '812 patents were specifically broadened to cover all types of spread spectrum systems.  Dkt.

6  No. 235-67 at 1 (2008 inventor declaration stating "[b]roadening results from adding new claims

7  reciting 'spread spectrum' broadly to cover spread-spectrum processing of all types"); Dkt. No. 235-

8  15 at 1 (2010 declaration stating same); Dkt. No. 235-22 at 1 (2011 declaration stating same).  The

9  '219 and '812 patents were broadened during reissue by ***removing*** the "spread spectrum subchannel

10  signals of data" language that was in claim 9 of the '322 patent.  *Compare* Dkt. No. 235-7, at 15:42-

11  45 (claim 9 of '322 patent) *with* Dkt. No. 235-5, at 29:31-32 (claim 121 of '219 patent) *and* Dkt. No.

12  235-6, at 28:30-31 (claim 101 of '812 patent).  Thus, Judge Love's construction of the '322 claims

13  terms does not necessarily limit the scope of the '219 and '812 claims at issue in this case.

14        Accordingly, the Texas Case is not "one of a string of vexatious litigations" as Defendants

15  erroneously allege.  Indeed, how can Defendants point to the Texas Case as an example of vexatious

16  litigation directed against them when they were not even parties to that case?  They simply cannot.

17        **F.      Attacks on Linex's damages theories are irrelevant and even if
                 considered, are without basis in fact or law.**

18

19        Defendants Aruba, Meru, and Ruckus (referred to here as the "Access Point (AP)

20  Defendants") surprisingly move this Court to consider Linex's damages positions as a basis to rule

21  that this case is exceptional.  Dkt. No. 353 at 7-12 (hereinafter "AP Defendants' Motion").  Apple

22  and HP notably do not join in their motion.  This Court lacks jurisdiction to consider damages issues

23  now for the first time because final judgment was entered on May 20, 2014.  *See Marconi,* 320 U.S.

24  at 47.

25        Damages was not an issue on which Defendants prevailed, indeed it had not yet been

26  considered, much less adjudicated in this case, and therefore, is irrelevant to this Court's analysis of

27  whether the case is "exceptional" under 35 U.S.C. § 285.  *See, e.g., Hardisty v. Astrue*, 592 F.3d

28  1072, 1078 (9th Cir. 2010) (declining to conduct EAJA fee analysis "on those issues that the district

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

1  court chose not to reach in its original decision."); *see also Buckhannon Bd. & Care Home, Inc. v.*

2  *W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 609 (2001) ("We have also stated that a

3  request for attorney's fees should not result in a second major litigation, and have accordingly

4  avoided an interpretation of the fee-shifting statutes that would have spawned a second litigation of

5  significant dimension." (internal quotations omitted)); *Polarity, Inc. v. Diversified Techs., Inc.*, No.

6  C-06-0646 EMC, 2006 WL 345634, at *2 (N.D. Cal. Nov. 29, 2006) (declining to substantively

7  construe claim limitations in denying attorneys' fees motion, stating "Fee litigation is not to be used

8  as a means for a party to litigate the substantive merits of the case.").

9      Moreover, had the parties presented damages issues to the Court, e.g., on *Daubert* or *in*

10  *limine* motions, it would be apparent that it is the Defendants who advanced meritless damages

11  theories.  Defendants' damages theories were ████████████████████████

12  ████████████████████████████████████████████████

13  ████████████████████████████████████████.  In short,

14  it was Defendants who advanced damages theories without basis in fact or law.

### 1.      Damages theories are irrelevant at this stage.

16      In the guise of an attorneys' fees motion, Defendants seek an advisory ruling on Linex's

17  expert's damages opinion.  Because the Court lacks subject matter jurisdiction over this issue,

18  *Marconi*, 320 U.S. at 47, and courts do not issue advisory opinions, the Court should decline to

19  consider this issue.  *Kronberg v. Hale*, 180 F.2d 128, 130 (9th Cir. 1950) ("Federal courts have

20  consistently held that the judicial power does not extend to the rendition of advisory opinions on

21  hypothetical states of facts or permit the exercise by the courts of functions other than those strictly

22  judicial in their nature." (citing *Muskrat v. United States*, 219 U.S. 346, 356 (1911))).

