IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINEX TECHNOLOGIES, INC., | No. C 13-159 CW |
| Plaintiff, | ORDER REGARDING BRIEFING SCHEDULE FOR MOTIONS FOR ATTORNEYS' FEES |
| v. | |
| HEWLETT-PACKARD COMPANY; APPLE COMPUTER INC.; ARUBA NETWORKS, INC.; MERU NETWORKS, INC.; and RUCKUS WIRELESS, INC., | (Docket No. 345, 346) |
| Defendants. | |

On May 20, 2014, the Court entered judgment in favor of Defendants HP, Apple, Aruba, Meru, and Ruckus and against Plaintiff Linex. Docket No. 334. On June 10, 2014, Aruba, Meru, and Ruckus (collectively, the access point or AP manufacturers) filed a motion seeking an award under 35 U.S.C. § 285 of all of their attorneys' fees. Docket No. 345. HP and Apple filed a similar motion, but sought only attorneys' fees associated with the asserted claims that the Court found to be valid but not infringed. Docket No. 346. Linex opposes both motions and argues in the alternative that the issue of attorneys' fees should be deferred until the Federal Circuit decides the appeal of the Court's order. On July 31, 2014, the Court held a hearing. Based on the papers and arguments of counsel, the Court GRANTS HP and Apple's motion and GRANTS the AP manufacturers' motion in part.

/ /

/ /

BACKGROUND

In June 2007, Linex filed suit in the Eastern District of Texas, asserting infringement of U.S. Patent No. 6,757,322 (the '322 patent) against fifteen entities that were not sued here. <u>Linex Techs., Inc. v. Belkin Int'l</u>, Case No. 2:07-cv-00222 JDL (E.D. Tex. June 1, 2007) (the Texas case).  In the Texas case, Linex based its infringement claims on the same 802.11n standard invoked here.[1]  The Texas court issued a claim construction order, construing "spread spectrum signals" as "signals processed with one or more codes that distributes each signal across the available bandwidth."  Docket No. 235-16 at 22.  Shortly thereafter, Linex settled its claims with each of the defendants for lump sum payments.

After the Texas ruling, Linex went back to the United States Patent and Trademark Office (USPTO) to seek reissues of some of the continuation patents of the '322 patent.  The USPTO can reissue a patent in accordance with an amended application when a patent was erroneously deemed wholly or partly inoperative or invalid, or because a patentee claimed more or less than he had a right to claim in the patent.  35 U.S.C. § 251.  No new subject matter may be introduced in the reissue application.  <u>Id.</u>  In June

---

[1] The Wi-Alliance introduced the 802.11n WiFi certification in 2007.  Bratic Report ¶ 53.  The standard was formally adopted in 2009.  <u>Id.</u>

2

2008,[2] Linex filed an application for RE 42,219 (the '219 patent), a reissue patent for "Multiple-input and multiple-ouput (MIMO) spread spectrum system and method."  The '219 patent was issued in March 2011.  Also in March 2011, Linex filed an application for RE 43,812 (the '812 patent), which had the same title as the '219 patent and covered similar subject matter.  The '812 patent issued in November 2012.

In May 2011, Linex filed a petition at the International Trade Commission (ITC) requesting relief for Defendants' infringement of the '322 and '219 patents (the ITC Investigation).  The ITC can issue an exclusion order halting imports and exports of an infringing product, but cannot award compensatory damages.  At around the same time, Linex filed this patent infringement case against Defendants in Delaware, seeking compensatory damages.  The parties agreed to stay the litigation pending resolution of the ITC Investigation.

During the ITC Investigation, the staff attorney issued an opinion on claim construction, validity, infringement, and

---

[2] Defendants point out that their products were on sale as of 2006.  Bratic Report ¶ 40.  The Wi-Alliance introduced the 802.11n standard in 2007 and it was formally adopted in 2009.  Id. ¶ 53.  By contrast, the '219 patent and '812 patent were issued in 2008 and 2011.

