MICHAEL J. BETTINGER (SBN 122196)
SHANE BRUN (SBN 179079)
MEGHANA RAORANE (SBN 253531)
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: 415.882.8200
Facsimile: 415.882.8220
mike.bettinger@klgates.com
shane.brun@klgates.com
meghana.raorane@klgates.com

L. SCOTT OLIVER (SBN 174824)
K&L GATES LLP
630 Hansen Way
Palo Alto, California 94304
Telephone:  650-798-6700
Facsimile:  650-798-6701
scott.oliver@klgates.com

ERIC C. RUSNAK (ADMITTED PRO HAC VICE)
K&L GATES LLP
1601 K Street, NW
Washington, DC 20006
Telephone: 202.778.9000
Facsimile: 202.778.9100
eric.rusnak@klgates.com

*Attorneys for Defendant*
*ARUBA NETWORKS, INC.*
*MERU NETWORKS, INC.*
*RUCKUS WIRELESS, INC.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LINEX TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> HEWLETT-PACKARD COMPANY, APPLE INC., ARUBA NETWORKS, INC., MERU NETWORKS, INC., RUCKUS WIRELESS, INC., <br><br> Defendants. | CASE NO. 4:13-cv-00159-CW (MEJ) <br><br> **ARUBA NETWORKS, INC.'S, MERU NETWORKS, INC.'S AND RUCKUS WIRELESS, INC.'S SUPPLEMENTAL MEMORANDUM ON ATTORNEYS' FEES UNDER 35 U.S.C. § 285** <br><br> **FILED UNDER SEAL** |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.    INTRODUCTION ...............................................................................................................1

II.    ATTORNEYS' FEES ..........................................................................................................1

    A.    Legal Standard for Calculating Reasonable Fees ......................................................1

    B.    The Finnegan Firm's Fees are Relevant and Should Have Been Produced ............3

    C.    District Court Fees Incurred in Defending Against the Groundless "Spread Spectrum" Claims ......................................................................................................4

    D.    ITC Discovery Fees Are Part Of The Spread Spectrum Fees In The District Court Case ...................................................................................................................8

    E.    The Timekeepers' Total Hours and Their Billing Rates Are Reasonable And Customary in the Market ...........................................................................................9

III.    CONCLUSION ..................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
   5:04-CV-12-OC-10GRJ, 2008 WL 906739 (M.D. Fla. Apr. 2, 2008) .......................................... 10

*Blanchard v. Bergeron*,
   489 U.S. 87 (1989) ..................................................................................................................... 3

*Cotton v. City of Eureka, Cal.*,
   889 F. Supp. 2d 1154 (N.D. Cal. 2012) ................................................................................. 1, 2

*Democratic Party of Washington State v. Reed*,
   388 F.3d 1281 (9th Cir. 2004) ................................................................................................ 3, 4

*Halliburton Energy Servs., Inc. v. MI, LLC*,
   CIV.A.6:05-CV-155, 2006 WL 1004929 (E.D. Tex. Apr. 12, 2006) ........................................ 10

*Hnot v. Willis Group Holdings Ltd.*,
   2008 U.S. Dist. LEXIS 28312 (S.D.N.Y. Apr. 7, 2008) ............................................................ 3

*Howe v. Hoffman-Curtis Partners, Ltd. LLP*,
   2007 U.S. Dist. LEXIS 99244 (S.D. Tex. Apr. 13, 2007) .......................................................... 3

*In re Bluetooth Headset Products Liability Litigation*,
   654 F. 3d 935 (9th Cir. 2011) ..................................................................................................... 2

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ........................................................................................................ 9

*Lam, Inc. v. Johns-Manville Corp.*,
   718 F.2d 1056 (Fed. Cir. 1983) .................................................................................................. 2

*Mathis v. Hydro Air Indus. Inc.*,
   CV 80-4481, 1986 WL 84360 (C.D. Cal. Feb. 20, 1986) .......................................................... 7

*Mathis v. Hydro Air Indus.*,
   818 F.2d 874 (Fed. Cir. 1987) .................................................................................................... 7

*Mathis v. Spears*,
   857 F.2d 749 (Fed. Cir. 1988) .................................................................................................... 7

