[COUNSEL LISTED ON SIGNATURE PAGE]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| LINEX TECHNOLOGIES, INC.,<br><br>    Plaintiff,<br>v.<br>HEWLETT-PACKARD COMPANY, APPLE INC., ARUBA NETWORKS, INC., MERU NETWORKS, INC., RUCKUS WIRELESS, INC.,<br>    Defendants. | CASE NO. 4:13-cv-00159-CW (MEJ)<br><br>**APPLE'S AND HEWLETT-PACKARD'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF THE AWARD OF ATTORNEYS' FEES UNDER 35 U.S.C. § 285** |

This Court has already determined that Linex's repeated attempts "to broaden the reach of its patents to capture technology it did not invent" render this case "exceptional" under 35 U.S.C. § 285. (Dkt. No. 413 at 12.) Accordingly, the Court awarded fees incurred by the Defendants "fairly attributable" to Linex's assertion of its "spread spectrum" claims in this litigation. (*Id.*) All that remains is an accounting of compensable fees. (*Id*. at 12-13.) Consistent with the Ninth Circuit's standards for fee awards, Apple and Hewlett-Packard Co. request, respectively, $2,093,318.25[1] and $1,969,005.83. These amounts reflect 53% of the fees each incurred in defending this action and a discounted amount of the fees they incurred in bringing their fee and cost petitions. In the alternative, and as a reasonableness check, Apple and HP have also provided specific calculations resulting from a careful analysis of each time entry, which would result in a higher award.

### I. Ninth Circuit Law Supports a Fee Award Equal to 53% of the Attorneys' Fees Incurred By Apple and Hewlett-Packard in this Case.

In the Ninth Circuit, reasonable attorneys' fees are determined by first calculating the "lodestar." *See Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *See Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). There is a strong presumption that the lodestar figure represents a reasonable fee. *See Jordan*, 815 F.2d at 1262. In this case, however, the lodestar amount must be reduced to reflect the fact that Apple and HP sought, and the Court granted, only the attorneys' fees associated with Linex's assertion of its "spread spectrum" claims in this action.

---

[1] This amount reflects the addition of fees incurred in connection with preparing the Bill of Costs, briefing and oral argument on the Defendants' Motion for Attorneys' Fees Under 35 U.S.C. Section 285, and the document review and production performed by DiscoverReady, LLC in this court action.

1
APPLE & HP'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF THE AWARD OF ATTORNEYS' FEES UNDER 35 U.S.C. § 285
CASE NO. 13-CV-00159-CW

Here, an award of 53% of Apple and HP's total fees is warranted and fair. Linex asserted ten "spread-spectrum" patent claims out of a total of nineteen asserted patent claims.[2] In other words, 53% of Linex's asserted claims were "meritless," representing Linex's "overall vexatious litigation strategy." (Dkt. No. 413 at 12.)

Ninth Circuit precedent supports percentage-based fee awards, particularly where line-by-line analysis of the fees incurred is not practicable. *See, e.g.*, *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) ("[P]ercentages . . . are acceptable, and perhaps necessary, tools for district courts fashioning reasonable fee awards."). In *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1157 (9th Cir. 2002), the Ninth Circuit approved the district court's percentage-based calculation of attorneys' fees where, as in this case, the defendant was only entitled to fees on some of the plaintiff's claims. For example, the court applied a 30% reduction to the total fees sought on trademark-claim work because the defendant was only entitled to fees attributable to two of the three trademark claims litigated. *See id.*; *see also Apple, Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK PSG, 2012 WL 5451411, at *9-10 (N.D. Cal. Nov. 7, 2012) (awarding fees to Apple for one of the four issues argued in its motion to compel and "adopt[ing] Apple's method of dividing the total fees for the motion by four"—the number of issues in the motion to compel—"to determine the amount to which it is entitled"); *Designing Health Inc. v. Erasmus*, No. CV 98-4758 LGB (CWX), 2003 WL 25902463, at *21-31 (C.D. Cal. May 1, 2003) (holding that the parties' percentage-based estimates regarding amount of time spent on various claims were reasonable).