23      Further, Defendants' claim of "litigation misconduct" based on the parties' dispute regarding

24  the proper reasonable royalty theory (Dkt. No. 353 at 7-12), is frivolous.  Disagreements concerning

25  damages are the norm, not the exception, in patent litigation.  *See, e.g., Apple Inc. v. Motorola, Inc.*,

26  Nos. 2012-1548, -1549, 2014 WL 1646435, at *19 (Fed. Cir. April 25, 2014) (cautioning that

27  estimating a reasonable royalty is not an "exact science" and that record may support a range of

28  reasonable royalties, and that there may be more than one reliable method for estimating a

13

LINEX'S OPPOSITION TO DEFENDANTS' MOT. FOR FEES, AND
LINEX'S REQ. TO DEFER CONSIDERATION
Case No. 4:13-cv-00159-CW  (MEJ)

CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER

1   reasonable royalty); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1988)

2   (determining a fair and reasonable royalty is "a difficult judicial chore, seeming often to involve

3   more the talents of a conjurer than those of a judge"), *overruled on other grounds by Knorr-Bremse*

4   *Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004).

5          **2.     If this Court considers the parties' damages theories, the Court
                should find Defendants' damages positions without merit.**

6

7          This Court should decline Defendants' invitation to examine the parties' damages theories.

8   Even if the Court considers the issue now, a review of the parties' damages expert reports shows that

9   it is Defendants' damages positions that are without foundation in fact or law.

10         First, Defendants' unfounded allegation that Linex's damages expert report was served

11  merely to coerce Defendants into a settlement (Dkt. No. 353 at 7-8, 12-13) is unsupported by any

12  evidence.  Defendants do not, and cannot, show that this case is similar in any respect to the one case

13  they cite on this point.  Dkt No. 345-3 at 7, 12-13 (citing *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d

14  1314 (Fed. Cir. 2011)).  In that case, the losing party filed over 100 lawsuits with a pattern of

15  demanding quick settlements, which were clearly just nuisance settlements.  *Eon-Net LP*, 653 F.3d at

16  1326-27.  No such evidence is cited by Defendants here, because none of those facts exist here.

17         Although the court in *Eon-Net* found the case exceptional, that finding was not based on a

18  party's damages theories or amounts.  Instead, the court based its finding of exceptionality on

19  abusive settlement tactics present in that case that are not present in this case.  *See id.* at 1327-28.

20  Defendants do not, and cannot, point to any abusive settlement tactics, they merely point to their

21  disagreement with Linex's expert's methodology and ultimate conclusion on damages—which (like

22  in every case) Defendants unsurprisingly assert to be too high.  Dkt No. 345-3 at 7, 12-13.

23  Defendants' disagreement is not a basis for a finding that Linex's damages positions were so without

24  merit that the Court could conclude the case was exceptional under 35 U.S.C. § 285.  Indeed, an

25  examination of Linex's expert's damages reports and two days of deposition testimony (e.g., Expert

26  Report of Walter Bratic, dated January 31, 2014; Supplemental Expert Report of Walter Bratic,

27  dated March 19, 2014; Deposition of Walter Bratic, March 26 and March 27, 2014), demonstrates

28  just how careful, considered, and thorough Linex's damages analysis is in this case.

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

1    Second, Defendants' attacks on the merits of Mr. Bratic's damages opinions (Dkt No. 345-3

2    at 7-12), should the Court examine them, are similarly unfounded. ███████████████████

3    ████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████   As part of this analysis, Linex's

8    technical expert, Dr. Prucnal, analyzed the comparability of technology in certain license

9    agreements.  Ex. G, Prucnal 1/31/2014 Report at 6-9; *see also* Ex. F, Bratic Report at ¶¶ 73-129,

10   232-246; Ex. H Bratic Supplemental Report at ¶¶ 11-13. ████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████████

13   ██████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████

18   Third, Defendants' attacks on Linex's damages expert (Dkt. No. 345-3 at 10-12), are equally

19   unfounded and irrelevant.  For example, Defendants make the unremarkable point that Linex's

20   damages expert, Mr. Bratic, relied on Linex's technical expert in reaching his conclusions.  This was

21   appropriate and Defendants' expert, Mr. Ugone, did the same thing (Ex. L, Ugone Report, at n. 242-

22   249, 252-253).  *See Apple Inc.*, 2014 WL 1646435, at *24-26 (explaining that patent damages

23   experts often rely on technical experts).[6]  Defendants criticize Mr. Bratic's selection of comparable