3

domestic industry regarding the '322 and '219 patents.[3] The staff attorney found that "spread spectrum signals" should be construed to mean "signals corresponding to data which has been processed with one or more codes that distributes each signal across a bandwidth greater than the bandwidth required to carry the data." Docket No. 375, Ex. A at 17.  In other words, like this Court did later, the staff attorney found that spread spectrum signals resulted from the processing of data with codes to increase the bandwidth of the data signal.  The staff attorney accordingly opined that he did "not expect the evidence to show infringement of the asserted claims of the '322 and '219 patents." Id. at 32.  The staff attorney also determined that there was no domestic industry.  Two business days after the staff attorney's opinion was published, Linex voluntarily dismissed the ITC action.

Upon the parties' stipulation, the Delaware court lifted the stay.  Docket No. 28.  The case was eventually transferred to this district.  Docket No. 96.  After the '812 patent issued, Linex added it to the suit.  After a settlement conference, Linex withdrew a number of asserted claims, including all claims of the '322 patent.  See Docket No. 327.

---

[3] The staff attorney's position may or may not be adopted by the ALJ in his or her initial determination.  The initial determination would then be reviewed by the ITC Commission.  ITC decisions are not necessarily binding on the district court. Texas Instruments Inc. v. U.S. Int'l Trade Comm'n, 851 F.2d 342, 343 (Fed. Cir. 1988).

4

On May 20, 2014, the Court construed the disputed claim terms and entered summary judgment in favor of Defendants and against Linex. The disputed claim terms could be grouped into four general categories: (a) "spread spectrum signals," (b) "codes," (c) "combining" terms, and (d) "separating" terms. Docket No. 333 (MSJ Order), 5. The Court adopted constructions similar to Linex's proposals for "codes," the "combining" terms, and the "separating" terms, but adopted Defendants' proposed construction for "spread spectrum signals." Id. at 6, 11, 15, 19. Regarding the asserted claims containing the term "spread spectrum signals" -- claims 121 and 131-132 of the '219 patent and claims 101-102 of the '812 patent -- the Court found the claims to be valid as distinct from the prior art, but not infringed by Defendants' accused orthogonal frequency division multiplexing (OFDM) products. Id. at 29-33. As for the remaining asserted claims not containing "spread spectrum signals" but referring generally to "codes" and "signals" -- claims 97 and 107-108 of the '219 patent and claims 97-98 of the '812 patent -- the Court found that these claims lacked the spread spectrum limitation distinguishing them from the prior art, and so these claims were invalid. Id. at 35. The Court therefore entered judgment in favor of Defendants on all asserted claims.

Defendants now seek an award of attorneys' fees under 35 U.S.C. § 285. HP and Apple argue that the case is exceptional because this is the third time Linex has pressed the claims the

5

Court found to be valid but not infringed, despite indications of their substantive weakness against the 802.11n standard. The AP manufacturers, who collectively incurred almost four million dollars defending against Linex, seek reimbursement for all of their attorneys' fees.

LEGAL STANDARDS

Under 35 U.S.C. § 285, the court "in exceptional cases may award reasonable attorney fees to the prevailing party." In several cases leading up to this year, the Federal Circuit admonished that a district court should not award fees unless it finds litigation-related misconduct that would independently be sanctionable, or litigation that was both "brought in subjective bad faith" and "objectively baseless." Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005). Examples of litigation-related misconduct include "fraud or inequitable conduct in procuring the patent"; "vexatious or unjustified litigation"; and "objectively baseless" arguments that "no reasonable litigant could believe would succeed." Id.; iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1378 (2011).