*Matlink, Inc. v. Home Depot U.S.A., Inc.*,
   07CV1994-DMS BLM, 2008 WL 8504767 (S.D. Cal. Oct. 27, 2008) ...................................... 7

*Micromesh Tech. Corp. v. Am. Recreation Products, Inc.*,
   C-06-6030 MHP, 2007 WL 2501783 (N.D. Cal. Aug. 30, 2007) .............................................. 7

*Monolithic Power Sys. v. 02 Micro Int'l.*,
   No. 4:08-cv-04567 CW at 15 (N.D. Cal. Mar. 3, 2011) .................................................................. 8

*Nikko Materials USA, Inc. v. R.E. Serv. Co.*,
   C 03-2549 SBA, 2006 WL 1749550 (N.D. Cal. June 22, 2006) ...................................................... 8

*Porzig v. Dresdner, Kleinwort, Benson, North America LLC*,
   497 F.3d 133 (2d Cir. 2007) ............................................................................................................. 3

*Real v. Continental Group, Inc.*,
   116 F.R.D. 211 (N.D. Cal. 1986) ...................................................................................................... 3

*Ruiz v. Estelle*,
   553 F. Supp. 567 (S.D. Tex. 1982) .................................................................................................. 4

*Stastny v. Southern Bell Tel. and Tel. Co.*,
   77 F.R.D. 662 (W.D.N.C. 1978) ...................................................................................................... 4

*Yufa v. TSI Inc.*,
   09-CV-01315-KAW, 2014 WL 4071902 (N.D. Aug. 14, 2014) ................................................... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In its Order of September 15, 2014, the Court held that "[b]ecause Linex repeatedly attempted to broaden the reach of its patents to capture technology it knew it did not invent, this case is exceptional," and "[a]n award of attorneys' fees on the spread spectrum claims is warranted." (Doc. No. 413, p. 12). The Court directed Defendants to "compile an accounting of fees limited to work on these claims, in sufficient detail to satisfy the Ninth Circuit's standard for fee awards." (Doc. No. 413, p. 13). This Supplemental Memorandum does so for counsel for Aruba Networks, Meru Networks, and Ruckus Wireless (collectively, the "wireless access point manufacturers" or "AP Manufacturers")--all of whom were ultimately represented by counsel from K&L Gates.

There were significant differences in the type of work performed by each of the defendants in the joint defense group. Very little of the work the AP Manufacturers did was directed at invalidity. Most of the fees the AP Manufacturers incurred was for work directed at non-infringement--and the bulk of that was directed at the claims as to which this Court granted summary judgment of non-infringement. Accordingly, the manner in which the AP Manufacturers have compiled their fees differs in material respects from Apple and HP's.[1]

## II. ATTORNEYS' FEES

### A. Legal Standard for Calculating Reasonable Fees

"In the Ninth Circuit, the proper method for determining reasonable attorneys' fees is to use the 'lodestar method.'" *Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1165 (N.D. Cal. 2012) (internal citations omitted).

---

[1] If this Court were to decide that a percentage-based approach was appropriate with respect to the AP Manufacturers instead of the precise division of fees detailed here, the AP Manufacturers would join with Apple and HP in requesting 53% of their total fees, or $3,198,266. This represents $1,769,472 to Aruba, $578,406 to Meru, and $850,387 to Ruckus.

- 1 -

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Products Liability Litigation*, 654 F. 3d 935 (9th Cir. 2011) (internal citations omitted).

"After deciding the appropriate hourly rate, the district court then examines the fee applicant's contemporaneously recorded billing records and exclude[s] from the lodestar amount hours that are 'excessive, redundant, or otherwise unnecessary.' Then, in appropriate cases, the district court may adjust the lodestar figure based upon . . . factors that were not subsumed into the initial lodestar calculation. There is a strong presumption that the lodestar figure represents a reasonable fee, and any upward or downward adjustment of that figure is proper only in 'rare and exceptional cases.'"

*Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1165 (N.D. Cal. 2012) (internal citations omitted). The fees awarded must be reasonable both in the rate charged and the number of hours spent. *See Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983).