Awarding a percentage of fees is also consistent with the Supreme Court's recognition that "[a] request for attorney's fees should not result in a second major litigation" and that a "claim-by-claim" analysis is often difficult and unnecessary where there are overlapping facts and theories.

---

[2] Each of the three patents Linex asserted in this district court action was, in part, entitled "Spread Spectrum . . . Method" and each patent contained "spread spectrum" claims. The asserted spread spectrum claims were: claims 9-10 of US Patent No. 6,575,322 patent, claims 121, 131-33, 144-45 of RE 42,219, and claims 101-102 of RE 43,812.

*Hensley v. Eckerhart*, 461 U.S. 424, 435, 437 (1983) ("[A] lawsuit cannot be viewed as a series of discrete claims.").

A percentage-based fee calculation is particularly appropriate in this case. First, any other approach to fee calculation would be unwieldy given the voluminous fee application. *See Gates*, 987 F.2d at 1399 (stating that "in cases where a voluminous fee application is filed . . . the district court is not required to set forth an hour-by-hour analysis of the fee request"; instead, "the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure"). Linex sued five defendants in the same, consolidated case. Six law firms and dozens of attorneys represented the various Defendants over the life of the case, totaling more than ten thousand hours worked on the case. Defendants have submitted thousands of pages of detailed, contemporaneous time records, maintained in different ways according to client preference and firm practice. *See Cairns*, 292 F.3d at 1157 ("The District Court found that the unusually large number of hours and timekeepers made application of the traditional lodestar method unworkable."). There is no efficient, straightforward, consistent method for compiling or reviewing these records.

Second, the compensable fees are not readily derived by a line-by-line analysis or keyword search of the billing records. As is customary in the industry, the billing records detail, to the tenth of an hour, the amount of time spent on each litigation-related task, not each patent claim. *See id.* (affirming district court's award of 70% of fees because only two-thirds of the asserted claims were exceptional, without undertaking an analysis of specific work attributable to those claims); s*ee also Hensley*, 461 U.S. at 435 (recognizing that separation of issues in calculating a fee award is not always possible). Thus, some approximation is necessary and appropriate here to calculate the fees attributable to the spread-spectrum claims. *See, e.g.*, *David Austin Roses, Ltd. v. Jackson & Perkins Wholesale, Inc.*, No. CIV. 09-3027-PA, 2010 WL 555674, at *2 (D. Or. Feb. 16, 2010) (awarding the plaintiff 70% of fees incurred in the case where the plaintiff was entitled to fees on a patent claim but not a contract claim, even though plaintiff's billing records did not separate work on the patent claim from work on the contract claim).

Third, a review of the parties' filings confirms the proportional importance of the spread-spectrum issues to Linex's case. For example, in his opening report's "General Description of the Technologies at Issue," Linex's expert Dr. Paul Prucnal devoted 33 of 41 pages to spread-spectrum issues.[3] In his response, Dr. Anthony Acampora, the Defendants' rebuttal expert, dedicated most of the contested portion of his overview of the relevant technology to spread spectrum and how it compares to OFDM and 802.11n.[4] Moreover, a substantial majority of the technical issues discussed in Dr. Donald Schilling's deposition related to spread spectrum.[5] Thus, awarding a little more than half of Apple's and HP's attorneys' fees actually underestimates the outsized role Linex's spread-spectrum claims played in the litigation.