24   ---

[6]  Defendants also cite to prior unrelated instances where the testimony of Linex's damages expert
25   was allegedly stricken or limited.  Mr. Bratic's opinions in unrelated cases are wholly irrelevant to
     the issue at hand or to his opinions in this case, and would have been excluded as unduly prejudicial
26   and inadmissible hearsay.  *United States v. Sine*, 493 F.3d 1021, 1033, 1036 (9th Cir. 2007); Fed. R.
     Evid. 802; *McCormick on Evidence* § 318.
27

28

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

1   licenses.  But, the comparability of the licenses Linex's expert (or even Defendants' expert) relied on

2   in assessing the *Georgia Pacific* factors on applicable the reasonable royalty was not yet an issue in

3   this case.  Even if it were, this is an objection that goes to the weight not the admissibility of the

4   evidence, and is an issue ultimately best reserved for the jury.  *Id*. at *30.

5        Importantly, it is Defendants' damages experts (Messrs. Meyer, Hansen, and Ugone) who

6   proffered opinions that are not tied to the facts of this case.  For example, Defendants assert that the

7   ████████████████████████████████████████████████████████████████

8   ██████████████████████████████████████████████████████████████████

9   ███████████████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████████████

11  █████████████████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████████████████

13  Dkt. Nos. 89-93 (no breach of contract claim asserted in this case).  Accordingly, Defendants had no

14  legal or factual basis to argue that damages in this case should be based on non-party chip

15  manufacturer profits.

16  ███████████████████████████████████████████████████████████

17  ███████████████████████████████████████████████████ Ex. L, Ugone

18  Report at ¶ 141; Ex. M, Meyer Report at ¶¶ 59 and 73-79; Ex. N, Hansen Report at ¶¶ 134, 212-219.

19       In short, Defendants' disagreements with Linex's damages theories are not well-founded,

20  especially in light of their own deeply flawed damages theories, and are not a basis for the Court to

21  find Linex engaged in "vexatious and abusive" litigation tactics.

22       **G.    If the Court determines that Defendants are entitled to attorney's fees,
              the award should either be zero based on the lack of detail Defendants
23            submit to support their motion or be significantly reduced based on the
              exorbitant amount Defendants seek.**
24
25            **1.    Defendants failed to meet their burden of providing the necessary
                    detail to support an award of attorney's fees.**

26       As the parties seeking fees, Defendants bear "the burden of documenting the appropriate

27  hours expended in the litigation," and are required to "submit evidence in support of those hours

28  worked."  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).  Yet, none of Defendants

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

have provided the necessary detail for the Court to award—or Linex to challenge—the amount of fees they seek.  Defendants' fee demands are, thus, unreasonable and unsubstantiated.

Specifically, Apple and HP merely submitted charts that identify only the total number of hours worked per each time keeper and the average rate billed by that timekeeper.  Dkt. No. 344-5; 346-6; 346-8.  None of Apple's or HP's charts for fees provide any detail about the work performed, including when the work was done, what tasks were completed, and how each of those tasks allegedly relate to the fees they seek in this case.

While Aruba, Ruckus, and Meru provided summary charts of the fees they seek with some descriptions of the work conducted, those descriptions are not detailed enough to determine how they related to particular tasks necessary for this litigation.  Dkt. Nos. 348-350.  In fact, as explained below, even Aruba, Ruckus, and Meru's summary chart of fees with bare descriptions of the tasks performed are replete with fees for tasks that are wholly unrelated to the merits of this case or the issues on which Defendants prevailed.

Defendants' lack of supporting documentation prevents the Court from determining a reasonable fee, and deprives Linex of "a meaningful opportunity to challenge the reasonableness of the fees requested."  *Funai Elec., Ltd. v. Daewoo Elecs. Corp.*, No. C-04-01830JCS, 2009 WL 1110825, at *1 (N.D. Cal. Apr. 24, 2009).  Because Defendants have not provided sufficiently detailed documentation that can be used to determine how the claimed hours were spent and for what specific tasks, the Court should decline to award any attorney's fees in this case.

> **2.    Based on the limited and deficient documentation that Defendants have provided, the fee amounts Defendants seek are excessive and include expert witness and other fees that are not recoverable under Section 285.**

A review of even the general and vague fee charts that Defendants provided show that the fees they seek are unnecessary and exorbitant.  Thus, any amount in attorney's fees awarded to Defendants should at least be substantially reduced.