This year, however, the United States Supreme Court reviewed two fee claims and altered the standard for the determination substantially. The Supreme Court found the Brooks Furniture test to be unnecessarily rigid and instead opted for a more "holistic, equitable approach." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1754 (2014). The Court held that

an "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Id. at 1756. There is "no precise rule or formula" for this determination and so the district court should consider the totality of the circumstances. Id. Because the exceptional case determination may be informed by the district court's unique insight into the manner in which the case was litigated, it is within the sound discretion of the district court. Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., 134 S. Ct. 1744, 1748 (2014).

DISCUSSION

As a preliminary matter, Linex's request that the Court defer consideration of the fees issue is without merit. If this Court decides the fees issue now, the Federal Circuit may consider the overlapping summary judgment and fees issues together, saving judicial resources. See Nystrom v. TREX Co., 339 F.3d 1347, 1350 (Fed. Cir. 2003) (opposing piecemeal appeals).

Defendants contend that this case is exceptional based on Linex's assertion of the claims containing the "spread spectrum" term against the OFDM technology practiced by Defendants. Two other fora, the Eastern District of Texas and the ITC, previously decided against Linex, construing "spread spectrum" as requiring "spreading" of the bandwidth of the data. Linex therefore should have known that it could not use the patent claims limited to

7

"spread spectrum" to capture devices practicing the distinct and more complex OFDM technology. Linex nevertheless continued to press those patent claims against Defendants in the present suit.

Linex responds that Defendants overemphasize the strength and importance of the two prior decisions. Although the Texas court's construction of "spread spectrum signals" was almost identical to this Court's construction, Linex argues that the Texas court did not emphasize the "unknown" quality of the data as this Court did. Regarding the ITC action, the staff attorney's opinion was not final. Nevertheless, the fact that Linex settled with all of the Texas defendants soon after that court's claim construction, and withdrew its ITC claims immediately after the staff attorney's opinion was published, indicates that these opinions were more important than Linex now argues.

Even though neither forum's determination was binding on this Court's determination as res judicata, Linex was not free to pursue another case targeting the same technology with impunity. Patent litigation is a burdensome venture for all parties involved. Thus, plaintiffs must conduct careful investigation before bringing suit. See <u>Lumen View Tech., LLC v. Findthebest.com, Inc.</u>, 2014 WL 2440867, at *6 (S.D.N.Y.) (finding the case to be "exceptional" because "the most basic pre-suit

8

investigation would have revealed" that the infringement allegations had no merit).[4]

Linex should have known that its spread spectrum claims would not succeed against OFDM technology. The inventor of Linex's patents, Donald Schilling, himself characterized spread spectrum in his publication as:

> a means of transmission in which the signal occupies a bandwidth in excess of the minimum necessary to send the information; the band spread is accomplished by means of a code which is independent of the data, and a synchronized reception with the code at the receiver is used for despreading and subsequent data recovery.

Docket No. 235-17 (Schilling Tutorial) at 2. If Linex did not know initially that its spread spectrum claims could not be stretched to cover OFDM technology, it should have known after it litigated those claims in Texas and in the ITC. Linex urged two fora to adopt its overbroad definition of "spread spectrum signals," to no avail.

Although Linex argues that it still did not know that those claims were frivolous, its actions suggest otherwise. In 2008, after an unfavorable claim construction decision in Texas, Linex returned to the USPTO to broaden the scope of its patents. Linex

---

[4] See also Fed. R. Civ. P. 11; cf. Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1051 (9th Cir. 2007) (listing factors of Ninth Circuit's vexatious litigant standard, including whether litigant had a history of bringing harassing and duplicative suits, litigant's motive for pursuing the litigation, whether litigant had a good faith expectation of prevailing, whether litigant caused unnecessary expense to the parties or placed needless burden on the courts, and whether sanctions would be necessary to protect the parties).