Filed with this Supplemental memorandum is the Declaration of L. Scott Oliver, the AP Manufacturers' lead counsel, detailing the reasonable attorneys' fees in this case and the predecessor ITC Investigation for which the AP Manufacturers seek an award. In total, these defendants seek an award of $2,817,508 in attorneys' fees.[2] The Oliver Declaration

---

[2] Defendants' original Motion for Attorneys' Fees (Doc. Nos. 345) sought a fee award of $3.8 million for hours spent through the Court's entry of judgment in favor of Defendants HP, Apple, Aruba, Meru, and Ruckus and against Plaintiff Linex. The reduced number requested here, as detailed below, represents Defendants' withdrawal of fees relating to work on the ***non***-spread spectrum portion of the cases, expert fees and costs, as well as the deletion of fees from timekeepers who billed less than 25 hours on these cases.

(continued…)

- 2 -

Case4:13-cv-00159-CW   Document417-3   Filed10/17/14   Page7 of 17
*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

calculates these fees using the "lodestar" approach discussed above, provides evidence of their reasonableness, and attaches all the relevant time sheets.

### B. The Finnegan Firm's Fees are Relevant and Should Have Been Produced

Before filing this Memorandum, the AP Manufacturers asked Linex's counsel to disclose the total fees Linex has been charged in these litigations (or, to the extent the representation is all or in part a contingency arrangement, the hours and standard rates charged by Linex's counsel).[3]  (Ex. Q.)

It is black letter law that an opposing party's attorneys' fees are at a minimum a relevant data point in assessing whether the prevailing party's hours and rates were reasonable. *See, e.g., Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) ( "[T]here is one particularly good indicator of how much time is necessary ... and that is how much time the other side's lawyers spent"); *Hnot v. Willis Group Holdings Ltd.*, 2008 U.S. Dist. LEXIS 28312, at *9 (S.D.N.Y. Apr. 7, 2008) ("the amount that defense counsel actually charged defendants for its services…is a useful cross-check indicating that plaintiffs' request is not out of proportion to the magnitude of the litigation"); *Howe v. Hoffman-Curtis Partners, Ltd. LLP*, 2007 U.S. Dist. LEXIS 99244, at *3 (S.D. Tex. Apr. 13, 2007) ("To the extent defendants wish to argue the unreasonableness of plaintiffs' fees, discovery regarding their own fees is relevant and not unduly burdensome"); *Real v. Continental Group, Inc.*, 116 F.R.D. 211, 213 (N.D. Cal. 1986) ("the hours expended by the defendant on matters pertaining to this case, counsel's hourly rates, as well as total

---

(…continued)
Should the Court wish, the AP Manufacturers will submit marked-up time records showing the fees removed that related to invalidity issues, to the non-spread-spectrum claims, to the Paulraj patent, etc., as well as the timekeepers whose total work on these cases was less than 25 hours.

[3] It may be that the Finnegan firm has a contingent fee arrangement with Linex.  In contingent fee cases, courts determine the reasonable attorney fee award using the same lodestar approach--reasonable hours times reasonable rate--rather than assessing the amount of the contingency. *Blanchard v. Bergeron*, 489 U.S. 87, 94-96 (1989).  Courts have rejected the argument that the contingent fee provides a "cap" on a fee award.  *Blanchard*, 489 U.S. at 96; *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 142 (2d Cir. 2007).
Moreover, because the only award the ITC may make is an exclusion order, a contingent fee arrangement for the ITC portion of the case would underscore the exceptional nature of Linex's vexatious litigation campaign.  By definition, a contingent fee in an ITC case proves that the complainant and its counsel intended to use the threat of an exclusion order as a club to extort money from the respondents.

billings and costs, are at least minimally relevant to the plaintiffs' fees and costs petition"); *Ruiz v. Estelle*, 553 F. Supp. 567, 584 (S.D. Tex. 1982) ("Federal courts have repeatedly noted the value of information concerning the defendants' counsel's time expenditure, in assessing the reasonableness of time claimed by plaintiffs"); *Stastny v. Southern Bell Tel. and Tel. Co.*, 77 F.R.D. 662, 663 (W.D.N.C. 1978) ("In a contest over what time was reasonably and necessarily spent in the preparation of a case, it is obvious that the time that the opposition found necessary to prepare its case would be probative.")[4]