Finally, as a matter of policy, courts should employ a percentage-based approach in cases such as this one in the interest of judicial economy and to avoid further burden to the prevailing party. In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court substantially altered the standard for parties seeking to recover fees under section 285. *See* 134 S. Ct. 1749, 1756 (2014); (Dkt. No. 413 at 6-7.). Ultimately, that ruling should deter litigants from bringing suit without careful investigation and should reduce the number of meritless patent litigation suits. In the meantime, to achieve that end, courts will be required to determine fee awards with increased regularity—a trend that has already begun. *See, e.g.*, *Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703, at *15 (N.D. Cal. Aug. 12, 2014) (granting defendant's motion for

---

[3] Additionally, Dr. Prucnal devoted another 4 of the 41 pages to "[t]ransmission of an 802.11n MIMO Signal," which focused largely on whether certain processing steps in an 802.11n system transform an OFDM signal into a spread-spectrum signal. (*See* Dkt. No. 268-8.)

[4] Dr. Acampora's 95 page overview (pages 22 through 118 of his rebuttal report) included 34 pages on spread spectrum (pages 66-100), 12 pages comparing OFDM and 802.11n to spread spectrum (pages 100-112), and 5 pages explaining why channel coding does not spread the bandwidth (pages 45-50). The remaining portions of his background were devoted largely to uncontested wireless communication fundamentals.

[5] Spread spectrum and features Linex linked to spreading (e.g error coding, interleaving, IDFT/IFFT processing, P codes, training signals, and/or pilot signals) are discussed on a substantial majority of the pages in the technical portion of Dr. Schilling's deposition transcript.

attorneys' fees); *Romag Fasterners, Inc. v. Fossil, Inc.*, No. 3:10CV1827 JBA, 2014 WL 4073204, at *11 (D. Conn. Aug. 14, 2014) (same); *Summit Data Sys., LLC v. EMC Corp.*, No. CV 10-749-GMS, 2014 WL 4955689, at *5 (D. Del. Sept. 25, 2014) (granting defendant's motion for attorneys' fees and costs and ordering plaintiff to pay $1,395,514.62 plus any additional expenses incurred in filing the motion); *Intellect Wireless, Inc. v. Sharp Corp.*, No. 10 C 6763, 2014 WL 2443871, at *9 (N.D. Ill. May 30, 2014) (granting defendant's motion for attorneys' fees); *Classen Immunotherapies, Inc. v. Biogen Idec*, No. CIV. WDQ-04-2607, 2014 WL 2069653, at *6 (D. Md. May 14, 2014) (granting defendant's motion for attorneys' fees and ordering plaintiff to pay all fees and expenses incurred after a certain date); *Precision Links Inc. v. USA Products Grp.*, Inc., No. 3:08-CV-00576-MR, 2014 WL 2861759, at *5 (W.D.N.C. June 24, 2014) (awarding $165,260.70 for defendant's reasonable attorneys' fees); *Home Gambling Network Inc., v. Piche*, No. 2:05-CV-610-DAE, 2014 WL 2170600, at *13 (D. Nev. May 22, 2014) (granting motion for fees); *Lumen View Tech., LLC v. Findthebest.com, Inc.*, No. 13 CIV. 3599 DLC, 2014 WL 2440867, at *7 (S.D.N.Y. May 30, 2014) (holding defendant entitled to attorneys' fees); *Falana v. Kent State Univ.*, No. 5:08 CV 720, 2014 WL 3788695, at *25 (N.D. Ohio July 31, 2014) (awarding attorneys' fees to plaintiff); *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. CV 11-1175-RGA, 2014 WL 4675002, at *3 (D. Del. Sept. 12, 2014) (granting defendant's motion for fees); *Parallel Iron LLC v. NetApp Inc.*, No. CV 12-769-RGA, 2014 WL 4540209, at *8 (D. Del. Sept. 12, 2014) (granting defendant's motion for fees).

Cases deemed "exceptional" under section 285 because they never should have been brought in the first place should not impose additional burdens on either the courts or the prevailing parties merely to determine the compensable fees. *See Hensley*, 461 U.S. at 435 (1983) (stating request for fees should not result in a "second major litigation"); *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) ("[W]here a voluminous fee application is filed in exercising its billing judgment the district court is not required to set forth an hour-by-hour analysis of the fee request").