First, although Apple and HP correctly recognize that the total amount of fees billed by their counsel are over-inclusive, the way they calculate partial fees based on the "spread spectrum" claims is unsupported.  Instead of producing documentation and evidence for the fees on only the specific

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

1    issues that were necessary for them to prevail, Apple and HP propose an over-inclusive

2    apportionment based on the total number of asserted claims.

3            Second, the rates Defendants seek are unreasonable.  "[I]t is clearly established in the Ninth

4    Circuit that it is the ***applicant's*** burden to produce specific evidence, other than declarations of

5    interested counsel, that the requested rates are in line with those prevailing in the community for

6    lawyers with comparable skill and reputation."  *Navarro v. Gen. Nutrition Corp.*, C 03-0603 SBA,

7    2005 WL 2333803, at *6 (N.D. Cal. Sept. 22, 2005) (emphasis added).  Yet, Defendants proffer only

8    conclusory declarations of counsel with no basis to support the exorbitant fees they seek.  *See, e.g.*,

9    Dkt. No. 344-4 (Plimack declaration); Dkt. No. 346-7 (Scarsi declaration).  For example, the rates

10   for some of Apple's attorneys reach ███████ for a partner with 16 years of experience and over

11   ████████ for an associate with 1.5 years of experience.  *See* Dkt. No. 346-7 at ¶¶ 3 and 9 and Dkt.

12   No. 346-8.  The same is true for HP.  Dkt. Nos. 344-4 and 344-5 (seeking ██████ for one of its

13   partners and close to $500/hour for an associate with approximately three years of experience).  In

14   contrast, some the rates for partner fees that Aruba, Meru, and Ruckus seek are in the order of ████

15   ████████ Dkt. Nos. 348-2; 349-2; 350-2.  Linex should not bear the burden of paying the high and

16   unsubstantiated fees that HP and Apple seek.

17           Third, the sheer number of billing attorneys is unjustifiably large.  ████████████████

18   ████████████████████████████████████████████████████████████

19   ████████████████████████████████  Dkt. No. 346-6.  ████████████████████

20   ████████████████████████████████████████████████Dkt. No. 344-5.  Linex

21   should not be charged with Defendants' staffing inefficiencies.

22           Fourth, specific to Apple, three separate law firms represented Apple throughout the course

23   of this litigation:  (1) Covington & Burling, LLP ("Covington"); (2) Milbank, Tweed, Hadley &

24   McCloy LLP ("Milbank"); (3) Wilmer Cutler Pickering Hale and Dorr LLP. ("Wilmer Hale").

25   Apple's requested fees include duplicative work resulting from its transitions between these law

26   firms, and Linex should not bear the costs associated with Apple's multiple substitution of counsel.

18

LINEX'S OPPOSITION TO DEFENDANTS' MOT. FOR FEES, AND
LINEX'S REQ. TO DEFER CONSIDERATION
Case No. 4:13-cv-00159-CW  (MEJ)

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

1    Lastly, Aruba, Meru, and Ruckus seek fees (1) for tasks not related to the issues decided by

2  the Court in this case and (2) from e-discovery service providers and experts that are not recoverable

3  as "attorney's fees."

4    Regarding the first category, Aruba's invoices include fees for tasks such as ████████

5  ██████████████████████████████████████████████████████████

6  ██████████████████████████████████████████████████████████

7  ████████████████████████████████ and many others.  Dkt. No. 350-2 at 1, 11,

8  17, 18, 113.  Similarly, Meru's invoices show fees for tasks such as ████████████████

9  ██████████████████████████████████████████████ Dkt. No.

10  348-2 at 10, 15, 20, and 43.  Ruckus' invoices are no different, including tasks for ████████

11  ████████████████████ Dkt. No. 349-2 at 41.  None of these tasks are related to the merits of this

12  case.

13    Regarding the second category, Aruba's invoices also include ████████████ for fees

14  associated with an ████████████████████████████████████████

15  ██████████████████████.  Dkt. No. 350-2 at 35, 44, 52, 61, 71, 79, 91, 101, 110, 118.

16  Meru similarly seeks fees for services provided by an ██████████████████████.  Dkt. No.

17  348-2 at 18, 22, 30, 32, 35, and 39.  These are not "attorney's fees."