9

deleted the term "spread spectrum signals" from several of the claims in the '219 patent. See Docket No. 235-22 (stating patentee's intent "broadly to cover spread spectrum processing of all types within the conventional meaning of 'spread spectrum'"). In 2011, Linex did the same with the '812 patent. That Linex chose to broaden certain claims of the '219 and '812 patents suggests that it knew about the substantive weakness of its spread spectrum claims. Moreover, Schilling admitted that, in drafting the reissue patents, he intended to cover systems that he did not invent. Schilling Depo., 257:6-21 (stating that he "took a chance" and drafted claims that might cover "any spread spectrum system," including some he might not know about). Because the context of a spread spectrum system was integral to patentability, this was improper. MSJ Order at 22-29 (holding that the claims lacking the "spread spectrum signals" limitation were invalid because every limitation was disclosed by the Paulraj prior art reference).

Linex next argues that, in spite of the three fora's narrow interpretation of spread spectrum technology, it had a reasonable case for infringement. In this case, Linex argued that the HT-LTF, a preordained training field sent before the data signal, was the "data" required by the Court's construction to create a spread spectrum signal. Linex's argument was contradicted by its own infringement expert, who characterized the HT-LTF as "test and control data" more analogous to a code, rather than "message

10

data." MSJ Order at 33. Although Linex hypothesized that even test and control data could be "data" under the patents-in-suit, the Court rejected this theory because the specification makes clear that "data" is what is intended to be communicated to the recipient. Id. Further, even if the Texas court did not emphasize that "data" is the content or message and is distinct from a "code," it did not need to do so because those are the generally accepted meanings of the terms within the art, and nothing in the patent suggests another meaning. See MSJ Order at 7-8; Schilling Tutorial at 2 (discussing a code as "independent of the data"). Accordingly, Linex's infringement position under the Court's construction was weak.

The AP manufacturers contend that Linex's unreasonable expert damages report is an alternative ground for finding the case exceptional. They argue that the unreasonableness of Linex's damages demand is an example of its allegedly abusive litigation strategies. Eon-Net LP v. Flagstar Bancorp, 653 F.3d 1314, 1324-26 (Fed. Cir. 2011) (district court's finding that patentee's bad faith settlement tactics supported ruling that the case was exceptional). Because the record upon which a decision on damages would be made was never fully developed, the Court cannot determine whether Linex's damages demand was unreasonable. For example, the Court cannot determine on this record whether the patented feature drove demand of the entire product.

11

In sum, Linex knew or should have known that its spread spectrum claims were meritless as asserted against OFDM technology. Linex's actions and admissions, considered alongside several fora's decisions rejecting its litigation arguments, show that Linex knew the limits of the spread spectrum technology that was crucial to the novelty of its patents. Linex exhibited "an overall vexatious litigation strategy" by continuing to hold these groundless claims over Defendants' heads to increase potential settlement amounts. Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd., 726 F.3d 1359, 1367 (Fed. Cir. 2013) cert. denied, 134 S. Ct. 1546 (2014) (affirming district court's award of attorney's fees). But "the appetite for licensing revenue cannot overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith." Eon-Net LP, 653 F.3d at 1328. Because Linex repeatedly attempted to broaden the reach of its patents to capture technology it knew it did not invent, this case is exceptional. An award of attorneys' fees on the spread spectrum claims is warranted.

Defendants concede that they have not provided detailed descriptions of the billed time and tasks that can properly be attributed to the spread spectrum claims. Nor do they justify the rates at which the attorneys billed. Both are required under Ninth Circuit case law. Welch v. Metro Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007). Because the Court has now determined that only the fees fairly attributable to the spread spectrum

12

claims can be recovered, each Defendant is directed to compile an accounting of fees limited to work on these claims, in sufficient detail to satisfy the Ninth Circuit's standard for fee awards. Defendants' counsel's hourly rates must also be disclosed and justified.  Defendants' accounting of fees must be submitted no later than fourteen days from the issuance of this order. Plaintiff may respond seven days thereafter, addressing only the amount of fees claimed.  Defendants may reply seven days after that.  The matter will be decided on the papers.

IT IS SO ORDERED.

Dated: 9/15/2014

CLAUDIA WILKEN
United States District Judge