Linex refused to provide any of this information. The AP Manufacturers submit that because that information could have probative value in the Court's determination, the Court should either make a negative inference from the Finnegan firm's refusal to produce the information, or should order the Finnegan firm to produce time and rate information from the filing of the ITC case through the present.[5]

C. **District Court Fees Incurred in Defending Against the Groundless "Spread Spectrum" Claims**

The AP Manufacturers collectively spent $2,320,753 in this Court defending against Linex's claims. Of that total, $1,485,777 is attributable to the spread spectrum claims (claims 121, 131, and 132 of the '219 patent; claims 101 and 102 of the '812 patent). The vast majority of the discovery, claim construction, summary judgment, depositions, and trial preparation that the AP Manufacturers did was focused on the spread spectrum claims. While some of the non-infringement work the AP Manufacturers performed might have been potentially relevant to both the spread spectrum and to

---

[4] The AP Manufacturers expect that Linex will argue that not all of these cases include prevailing defendants, or that the cases are not patent disputes. Neither argument is relevant. Linex can cite no authority holding that the subject matter of the litigation matters in this analysis, and as the Ninth Circuit held in *Democratic Party of Washington State,* the relevant inquiry is not who was the plaintiff and who was the defendant, but rather, "how much time the ***other side's lawyers spent***" (emphasis added).

[5] As discussed below, Linex proposed, and the Defendants and the Court ultimately agreed, that the ITC discovery could be used in this case and that, for all purposes in this case, that discovery should be considered to be done in this case. For that reason, the fees in the Finnegan firm's accounting should include the ITC Investigation, since the discovery portion of the ITC case is effectively discovery that was taken for this case.

- 4 -

the non-spread spectrum claims, the AP Manufacturers have not included any fees in their request for work relevant only to the non-spread spectrum claims.

Some tasks that the AP Manufacturers performed were directed at the non-spread-spectrum claims, such as the analysis and argument relating to invalidity. The AP Manufacturers removed those fees from their request. For example, the AP Manufacturers removed all fees related in any way to invalidity arguments in the following (conservative) way: if any time entry referred to invalidity in any respect (including any reference to the Paulraj prior art patent on which the Court found invalidity of the non-spread-spectrum claims or to any other prior art), the ***entire*** time entry was removed--notwithstanding that there may have been other tasks identified within the same time entry that were unrelated to invalidity. And if any entry included work on the non-spread spectrum claims, it also was removed.[6]

The percentage of time that the AP Manufacturers spent defending against the spread spectrum claims is higher than that spent on invalidity or on non-infringement with respect to the non-spread-spectrum claims, because in this complex five-party case, the AP Manufacturers focused the bulk of their defense on non-infringement. Almost all of those non-infringement arguments focused on the spread-spectrum claims. As the Court recognized, the claim construction terms, and thus the infringement analysis, can be grouped into 4 buckets:

(a) "spread spectrum signals,"

(b) "codes,"

(c) "combining" terms, and

(d) "separating" terms.

---

[6] The AP Manufacturers have aimed to capture only the fees incurred in defending against the infringement contentions with respect to the spread-spectrum claims. The fact that this work might potentially have been also relevant to other issues should not detract from AP Manufacturers' ability to recover fees they incurred defending against the spread-spectrum claims.

- 5 -

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

The first, spread spectrum signals, by definition relates to the spread spectrum claims. And the remaining three terms also relate to the spread spectrum claims--*every one* of the asserted spread spectrum claims included "codes," "combining" terms and "separating" terms.[7]

In addition, a substantial portion of the technical analysis, expert reports, depositions and trial preparation was devoted to proving that OFDM as used in the 802.11n standard is not spread spectrum--and thus that there could be no infringement of the claims including a "spread spectrum" limitation. By way of example, and as discussed in the Apple and HP brief, approximately 51 pages of expert Dr. Acampora's report went to this issue, as did 37 pages of Linex expert Dr. Prucnal's-- and the majority of the deposition of the inventor, Dr. Schilling, was also focused on spread spectrum.[8]

Similarly, the written discovery, depositions, and damages analysis done by the AP Manufacturers was primarily driven by the spread-spectrum claims. The AP Manufacturers took and defended 19 depositions, they produced more than 1.3 million pages of documents, and they propounded and responded to 62 interrogatories (leaving aside 12 interrogatories related to invalidity). This work was required to defend against the infringement allegations with respect to the spread-spectrum claims.[9] Likewise, the damages analysis, expert reports, and motions to strike Linex's damage report were required to defend against the spread spectrum claims.