5
APPLE & HP'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF THE AWARD OF ATTORNEYS' FEES UNDER 35 U.S.C. § 285
CASE NO. 13-CV-00159-CW

**II. Apple's And HP's Request Is Conservative, Because Linex's Assertion of the Spread-Spectrum Claims Resulted in Over 53% of the Incurred Fees.**

As noted above, the spread-spectrum claims were the heart of Linex's allegations, receiving disproportionate emphasis in expert reports, fact and expert depositions, claim construction, and summary judgment briefing, among other things. An award of "half a loaf" excuses Linex from paying fees that the Court could properly award to the Defendants. Analysis of the specific, contemporaneous billing records, should the Court prefer this approach, demonstrates that more than 53% of the incurred fees are "fairly attributable" to the spread spectrum claims.

**A. Review of Apple's Contemporaneous Billing Records Supports an Award of Greater than 53% of its Fees.**

Apple's overall defense fees for the district court litigation amounted to more than $4 million.[6] In an effort to limit the fee award and identify the work "fairly attributable to the spread spectrum claims," Apple has undertaken a laborious, line-by-line analysis of more than 6,500 billing entries. That process resulted in Apple's removal of the following fees, even though many of those fees are fairly attributable to work on the spread-spectrum claims and Linex's "vexatious litigation conduct" that rendered this an exceptional case under section 285:

- all fees incurred in the ITC proceeding, even though much of that discovery (including document collection and review, and many depositions) and other work was used in this litigation;
- fees incurred in drafting the answer, the motion to stay pending the related ITC proceeding; and the motion to transfer the case from Delaware to the Northern District of California;
- all fees incurred before January 7, 2013, when the case was transferred to the Northern District of California and Apple retained separate counsel from HP;
- work specifically recorded as directed to the non-spread-spectrum claims (such as the Paulraj reference found to anticipate the non-spread-spectrum claims);
- work exclusively recorded as directed to the "invalidity" aspects of the case (even the invalidity of the spread-spectrum claims);
- fees for attorneys and litigation support personnel who performed limited work on this case, including junior associate time;

---

[6] As noted, Apple has only requested recovery of a portion of its fees applying various voluntary discounts and write-offs to its request under either methodology.

6
APPLE & HP'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF THE AWARD OF ATTORNEYS' FEES UNDER 35 U.S.C. § 285
CASE NO. 13-CV-00159-CW

- transition time when Apple retained attorneys at WilmerHale;
- certain administrative and internal organizational tasks, including work requested by Apple for case management purposes, work related to extensions of page limits, time or scheduling issues, and work undertaken to accommodate client or attorney preferences (such as organization of or training on new databases);
- certain background research work, including research on wireless technology and Linex's patent portfolio;
- all fees associated with an appeal of this Court's Summary Judgment Order;
- work not adequately described in time entries to convey the work performed;
- non-working attorney travel time (to depositions, meetings with witnesses, for court hearings, joint defense group meetings, and mediation);
- additional time deemed duplicative or unrelated to Linex's assertion of the spread-spectrum claims, or voluntarily discounted from the bills.[7]

After discounting those fees, the remaining fees incurred by Apple amount to $3,039,658.11.[8] In sum, and as detailed in the accompanying Declaration of Elizabeth M. Reilly and supporting exhibits thereto, these remaining fees reflect, among other things:

- work done to serve and respond to discovery requests;
- preparation for and appearance at depositions;
- preparation for and appearance at hearings;
- attorney-client, joint defense group, and third party communications;
- participation in the court-ordered mediation;
- study and analysis of the Linex patents, their prosecution histories, and the record from Linex's previous two assertions of these patents or others from the same family;
- development of non-infringement theories;
- research regarding the development of the 802.11n standard;
- fact and expert discovery on technical issues (unless focused only on the non-spread-spectrum claims), including third party discovery and research into a technical advisor for the Court;
- fact and expert discovery on damages (as this was not a bifurcated case and Linex's damages theory did not distinguish among any of the originally asserted patents);
- pre-trial preparation, including preparation of witnesses, demonstrative exhibits for trial, *Daubert* motions, motions in limine, deposition designations, trial exhibits, jury instructions, and other pre-trial submissions in process when the Court issued its summary judgment order; and,

---

[7] While many of these fees are compensable, Apple has elected not to seek them in an effort to be conservative and reasonable in its request, taking into account the unique circumstances of this case, and mindful of both the Court's written order and its statements during oral argument.