18    Aruba, Meru, and Ruckus also seek unrecoverable amounts of ████████████████

19  ██████████████████████████████████████████████████████████

20  ████████████████████████████.  Dkt. No. 348 at 4-5, Dkt. No. 349 at 4-5, Dkt.

21  No. 350 at 4-5.  But, "an award under section 285 encompasses only attorney fees, and not expert

22  witness fees." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 377 (Fed. Cir. 1994).

23    **3.    The Court should deny Aruba, Meru, and Ruckus's motion for**
            **fees that were not incurred in this case, but were instead expended**
24          **during the ITC Investigation, which was dismissed before**
            **litigation got underway in this case.**
25

26    Aruba, Meru, and Ruckus cite the *Monolithic Power* case to erroneously claim fees incurred

27  for their defense in the ITC Investigation.  *Monolithic Power Sys. v. O2 Micro Int'l.*, No. 4:08-cv-

28

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

04567 CW, Dkt. No. 449 (N.D. Cal. Mar. 3, 2011), attached as Ex. O for the Court's convenience. But the circumstances in that case were vastly different from the ones here.

In *Monolithic Power*, unlike here, O2 Micro repeatedly sued MPS's customers, and was found to have engaged in significant misconduct, specifically a persistent "proffer of false testimony" that, even after coming to light, O2 Micro tried to conceal through motion practice. *Id.* at 14. The district court in *Monolithic Power* also found that (1) the filing of the ITC case by O2 Micro was retaliatory and part of a pattern and practice of vexatious filings, and (2) O2 Micro had used the same false evidence in the ITC case too. *Id.* at 12-14 (finding the inventor and O2 Micro offered false testimony and evidence about earlier conception and reduction to practice of patent). The Federal Circuit affirmed the award of fees from the ITC investigation in view of these "unique circumstances" of "rampant misconduct." *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1369 (Fed. Cir. 2013). It was those unique circumstances that warranted a departure from the general rule that a party cannot recover fees incurred in another proceeding. *See Rock Creek Ltd. P'ship v. State Water Res. Control Bd.*, 972 F.2d 274, 279 (9th Cir. 1992). Here, Defendants do not provide grounds for this Court to depart from the general rule. Linex did not engage in a pattern of filing cases against the Defendants or their customers, nor did Linex proffer false evidence, and thus, there was no vexatious litigation strategy or litigation misconduct like the unique circumstances of *Monolithic Power*. As even Apple and HP recognize, any calculation of a reasonable fee should not include fees incurred during the separate ITC Investigation. Dkt. No. 346-3 at 8.

Moreover, in *Monolithic Power*, the Court declined to stay the district court case and instead ordered the parties to use discovery interchangeably between the district court case and the ITC Investigation being litigated concurrently. *Monolithic Power Sys.*, 4:08-cv-04567 CW, Dkt. No. 449 at 8 (discovery from the one could be used in the other and vice-versa). In contrast, here, the ITC Investigation concluded before the stay was lifted, and did not involve the same patents. Further, Defendants did not oppose the termination of the ITC Investigation, which occurred over two years ago in April 2012 (before the commencement of discovery in this case), or seek fees and costs at the ITC.

LINEX'S OPPOSITION TO DEFENDANTS' MOT. FOR FEES, AND
LINEX'S REQ. TO DEFER CONSIDERATION
Case No. 4:13-cv-00159-CW  (MEJ)

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

**H.  This case is not "exceptional" under any standard.**

Apple and HP's reliance on *Home Gambling*, *Lumen*, and *Classen* to portray this case as exceptional, Dkt. No. 346-3 at 3, is misplaced. *Home Gambling* involved a patent owner who (1) asserted a method patent when it was apparent that steps of the method patent were not performed in the United States, (2) expressly disclaimed at the USPTO the subject matter accused of infringement, and (3) engaged in patent misuse. *Home Gambling Network Inc., v. Piche*, 2:05-CV-610-DAE, 2014 WL 2170600, *9 (D. Nev. May 22, 2014). Here, in contrast, accused infringers in a prior case, including companies like Cisco, took a license to Linex's patents, and at least one defendant even expressly conceded infringement. Further, the USPTO, through reissue proceedings, confirmed the validity of the '219 and '812 patents-in-suit.