The AP Manufacturers have removed in their entirety all time entries that relate to invalidity, all time spent on depositions of invalidity experts, and all time spent on discovery related to

---

[7] In some cases, such as claims 101 and 102 of the '812 patent, the "combining" limitation appears in a dependent claim.

[8] The ultimately-withdrawn claims from the '322 patent also included "spread spectrum" and "combining" limitations.

[9] Certain portions of the Paulraj, Steer and Calderbank depositions were directed to invalidity questions, and the AP Manufacturers have deducted *all* of the time spent on those depositions to account for work not related to the spread spectrum non-infringement arguments.

invalidity.[10] The AP Manufacturers also have removed in their entirety all time entries that relate only to the non-spread-spectrum claims. The remaining fees, $1,485,777 are for work incurred to defend against the infringement allegations with respect to the spread spectrum claims and are properly awarded.

Finally, the AP Manufacturers include fees incurred in preparing and arguing their attorneys' fees petitions. That work totals $113,312 in fees. The AP Manufacturers reviewed hundreds of pages of detailed billing records from multiple law firms and timekeepers to remove work related to invalidity or only related to the non-spread-spectrum claims, or related to non-discovery issues in the ITC case, prepared around 680 pages of exhibits, and filed two briefs and five declarations. The AP Manufacturers are entitled to recover these fees because they are reasonable, and were incurred as a direct consequence of Linex pursuing meritless infringement allegations. Courts regularly award such fees. For example, in *Micromesh Tech. Corp. v. Am. Recreation Products, Inc.*, C-06-6030 MHP, 2007 WL 2501783 (N.D. Cal. Aug. 30, 2007), the court awarded all fees and costs incurred in prosecuting the fee motion. See also *Mathis v. Hydro Air Indus. Inc.*, CV 80-4481, 1986 WL 84360 (C.D. Cal. Feb. 20, 1986) aff'd sub nom. *Mathis v. Hydro Air Indus.*, 818 F.2d 874 (Fed. Cir. 1987) and aff'd and remanded sub nom. *Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988) ("It is proper to include in the award of attorney's fees the attorney time expended in connection with the Defendants' claim for attorney's fees"); *Matlink, Inc. v. Home Depot U.S.A., Inc.*, 07CV1994-DMS BLM, 2008 WL 8504767, at *6 (S.D. Cal. Oct. 27, 2008) (awarding "hours spent preparing [defendant's] application for fees and related reply" because "time spent litigating fee petitions is compensable"); *Nikko Materials USA, Inc. v. R.E. Serv. Co.*, C 03-2549 SBA, 2006 WL 1749550

---

[10] Dr. Anthony Acampora, the defendants' expert on non-infringement, spent a small percentage of his time working on invalidity matters. Again taking a conservative approach, the AP Manufacturers have removed 50% of the attorney time spent preparing for and defending his deposition. The same is true, and the same approach was employed, with Linex's expert, Dr. Prucnal.

(N.D. Cal. June 22, 2006) ("Plaintiff's request for fees incurred as a result of having to prepare and submit the instant attorney's fees documentation …is also reasonable.")

### D. ITC Discovery Fees Are Part Of The Spread Spectrum Fees In The District Court Case

The AP Manufacturers also seek recovery of their spread-spectrum discovery related fees in the ITC case, which total $1,218,419. The parties to this case (including Linex) stipulated, and this Court ordered, that certain discovery produced in the ITC matter by any party to this case "shall be treated ***as if it had been produced in this case***." Amended Stipulated Protective Order Regarding the Disclosure and Use of Discovery Materials (Doc. No. 194, p. 3) (emphasis added). Accordingly, the fees incurred in the ITC in connection with any such discovery are properly awarded here. The AP Manufacturers have removed all fees in the ITC case relating to anything other than discovery, all fees relating to invalidity, and all fees relating to invalidity discovery.[11] The remainder of the fees incurred in connection with the ITC discovery should be included in the fee award because such discovery "shall be treated as if it had been produced in this case."