[8] This total reflects discounted fees from Milbank ($802,849.40), WilmerHale ($1,992,221.05) and DiscoverReady, LLC, a document review vendor, for its fees in reviewing and producing documents during the district court litigation in the amount of $244,587.66. Transition time between the firms is not included in the fee request.

7
APPLE & HP'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF THE AWARD OF ATTORNEYS' FEES UNDER 35 U.S.C. § 285
CASE NO. 13-CV-00159-CW

- a discount of fees incurred in connection with filing for costs and attorneys' fees under section 285.

Apple has provided the Court with contemporaneous time records from documenting each of these fees, as well as summary exhibits in a further attempt to organize the entries for Linex and the Court.[9] (*See* Declaration of Elizabeth M. Reilly and exhibits attached thereto.) Calculating Apple's fees from this analysis of the billing records, plus the fees incurred in connection with submission of the Bill of Costs and Motion for Attorneys' Fees Under 35 U.S.C. § 285, results in a total award to Apple of $3,357,496.53. (*See* Reilly Decl., Exs. A, D-F)

### B. Review of HP's Contemporaneous Billing Records Supports an Award of Greater than 53% of its Fees.

HP's total legal fees for defending the district court portion of this litigation amount to approximately $3,400,539.40. As detailed in the accompanying Declaration of Laura E. Muschamp and its supporting exhibits, HP has, informed by the task coding of its responsible attorneys, been able to divide its fees into two categories. "Category A" consists of tasks that were heavily influenced by Plaintiff's spread-spectrum claims. With respect to Category A fees, the majority of fees (considerably in excess of 53%) were required by Linex's spread-spectrum claims and should be shifted to Linex under the Court's Order. "Category B" reflects tasks influenced to a lesser extent by the spread-spectrum claims such that a smaller percentage of fees should be shifted. In addition, HP has removed all fees for tasks performed by attorneys and staff who only had limited involvement in this action and is not seeking any fees for the ITC proceeding.

Category A tasks include: (a) affirmative and responsive discovery; (b) deposition tasks, including preparing for and taking or defending depositions in this case; (c) expert discovery; (d) research and analysis related to the prior art, invalidity and alleged infringement; (e) claim construction briefing and the *Markman* hearing; (f) summary judgment; and (g) trial preparation.

---

[9] Unlike HP, the fees incurred by Apple were not uniformly recorded with task codes in a manner that allows them to be easily categorized for this submission. Among other reasons, Apple was represented by different firms over the life of this litigation who were subject to different billing requirements. Even so, Apple endeavored to organize the fees as reflected in the exhibits attached to the Declaration of Elizabeth M. Reilly.

8
APPLE & HP'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF THE AWARD OF ATTORNEYS' FEES UNDER 35 U.S.C. § 285
CASE NO. 13-CV-00159-CW

1  The total amount of fees in Category A is $2,767,493.25. Defendants were required to devote extensive time and resources to these tasks because of Linex's assertion of the spread-spectrum claims. In particular, in an attempt to read its spread-spectrum claims on Defendants' OFDM systems, Linex contrived multiple alternative infringement theories, each of which Defendants were forced to rebut. Moreover, in preparing their invalidity case, Defendants were forced to look for and chart not only prior art that combined true spread-spectrum technology (i.e., technology that persons of ordinary skill would recognize as such) with MIMO, but also prior art that combined MIMO with spread-spectrum technology as *Linex* construed it in the service of its infringement contentions. Linex's multiple infringement theories also greatly compounded the complexity of the Defendants' formulation of a trial strategy in presenting both non-infringement and invalidity arguments. (*See* Muschamp Decl., 8-9) HP estimates that between 65% and 75% of the fees in Category A, or $1,798,870.61 and $2,075,619.94, is fairly attributable to Linex's spread-spectrum claims.