*Lumen* involved an exclusive patent licensee who asserted a frivolous patent infringement lawsuit without conducting any infringement analysis of the accused website and used offensive litigation tactics including threatening to pursue criminal charges. *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 13 CIV. 3599 DLC, 2014 WL 2440867, *3, 6 (S.D.N.Y. May 30, 2014). There is no allegation in this case that Linex threatened criminal charges or did not conduct a pre-filing analysis.

*Classen* is similarly inapposite. There, the patent owner maintained infringement claims for over nine years—without any good faith basis whatsoever—even though he knew within five months of filing suit that the defendant did not develop, manufacture, or sell the allegedly infringing items. *Classen Immunotherapies, Inc. v. Biogen Idec*, CIV. WDQ-04-2607, 2014 WL 2069653, *4 (D. Md. May 14, 2014). Here, the Defendants clearly manufacture or sell the accused products. The circumstances in *Home Gambling*, *Lumen*, and *Classen* are inapplicable here.

Defendants cannot show that this case meets the "exceptional" case standard. "An award of attorney's fees . . . must be predicated upon something beyond the fact that a party has prevailed." *IP Innovation L.L.C. v. Red Hat, Inc.*, No. 2:07-cv-447 (E.D. Tex. Oct. 13, 2010), Dkt. No. 273 at 2 (Rader, J.), attached as Ex. P for the Court's convenience. The Ninth Circuit's decision in *Park-in-Theatres,* cited with approval by the Supreme Court in *Octane Fitness*, 134 S. Ct. at 1753, is instructive. In *Park-in-Theatres*, the Ninth Circuit reversed an award of attorney's fees in a patent

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

1    infringement case where, like here, there was a prior action with a result "in some measure

2    favorable." 190 F.2d at 142-32. Linex achieved results that were in some measure favorable. In

3    2012, the USPTO reissued the patents-in-suit with broader claims (e.g., claims 97, 98, 101 and 102

4    of the '812 patent) than the ones at issue at the ITC Investigation or the Texas Case. And the

5    USPTO considered the very reference that the Court relied upon when granting summary judgment

6    of invalidity for some of the asserting claims, further evidencing Linex's good-faith belief of the

7    validity of its patents. Additionally, the claim construction ruling by Judge Love in the Texas Case

8    was favorable to Linex, and various Texas defendants elected to take a license—including, for

9    example, Cisco—to the parent '322 patent.

10           When viewed in their entirety, as required by the Supreme Court, the facts do not establish

11   that this is an "exceptional" case. Linex had a reasonable and good-faith basis for its positions on

12   validity and infringement. Linex's case involved complex construction of technical terms. That

13   Linex prevailed on 8 out of the 9 claim terms undermines Defendants' claim that the case was

14   baseless. *See, e.g.*, *CreAgri*, 2014 WL 2508386, at *9 (denying fees where plaintiff lost but

15   prevailed on a number of claim construction terms, a factor that undermined defendant's assertion

16   that the case was baseless); *EON Corp.*, 2014 WL 2196418, at *2 (granting summary judgment

17   against patentee but denying fees because claim construction issues were "complex"); *Bianco*, 2014

18   WL 1904228, at *2 (E.D. Tex. May 12, 2014) (denying motion for fees under Octane Fitness

19   standard) (citing *iLor, LLC v. Google*, 631 F.3d at 1378 ("Though iLor was ultimately unsuccessful

20   in its patent infringement suit, Google has not met its high burden to show . . . that this suit was

21   brought frivolously or that iLOR's position on claim construction was objectively baseless.")); *and*

22   *IP Innovation*, No. 2:07-cv-447, Dkt. No. 273.

23           Moreover, Aruba, Meru, and Ruckus' attacks on Linex's damages theories are irrelevant to

24   whether this case is exceptional, and are not well-founded. Their disagreement with Linex's theories

25   is not evidence of litigation misconduct, but instead, just an ordinary difference over the amount of

26   and approach to damages. The substantive strength of Linex's case was not so conspicuously

27   deficient as to justify the award of attorney's fees. Accordingly, the Court should deny Defendants'

28   motion.

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

### REQUEST TO DEFER CONSIDERATION OF FEES AND COSTS

In the interests of justice and judicial economy, Linex respectfully moves that this Court should defer consideration and adjudication of fees (if any) and its review and accounting of the voluminous, disputed invoices and alleged costs submitted by Defendants pending resolution of the appeal in this case.[7]

"If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice." Fed. R. Civ. P. 54(d) Advisory Committee Notes to 1991 Amendments. The Court has broad discretion to stay fees and costs pending appeal. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (finding the Court has broad discretion to stay proceedings as an incident to its power to control its own docket).