Indeed, it was Linex, not Defendants, that proposed all discovery from the ITC case be used in this District Court action as if it had been taken in this case. The parties so stipulated and this Court so ordered. Like the deposition costs in *Monolithic Power Sys. v. 02 Micro Int'l.*, No. 4:08-cv-04567 CW, Document No. 449 [Order re Attorneys' Fees and Non-Taxable Costs], at 15-16 (N.D. Cal. Mar. 3, 2011), the agreement to import all ITC discovery into this action makes the fees for the ITC discovery recoverable in this case. *See also, Climax Molybdenum Co. v. Molychem, LLC*, 2007 WL 3256698, at *19 (D. Colo. 2007) ("Molychem is entitled to recover its attorneys' fees in defending this civil action and the ITC proceedings.").

---

[11] Dr. Acampora was also Defendants' expert in the ITC, and worked on both non-infringement and invalidity matters. As with his work in the District Court, the AP Manufacturers have conservatively deducted 50% the attorney time spent preparing for and defending his ITC deposition.

- 8 -

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

### E. **The Timekeepers' Total Hours and Their Billing Rates Are Reasonable And Customary in the Market**

The rates and hours billed by the K&L Gates firm, and the predecessor firms for Meru and Ruckus, are customary in the Northern California intellectual property litigation market.[12]

First, the total hours billed was reasonable. The Ninth Circuit considers several factors in determining the reasonableness of fees, including: (a) "the novelty and difficulty of the questions involved," (b) "the amount involved and the results obtained," (c) "the experience, reputation, and ability of the attorneys," (d) "the skill required to perform the legal service properly," and (e) "the time and labor required." *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

These factors support the AP Manufacturers' hours and rates. This case involved complex wireless networking technology, including its evolution over multiple standards and its implementation through multiple third party chips in dozens of products over the span of eight years. Linex's sweeping allegations created potentially large damages and future running royalties on the AP Manufacturers' products. The AP Manufacturers retained attorneys at large, nationally-recognized law firms with experience in high stakes intellectual property litigation. All of Linex's claims were either dismissed with prejudice or resolved on summary judgment, yet the district court litigation spanned more than two years, and the ITC case nearly an additional year. The asserted patents had long prosecution histories, requiring extensive study of the records before the Patent Office. The case also involved significant third party discovery on technical and financial issues because each of the Defendants purchased the accused technology from third party chip suppliers. Linex issued discovery that forced the AP Manufacturers to produce more than ***1.3 million pages*** of documents. Linex told the Court that it anticipated a three-week trial. And because all five

---

[12] The timekeepers' experience and qualifications, as well as the relevant timesheets, are detailed in the Oliver Declaration.

- 9 -

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

defendants were sued by Linex in the same action, attorneys for each party were required to coordinate with one another and review discovery served by or on any of them.

All of these factors support the reasonableness of the time the AP Manufacturers spent defending against Linex's meritless claims. *See Halliburton Energy Servs., Inc. v. MI, LLC*, CIV.A.6:05-CV-155, 2006 WL 1004929 (E.D. Tex. Apr. 12, 2006) (recognizing that "[t]he amount of time required to litigate complex patent cases is significant" and finding the hours expended were reasonable in part because of the plaintiff's representation by multiple firms and the number of documents produced and reviewed); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 5:04-CV-12-OC-10GRJ, 2008 WL 906739 (M.D. Fla. Apr. 2, 2008) (finding the amount of time expended—1092 partner hours, 1700 associate hours, 445.95 paralegal hours—reasonable in a complex case spanning more than two years).

Second, the AP Manufacturers' counsel's billing rates were reasonable, and are at or below prevailing market rates. Over the course of the litigation in the ITC and District Court, the billing rates for partners representing the AP Manufacturers ranged from ▮▮▮▮▮▮▮▮ net of discounts given to the clients. The American Intellectual Property Law Association's ("AIPLA") Report of the Economic Survey, 2013, cites median billing rates for IP partners in the Northern California market of ▮▮▮, and third quartile rates[13] of ▮▮▮. (*See* AIPLA Report of the Economic Survey, 2013, Table I-34, attached as Exh. P to the Oliver Declaration). The partner billing rates for the AP Manufacturers are in line with what is reasonable and customary in this market, and account for the fact that intellectual property litigation requires specialized knowledge. *See Yufa v. TSI Inc.*, 09-CV-01315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014).