Category B includes such tasks as (a) drafting and responding to various pleadings; (b) document collection and review; (c) procedural deposition tasks related to scheduling and logistics; (d) time spent on legal research and analysis that was not related to either prior art, infringement or invalidity; (e) time spent on mediation and working toward settlement; (f) time spent on case administration; and (g) time spent in internal strategy meetings among HP's counsel, in coordination meetings with the joint defense group, and in meetings with opposing counsel. Because the strategy meetings, document review and other Category B tasks required HP to take into account the spread-spectrum claims, HP estimates that approximately 15% of the fees in Category B are fairly attributable to the spread-spectrum claims. (*See* Muschamp Decl., 10) The total amount of fees in Category B is $1,189,787.25; 15% of this amount is $178,468.09.

Overall, HP estimates that between $1,977,338.70 ($1,798,870.61 + $178,469.09) and $2,254,088.03 ($2,075,619.94 + $178,468.09) of its total district court litigation fees are fairly attributable to Linex's spread-spectrum claims, or between 58% and 66% of its total fees.

HP also seeks an addition $166,719.95, which are the fees incurred in connection with HP's request for attorney's fees.

9
APPLE & HP'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF THE AWARD OF ATTORNEYS' FEES UNDER 35 U.S.C. § 285
CASE NO. 13-CV-00159-CW

HP has provided the Court with contemporaneous time records and summary exhibits documenting and organizing these fees.[10]

### III. Apple and HP's Attorneys' Hours and Rates Were Reasonable

Under either a percentage-based approach or calculations resulting from an analysis of each time entry, Apple's and Hewlett-Packard's requested fees are reasonable in relation to the "difficulty, stakes, and outcome of the case." *See, e.g.*, *Rice v. Sunrise Express, Inc.*, 237 F. Supp. 2d 962, 975 (N.D. Ind. 2002). The Ninth Circuit considers several factors in determining the reasonableness of a requested fee award, including: (a) "the novelty and difficulty of the questions involved," (b) "the amount involved and the results obtained," (c) "the experience, reputation, and ability of the attorneys," (d) "the skill required to perform the legal service properly," and (e) "the time and labor required." *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Analysis of these factors supports Apple's and HP's request. This case involved particularly complicated WiFi technology, including its evolution over multiple standards and its implementation through multiple third-party chips in dozens of disparate products over the span of eight years.

---

[10] As noted, Apple's and HP's request includes the fees incurred preparing the attorneys' fee petition, Bill of Costs, and appearing for oral argument. Defendants have filed four briefs, ten declarations, and dozens of exhibits in support of their request. In addition, Defendants were required to review hundreds of pages of billing records to determine how best to apportion work on the spread-spectrum claims and to identify privileged information in the time entries prior to their filing. These fees are the direct result of Linex's pursuit of the infringement allegations the Court found "meritless." The fees are also reasonable in light of the number of documents filed, the length of the billing records, and the Ninth Circuit's requirements for fee petitions. Courts inside and outside this circuit regularly award fees for such expenditures. For example, in *Micromesh Tech. Corp. v. Am. Recreation Products, Inc.*, No. C-06-6030 MHP, 2007 WL 2501783, at *10 (N.D. Cal. Aug. 30, 2007), the court awarded all fees and costs incurred in prosecuting the fee motion. *See also Mathis v. Hydro Air Indus. Inc*., No. CV 80-4481, 1986 WL 84360, at *1 (C.D. Cal. Feb. 20, 1986) ("It is proper to include in the award of attorney's fees the attorney time expended in connection with the Defendants' claim for attorney's fees."), *aff'd sub nom. Mathis v. Hydro Air Indus*., 818 F.2d 874 (Fed. Cir. 1987), *aff'd and remanded sub nom. Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988); *Matlink, Inc. v. Home Depot U.S.A., Inc*., No. 07CV1994-DMS BLM, 2008 WL 8504767, at *6 (S.D. Cal. Oct. 27, 2008) (awarding "hours spent preparing [defendant's] application for fees and related reply" because "time spent litigating fee petitions is compensable"); *Nikko Materials USA, Inc. v. R.E. Serv. Co*., No. C 03-2549 SBA, 2006 WL 1749550, at *7 (N.D. Cal. June 22, 2006) (awarding fees incurred as a result of having to prepare and submit attorneys' fees documentation). Thus, Apple and HP respectfully request the award of these fees as well.