On June 18, 2014, Linex appealed the Court's claim construction and summary judgment rulings to the Court of Appeals for the Federal Circuit. Dkt. No. 365. Because Linex prevailed on certain claim construction issues (Dkt. No. 333), if the Federal Circuit reverses or remands on issues of infringement and/or validity adversely decided against Linex, further proceedings would be held that would render Defendants' motion for fees and costs moot. In fact, Linex would become the prevailing party. To avoid needless satellite litigation and conserve the Court's and the parties' resources, consideration of the Defendants' motions for fees and bills of costs should be deferred until after the appeal.

Moreover, it is in the interests of fairness to continue this matter in view of the disparity in the parties' size and resources. Linex is a small innovative company, whereas Apple is a large company with vast resources and an avowed "take no prisoners" litigation policy. Ex. Q (discussing Apple's scorched-earth patent litigation approach and quoting Apple CEO: "I will spend my last dying breath if I need to, and I will spend every penny of Apple's $40 billion in the bank . . . I'm willing to go thermonuclear war."). Similarly, HP and the other highly profitable Defendants are much larger companies than Linex. The Northern District of California and other courts have

---

[7] Since they are related, Linex includes its Motion to Defer Consideration of Fees and Costs with its Opposition to Defendants' Motions for Fees.

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

1   granted similar requests.  *In re Online DVD Rental Antitrust Litig.*, C 09-2163 PJH, 2012 WL

2   1414111 (N.D. Cal. Apr. 20, 2012) (deferring payment of costs pending appeal); *Steffens v. Regus*

3   *Group, PLC*, 08-CV-1494-LAB, 2012 WL 628235 (S.D. Cal. Feb. 24, 2012) (deferring costs

4   pending appeal of summary judgment because of economic disparity between parties, and litigation

5   was brought in good faith); *In re Ricoh Co., Ltd. Patent Litig.*, C 03-02289 JW, 2010 WL 8961328

6   (N.D. Cal. Sept. 29, 2010) (deferring payment of costs pending appeal).

7                                        CONCLUSION

8          Defendants' motions for fees should be DENIED, or in the alternative, deferred until after the

9   appeal in this case has been decided.

10

11  Date: July 1, 2014                          */s/  Robert F. McCauley*
                                                Robert F. McCauley (SBN 162056)
12                                              Robert.mccauley@finnegan.com
                                                FINNEGAN, HENDERSON, FARABOW,
13                                              GARRETT & DUNNER, LLP
                                                Stanford Research Park
14                                              3300 Hillview Avenue
                                                Palo Alto, CA 94304-1203
15                                              Telephone: (650) 849-6600
                                                Facsimile: (650) 849.6666

16                                              Vincent P. Kovalick (*Pro Hac Vice*)
                                                Vincent.kovalick@finnegan.com
17                                              Barry W. Graham (*Pro Hac Vice*)
                                                Barry.graham@finnegan.com
18                                              Richard H. Smith (*Pro Hac Vice*)
                                                Richard.smith@finnegan.com
19                                              Troy E. Grabow (*Pro Hac Vice*)
                                                Troy.grabow@finnegan.com
20                                              Laura P. Masurovsky (*Pro Hac Vice*)
                                                Laura.masurovsky@finengan.com
21                                              Rajeev Gupta (*Pro Hac Vice*)
                                                Rajeev.gupta@finnegan.com
22                                              Kenie Ho (*Pro Hac Vice*)
                                                Kenie.ho@finnegan.com
23                                              Cecilia Sanabria (*Pro Hac Vice*)
                                                Cecilia.sanabria@finnegan.com
24                                              Jia Lu (*Pro Hac Vice*)
                                                Jia.lu@finnegan.com
25                                              Robert D. Wells (*Pro Hac Vice*)
                                                Robert.wells@finnegan.com
26                                              FINNEGAN, HENDERSON, FARABOW,
                                                GARRETT & DUNNER, LLP
27                                              901 New York Avenue, N.W.
                                                Washington, D.C. 20001-4413
28                                              Telephone: (202) 408-4000

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION SUBJECT TO PROTECTIVE ORDER*

Facsimile: (202) 408-4400

Attorneys for Plaintiff
*Linex Technologies, Inc.*