---

[13] Given the importance of these cases to the AP Manufacturers and the potential damages exposure, they retained sophisticated and highly experienced counsel. We join with Apple and HP in submitting that the third quartile fees in the AIPLA report are a better gauge of reasonableness than the mean or median.

Third, the associates' billing rates are also well within the typical range. Associates working on the AP Manufacturers' defense had billing rates ranging from ▇▇▇▇ net of discounts. The AIPLA report finds that median associate rates in this market are ▇▇, and third quartile rates are ▇▇ (*See* Table I-48, attached as Exh. P to the Oliver Declaration).

Fourth, the ITC discovery-related fees are reasonable. Each of the AP Manufacturers was represented by different counsel in the ITC Investigation (Aruba was represented by K&L Gates; Meru was represented by Morrison Foerster; and Ruckus was represented by Lewis & Roca--but during the District Court case all three were ultimately represented by K&L Gates). Collectively, the AP Manufacturers spent $1,225,307 on ITC spread spectrum discovery-related fees. The AIPLA report finds that for an ITC case brought by a non-practicing entity, with $1 million to $10 million in dispute (a very conservative assumption) fees through the end of discovery have a mean of ▇▇▇▇, and a third quartile of ▇▇▇▇ (*See* Table I-153, attached as Exh. P to the Oliver Declaration).

Finally, the District Court fees are also reasonable and appropriate. The AP Manufacturers seek recovery of a total of $1,549,893 in fees related to the spread spectrum claims. The AIPLA report cites typical Northern California fees through the end of discovery for defense against a non-practicing entity patent suit at ▇▇▇▇, and a third quartile of ▇▇▇▇ and through trial, ▇▇▇▇ and ▇▇▇▇ (*See* Tables I-145 and I-146, attached as Exh. P to the Oliver Declaration). This case ended just before trial (indeed, the parties were drafting their motions in limine and exchanging exhibit lists when the Court issued its Order on summary judgment), and even discounting for the time that would have been spent in trial, the AP Manufacturers' fee request is reasonable.

### III. CONCLUSION

Linex asserted a slew of meritless claims against the AP Manufacturers. This Court awarded fees with respect to the portion of the case related to defending against Linex's baseless infringement

- 11 -

allegations with respect to the spread-spectrum claims. The AP Manufacturers have removed from the total fees they are seeking here all fees related to invalidity and all fees incurred solely in connection with non-spread spectrum claims. Because of the AP Manufacturer's focus in the joint defense, most of the fees incurred by the AP Manufacturers related to defending against Linex's infringement contentions with respect to the spread-spectrum claims.

The AP Manufacturers have also included fees incurred in connection with discovery in the ITC case that was relevant to defending against Linex's infringement contentions with respect to the spread-spectrum claims, because the parties agreed, and this Court ordered, that virtually all of that discovery from the ITC case be treated as if it had been taken in the District Court action.

The fees the AP Manufacturers now seek to recover represent reasonable hours and billing rates incurred in defending against Linex's spread spectrum claims.

Dated: October 17, 2014

_L. Scott Oliver_____

L. Scott Oliver
K&L GATES LLP
630 Hansen Way
Palo Alto, CA 94304
Telephone: (650) 798-6700
Facsimile: (650) 798-6701
Email: scott.oliver@klgates.com

Michael J. Bettinger (SBN 122196)
Shane Brun (SBN 179079)
Meghana RaoRane (SBN 253531)
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: 415.882.8200
Facsimile: 415.882.8220
mike.bettinger@klgates.com
shane.brun@klgates.com
meghana.raorane@klgates.com

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

1
2
3
4

Eric C. Rusnak (*Pro Hac Vice*)
K&L GATES LLP
1601 K Street, NW
Washington, DC 20006
Telephone: 202.778.9000
Facsimile: 202.778.9100
eric.rusnak@klgates.com

5
6
7

**Attorneys for Defendants**
*Aruba Networks, Inc.*
*Meru Networks, Inc.*
*Ruckus Wireless, Inc.*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28