Linex's sweeping allegations meant a high dollar exposure for Defendants, including tens of millions of dollars in past damages and a high running royalty for future products.  Like Linex and the other Defendants, Apple and HP retained attorneys at large, nationally-recognized law firms with significant experience in high-stakes intellectual property litigation.  All of Linex's claims were either dismissed with prejudice or resolved on summary judgment.

      Finally, the case required significant time and labor.  The litigation spanned more than two years.  But Linex's suit in this Court was preceded by assertion of many of the same claims in two previous actions, which required familiarity with the record in those proceedings.  The asserted patents had long prosecution histories, requiring extensive study of the records before the Patent Office.  The case also involved significant third-party discovery on technical and financial issues, particularly because each Defendant purchased the accused technology from chip suppliers.  Linex's opening technical expert report for its primary expert, Dr. Prucnal, was 156 pages long and attached multiple appendices and over 20 exhibits setting forth his infringement opinions for the accused products.  Linex served an additional report from a second expert analyzing source code to support its infringement contentions.  Its damages report was 125 pages long, with 117 pages attached as exhibits.  Linex itself anticipated a three-week trial in this Court.  And, because Linex sued all five defendants in the same action, attorneys for each party were required to coordinate with one another and review discovery served by or on any of them, and to undertake extensive efforts to protect the confidentiality of their own information as well as that of the other Defendants.  Each of these factors supports the reasonableness of the fees Apple and HP incurred in defending against Linex's claims.  *See Halliburton Energy Servs., Inc. v. MI, LLC*, No. CIV.A.6:05-CV-155, 2006 WL 1004929, at *3 (E.D. Tex. Apr. 12, 2006) (recognizing that "[t]he amount of time required to litigate complex patent cases is significant" and finding the hours expended were reasonable in part because of the plaintiff's representation by multiple firms and the number of documents produced and reviewed); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, No. 5:04-CV-12-OC-10GRJ, 2008 WL 906739, at *5 (M.D. Fla. Apr. 2, 2008) (finding the amount of time expended—1092 partner hours, 1700 associate hours, 445.95 paralegal hours—reasonable in a complex case spanning

11

more than two years); *see also WBIP, LLC v. Kohler Co.*, No. CIV.A. 11-10374-NMG, 2014 WL 4471412 (D. Mass. Sept. 8, 2014) (finding the lodestar amount requested by Plaintiff reflected a reasonable number of hours worked on a "complex, hard-fought patent litigation").

Finally, objective criteria confirm that the specific rates charged by Defendants' attorneys in this case are consistent with prevailing rates of similarly-experienced attorneys in the San Francisco area, particularly those representing clients in intellectual property litigation. The American Intellectual Property Law Association (AIPLA) reported that the market rate for partners based in San Francisco and partners nationwide at law firms with more than 150 full-time intellectual property attorneys (as is true of both Apple's and HP's attorneys) was more than $800 per hour in 2012.[11] The AIPLA further reported that the average hourly billing rate in 2012 for associates in San Francisco ranged from $321 to $576.[12] These rates account for the fact that the field of intellectual property law requires specialized knowledge. *See Yufa v. TSI Inc.*, No. 09-CV-01315-KAW, 2014 WL 4071902, at *5 (N.D. Cal. Aug. 14, 2014). The hourly rates charged by attorneys for Apple and Hewlett-Packard range between $209 and $1124 per hour, almost entirely falling within the ranges reported above.[13] The rates Apple and HP seek to recover are also consistent with rates recognized as reasonable by other courts in similar intellectual property litigation. *See Monolithic Power Sys.,*

---

[11] The AIPLA report lists the average hourly billing rate in 2012 for San Francisco-based partners as $825 per hour in the third quartile and the average hourly billing rate in 2012 for partners at law firms with more than 150 full-time IP lawyers as $800 per hour in the third quartile). It is appropriate for partners with significant levels of experience to earn on the higher end of that range, as was the case here. For example, Dominic Massa—whose average hourly rate charged in this case was $805 per hour—is a WilmerHale partner with more than 20 years of experience as a litigator, with a focus on intellectual property litigation. He has served as lead trial counsel on many district court patent litigation matters and has argued numerous cases before the U.S. Court of Appeals for the Federal Circuit. Mr. Massa also has an undergraduate degree in electrical engineering.

[12] The report also stated that the average hourly billing rate in 2012 for associates in law firms with more than 150 IP lawyers ranged from $345 to $595.

[13] The fact that some of the requested rates fall at the top of the range reported does not render them unreasonable because "the complexity of the subject matter, the high stakes of the case, and the contentiousness of the dispute" support such charges. *Biax Corp. v. NVIDIA Corp.*, No. 09-CV-01257-PAB-MEH, 2013 WL 4051908, at *7 (D. Colo. Aug. 12, 2013).

1  *Inc. v. O2 Micro Int'l Ltd.*, No. 08-04567 CW, 2012 WL 161212, at *3 (N.D. Cal. Jan. 17, 2012)
2  (awarding similarly high attorneys' fees for work done by the law firm that now represents Linex,
3  Finnegan, Henderson, Farabow, Garrett & Dunner), *aff'd*, 726 F.3d 1359 (Fed. Cir. 2013), *cert.*
4  *denied*, 134 S. Ct. 1546 (2014); *WBIP, LLC v. Kohler Co.*, No. CIV.A. 11-10374-NMG, 2014 WL
5  4471412, at *1-2 (D. Mass. Sept. 8, 2014) (awarding attorneys rates up to $735 an hour for work on
6  "hard-fought patent litigation" in Boston).  Individual attorney rates, including descriptions of each
7  attorney's qualifications, are provided in the declarations accompanying this submission.

## IV.    Conclusion

For the foregoing reasons, the Court should award $2,093,318.25 to Apple and $1,969,005.83 to HP as reasonable attorneys' fees for defending against Linex's meritless "spread spectrum" claims.

Dated:  October 17, 2014

*s/ Elizabeth M. Reilly*

Mark D. Selwyn
Andrew Liao
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304

William F. Lee
Dominic E. Massa
Elizabeth M. Reilly
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109

Martin Gilmore
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

**Attorneys for Defendant**
 *Apple Inc.*

*/s/ Laura E. Muschamp*
Michael K. Plimack
mplimack@cov.com
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA  94111-5356
Telephone:  (415) 591-6000
Facsimile:  (415) 591-6091

Alan H. Blankenheimer
ablankenheimer@cov.com
Laura E. Muschamp
lmuschamp@cov.com
Sara J. O'Connell
soconnell@cov.com
COVINGTON & BURLING LLP
9191 Towne Centre Drive, Suite 600
San Diego, CA 92122
Telephone: (858) 678-1800
Facsimile: (858) 678-1600

Robert T. Haslam
rhaslam@cov.com
Deanna Kwong
dkwong@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065

13

APPLE & HP'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF THE AWARD OF ATTORNEYS' FEES UNDER 35 U.S.C. § 285
CASE NO. 13-CV-00159-CW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Alexander D. Chinoy (*Pro Hac Vice*)
achinoy@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401

**Attorneys for Defendant**
*Hewlett Packard Company*