MICHAEL J. BETTINGER (SBN 122196)
MEGHANA RAORANE (SBN 253531)
K&L GATES LLP
4 Embarcadero Center, Suite 1200
San Francisco, California 94111-5994
Telephone: 415.882.8200
Facsimile: 415.882.8220
mike.bettinger@klgates.com
shane.brun@klgates.com
meghana.raorane@klgates.com

L. SCOTT OLIVER (SBN 174824)
K&L GATES LLP
630 Hansen Way
Palo Alto, California 94304
Telephone:  650-798-6700
Facsimile:  650-798-6701
scott.oliver@klgates.com

ERIC C. RUSNAK (ADMITTED PRO HAC VICE)
K&L GATES LLP
1601 K Street, NW
Washington, DC 20006
Telephone: 202.778.9000
Facsimile: 202.778.9100
eric.rusnak@klgates.com

*Attorneys for Defendant*
*ARUBA NETWORKS, INC.*
*MERU NETWORKS, INC.*
*RUCKUS WIRELESS, INC.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LINEX TECHNOLOGIES, INC.,<br><br>             Plaintiff,<br>       v.<br><br>HEWLETT-PACKARD COMPANY, APPLE INC., ARUBA NETWORKS, INC., MERU NETWORKS, INC., RUCKUS WIRELESS, INC.,<br><br>             Defendants. | CASE NO. 4:13-cv-00159-CW (MEJ)<br><br>**ARUBA NETWORK'S INC.'S REPLY TO LINEX'S SUPPLEMENTAL BRIEF IN OPPOSITION TO ARUBA, MERU, AND RUCKUS'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF AWARD OF ATTORNEYS' FEES** |

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **INTRODUCTION**

Linex's opposition to Aruba's[1] supplemental submission on fees muddies the waters by misconstruing the Court's order, proposing additional and unnecessary apportionment theories, misunderstanding and/or failing to adequately respond to Aruba's arguments, and failing to identify comparable benchmark billing rates—all in an attempt to further reduce the fees that this Court found were recoverable, and which Linex undeniably owes.  Consistent with this Court's Order and the Ninth Circuit's standard for fee awards, the Court should order Linex to pay Aruba $923,800.86 for the fees incurred in defending the spread spectrum claims in the N.D. Cal., $55,368.25 for the fees incurred in preparing its attorneys' fees petition in the N.D. Cal., and $504,380.49 for discovery related fees incurred in the ITC proceeding.  The fees Aruba requests are warranted, reasonable, and recoverable.

II. **ARGUMENT**

A. **Aruba's Fee Request Is Limited To Spread-Spectrum Claims.**

In its September 15, 2014 Order ("Order"), this Court held that "[b]ecause Linex repeatedly attempted to broaden the reach of its patents to capture technology it knew it did not invent, this case is exceptional," and found that "[a]n award of attorney's fees on the spread spectrum claims is warranted."  (Doc. No. 413, p. 12).  The Court added that "[b]ecause [it] has now determined that only the fees fairly attributable to the spread spectrum claims can be recovered, each Defendant is directed to compile an accounting of fees limited to work on these claims, in sufficient detail to satisfy the Ninth Circuit's standard for fee awards."  (Doc. No. 413, p. 12-13).

---

[1] On January 15, 2015, after Linex filed its Opposition to Aruba, Meru, and Ruckus (the "AP Manufacturers") Supplemental Memorandum on Attorneys' Fees Under 35 U.S.C. §385, this Court granted Linex Technologies, Inc.'s, Meru Networks, Inc.'s, and Ruckus Wireless's stipulations to dismiss with prejudice all claims asserted by Linex against Meru and Ruckus, as well as Meru's and Ruckus's counterclaims.  *See* Docket Nos. 473 and 474. All parties agreed to bear their own fees and costs.  As such, Aruba Networks, Inc. is the only remaining AP Manufacturer seeking to recover fees in accordance with this Court's September 15, 2014 Order.

The fees that Aruba requests are "fairly attributable to the spread spectrum claims," and indeed are "limited to work on these claims." In compiling its accounting of fees, Aruba satisfied the Ninth Circuit's standard for fee awards by following the Ninth Circuit's lodestar method and providing Linex with detailed billing records supporting Aruba's requests.

### 1. Linex's Assertion that Fees Related to Spread Spectrum Claims are Limited to Infringement is Incorrect Because the Court Did Not Limit Fee Recovery to Issues of Infringement.

Linex's assertion that the Order limits recovery to "fees related to infringement specific to the spread-spectrum issues," (Doc. No. 439, p. 4), is unwarranted and simply incorrect. The Order unambiguously states that "[a]n award of attorney's fees on the spread spectrum claims is warranted," and permits recovery of "fees fairly attributable to the spread spectrum claims," (Doc. No. 413, p. 12-13), which Aruba incurred while performing discovery and case management tasks and handling infringement and damages issues. Nowhere in the Order does the Court limit recovery to infringement. Nor can such a limitation be found given the plain language of the Order, *supra*. In arguing that "fees related to issues other than infringement . . . must be excluded" (Doc. No. 439, p. 4) Linex makes an unfounded leap from the language of the Order, and manufactures a limitation that the Court did not impose. In accordance with the Order, Aruba has painstakingly reviewed and conservatively edited its billing records to remove entries relating to invalidity and non spread spectrum claims, and only seeks recovery of fees attributable to work related to the spread spectrum claims.

In support of its argument, Linex identifies four phases in a typical patent case: 1) discovery and case management, 2) infringement, 3) invalidity, and 4) damages; and summarily concludes that Aruba is only entitled to spread spectrum-related *infringement* work. (Doc. No. 439, p. 4). Linex fails to explain why Aruba is not entitled to fees for the spread spectrum issues that were part of the discovery, case management, and damages aspects of this litigation. Indeed, the Court's Order is not so limiting. Instead, Linex cites to the other defendants' submissions stating that they "concede that [certain case management and discovery related] tasks can be excluded from the accounting." (Doc. No. 439, p. 4-5). However, those defendants explicitly acknowledge that those fees were removed

"even though many of those fees are fairly attributable to work on the spread-spectrum claims and Linex's 'vexatious litigation conduct' that rendered this an exceptional case under section 285." (Doc. No. 423, p. 6; Doc. No. 468, p. 6).

Linex's assertion that "the discovery on the AP Defendants' accused products was not performed to determine if the signals received by the accused products met the 'spread spectrum' limitation, but was primarily performed to confirm that the accused products met *other* limitations in the claims," (Doc. No. 439, p. 5), is unsupported and incorrect. First, it is undeniable that Linex requested technical discovery from Aruba in order to determine how the accused products functioned and the types of signals they processed. Second, as the Court recognized, the claim construction terms, and hence the infringement analysis, can be grouped into four categories: (1) "spread spectrum signals," (2) "codes," (3) "combining" terms, and (4) "separating" terms. (Doc. No. 413, p. 5). It is indisputable that the first term—"spread spectrum signals"—relates to the "spread spectrum claims" covered by the Court's Order. (Doc. No. 413, p. 12-13). Every one of the asserted spread spectrum claims includes the remaining terms. Consequently, almost all of the non-infringement work related to the spread spectrum claims, even if it also related to one of the non-spread spectrum terms as well. The fact that there is overlap between the spread spectrum claims and the non spread spectrum terms does not preclude Aruba from recovering fees on all spread spectrum aspects of this case. Linex asserts that Aruba is not entitled to fees for discovery performed relating to the "codes," "combining," and "separating" terms. However, as discussed above, every one of the spread spectrum claims includes those three other terms. The Court's Order is clear that "fees fairly attributable to the spread spectrum claims" are recoverable. *Id.*

Linex concedes that it was highly relevant to determine how Aruba's accused products received and processed signals. And the manner of processing the signals was critical to determining whether the implemented technology was OFDM or traditional Spread-Spectrum (*See* Doc. No. 439, p. 4). Indeed, Linex extensively deposed third-party chip manufactures on those very issues. (*See e.g.* 30(B)(6) Deposition of Qualcomm Atheros, attached as Exh. A to the Oliver Declaration). Similarly, Aruba incurred discovery fees in order to support its non-infringement

- 3 -
ARUBA'S REPLY TO LINEX'S SUPPLEMENTAL BRIEF IN OPPOSITION TO ARUBA, MERU,AND RUCKUS'S SUPP. SUBMISSION ISO AWARD OF ATTORNEYS' FEES – Case No.4:13-cv-00159-CW

positions with respect to the spread spectrum claims—and that discovery was not only necessary, it was vital.

Finally, Linex's argument that Aruba cannot recover fees for work relating to damages is misplaced. Aruba conducted all damages-related work with the expectation that if the Court found infringement—including infringement of the spread spectrum claims for which the court granted recovery of fees—damages would be assessed. Under controlling Federal Circuit damages law, assessments had to be made regarding the value of the claimed invention and the accused functionality. *See Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F. 3d 1308, 1327 (Fed. Cir. 2014) (requiring "that a patentee identify damages associated with the smallest salable patent-practicing unit"). Thus, the damages-related work is inextricably linked to the infringement analysis, and cannot be excised whole.

In its Order, the Court discussed damages only in the context of whether Linex's expert report on damages constituted "an alternative ground for finding the case exceptional." (Doc. No. 413, p. 11). Linex claims that Aruba is not entitled to recover damages-related fees because the Court "did not find Linex's damages theories unreasonable." (Doc. No. 439, p. 6) But, the Court did not reach a decision regarding the reasonableness of Linex's damages theories. The Order merely states that "[b]ecause the record upon which a decision on damages would be made was never fully developed, the Court [could] not determine whether Linex's damages demand was unreasonable." (Doc. No. 413, p. 11). As such, there is nothing in the Order precluding Aruba from recovering fees related to the damages aspects of the spread spectrum claims.

### 2. Aruba's Degree of Success Is Already Accounted For, and No Additional Apportionment is Required.

Aruba's request for fees related to the spread spectrum claims *is already* proportionate to its degree of success, and no further apportionment is required. Linex argues that "[t]he amount of attorneys' fees that can be awarded in a case must be proportionate to the degree of success of the prevailing party," (Doc. No. 439, p. 3) and on that bases proposes apportioning fees by either 11% or 7%. The Court's Order already accounts for Aruba's success by ruling in Aruba's favor on summary judgment and by finding the case exceptional. Further, because the fee award is premised

- 4 -

on Linex's continued assertion of groundless spread spectrum claims, Linex's purported degree of success on the non spread spectrum terms is irrelevant.

Additionally, the Court also specifically accounted for Aruba's degree of success by stating that it "adopted constructions similar to Linex's proposals for "codes," the "combining" terms, and the "separating" terms, but adopted Defendants' proposed construction for "spread spectrum signals." (Doc. No. 413, p. 5). And because it found some of the asserted claims containing the term "spread spectrum signals" not infringed, and other terms containing the term "spread spectrum signals" invalid, it "therefore entered judgment in favor of Defendants on all asserted claims." (Doc. No. 413, p. 5). Thus, the Court agreed that Aruba was successful with regard to the "spread spectrum signals" claims. And its Order limiting fees to the spread spectrum claims accounts for that success.

Further, in light of the detailed billing records submitted by Aruba, the apportionments proposed by Linex are unnecessary. Linex attempts to use apportionment as an approximation tool. By proposing apportionment, Linex attempts to remove fees attributable to those infringement related issues on which the Aruba was purportedly not successful, i.e. the non-spread spectrum claims. However, since Aruba has already reviewed its records and removed from its billing records entries relating to those non-spread spectrum claims and invalidity, approximations through apportionment are unnecessary. Finally, Linex's calculations apportion fees which already incorporate a discount related to the non spread spectrum claims, thereby deducting fees related to the non spread spectrum claims twice, and resulting in an incorrect calculation.

If the Court deems that a percentage based approach is necessary, it should not adopt the apportionments Linex proposes because they are incorrect. Instead, the percentage should be calculated based on fees that include the non spread spectrum claims. Additionally, the Court should award Aruba 53% of its fees in line with the arguments presented by codefendants Apple and HP (Doc. No. 423, p. 1-5; Doc. No. 468, p. 2-5). Linex attempts to manufacture artificial metrics unrelated to Aruba's success, and  muddy the waters by arguing that the Court should apportion fees by 11%-7% because Linex "won 8 of the 9 disputed claim terms," and that the Court only awarded

fees on one of 14 claim elements. As discussed, *supra*, the fees claimed by Aruba already account for its success, and no further apportionment is necessary.

### B. **Aruba's Fees Sought for Preparing Request for Fees are Reasonable.**

The fees Aruba seeks for preparing its request for fees is reasonable. Linex argues that the fees awarded to Aruba for preparing its original fees motion should be apportioned because Aruba asked for almost all its fees, and the Court only awarded fees relating to the spread spectrum claims. However when Aruba prepared its original petition for fees, it made a broad request for all fees in the litigation,[2] in which spread spectrum was an overarching theme (Doc. No. 353; Doc. No. 381-4). Only after the Court issued its Order directing Aruba to compile the fees related only to the spread spectrum claims did Aruba distinguish its request for fees that were related to spread spectrum, and those that were not. To prepare its supplemental submissions, Aruba engaged in the careful task of reviewing all its billing records, removing entries relating to invalidity and non-spread spectrum claims, reducing 50% of the fees to account for portions of a time entry not directed to a spread-spectrum claim or discovery in the ITC proceeding, and highlighting relevant entries. Aruba did not undertake the same detailed process when it submitted its original, broad petition for fees[3]. For that reason, and for the reasons discussed in section A. 2., *supra*, further apportionment of the fees sought by Aruba for preparing its original fees petition would be inaccurate and lead to an incongruous result.

Linex also argues that Aruba does not provide any justification for seeking "close to double the fees that co-defendant Meru sought associated with filing a request for attorneys' fees." As is evidenced by the mere size of the filed exhibits, Aruba's billing records and invoices are more voluminous than those of Meru, and it took Aruba much longer to review and compile all its records and make its submissions. Hence, its claimed fees are higher. Finally, for the reasons discussed in section E., *infra*, the billing rates charged by K&L Gates are well within or under market rates, and

---

[2] Aruba only removed from its petition fees incurred after the expert discovery cutoff in the ITC Investigation, and applied a 25% reduction to its pre-cutoff fees to account for the fact that fees for invalidity, non-infringement and domestic industry were mixed in most time entries.

[3] Had Aruba apportioned its original request to fees relating only to the spread spectrum claims, it would have cost *more* time and *more* money to prepare the original petition, not *less*.

Linex's argument that the Court should apply an across-the-board discount of 30% is unsubstantiated.[4]

### C. Aruba's ITC Fees are Recoverable.

Aruba's ITC discovery fees are recoverable. The parties—including Linex—agreed to import certain ITC discovery into this action; and this Court ordered that the discovery be "treated as if it had been produced in this case." Amended Stipulated Protective Order Regarding the Disclosure and Use of Discovery Materials (Doc. No. 194, p. 3). That stipulation and order makes the fees for the ITC discovery recoverable in this case. *See e.g. Monolithic Power Sys. v. 02 Micro Int'l.*, No. 4:08-cv-04567 CW, Document No. 449 [Order re Attorneys' Fees and Non-Taxable Costs], at 15-16 (N.D. Cal. Mar. 3, 2011). That no court found the ITC case exceptional or awarded fees in the ITC case does not nullify the stipulation and order treating the ITC discovery as it if had been produced in this case, and is of no consequence. Likewise, that this Court relied on the ITC investigation to award fees in this case, albeit in the context of examining Linex's conduct in that case and not with regard to discovery overlap, has no impact on the stipulation and order to treat the ITC discovery as if it had been produced in this case, and has no bearing here. Thus, Aruba's ITC discovery fees, which it has clearly highlighted for the Court, are recoverable.

### D. Finnegan's Bills are Relevant.

Aruba maintains that Finnegan's total fees and rates should be produced. Linex's attempt to distinguish the cases cited by Aruba, on the basis that the non-prevailing parties in those cases voluntarily produced their bills or that the non-prevailing party argued that the prevailing party's fees were unreasonable based on their own fees, is irrelevant. Those distinctions have no bearing on the fact that the non-prevailing parties' fees nevertheless constituted a relevant data point in assessing whether the prevailing party's rates were reasonable. *See, e.g., Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) ( "[T]here is one particularly good indicator of

---

[4] Linex also asserts that the billable rates for certain attorneys are higher than those included in the Oliver Declaration. Since those purportedly different rates relate only to Meru's fees request, this Court has since dismissed this litigation with regard to Meru, and Meru has agreed to bear its own fees and costs, Linex's argument is no longer relevant.

how much time is necessary ... and that is how much time the other side's lawyers spent"). Linex claims that Aruba's attorneys' fees are excessive and unreasonable given the attorneys' positions and years of experience. (Doc. No. 439, p. 11). But as a competitor law firm operating in the same legal markets (including Northern California), it is highly certain that the Finnegan firm's billing rates are similar, if not higher, than those at K&L Gates. The Finnegan firm's total fees and rates are relevant and should be produced as a data point to confirm that the fees requested by Aruba are reasonable.

### E.     Aruba's Billing Rates are Reasonable.

Aruba's billing rates are precisely in line with billing rates for IP practitioners in the Northern California market. The lower rates that Linex references are simply the billing rates of all IP practitioners who have practiced for a certain number of years, regardless of the market in which they practice. As is apparent in the AIPLA survey referenced both by Aruba and by Linex, billing rates vary greatly by location. (*See* AIPLA Report of the Economic Survey, 2013, Tables I-34 and I-48, attached as Exh. P to Doc. No. 417-27). For instance, billing rates in the Southeast of the United States are among the lowest in the country. *Id.* Whereas billing rates in major markets such as Boston, New York City, and San Francisco are much higher. *Id.* Indeed, the billing rates for IP practitioners in the Northern California market are the highest in the country. *Id.* For IP partners in the Northern California market, the median billing rate is $680, and the third quartile rate is $825. *Id.* However, the billing rates for IP partners representing Aruba ranged only from $414-$734. For IP associates in the Northern California market, the median rate is $513, and the third quartile rate is $576. *Id.* However, the billing rates for associates representing Aruba ranged only from $383-$405. Because Linex fails to identify the comparable rate in the AIPLA survey, its argument that the billing rates for the attorneys at the K&L Gates firm are "excessive and unreasonable," and are "significantly above market rates," is unsupported. (Doc. No. 439, p. 11, 14). In fact, the billing rates for the attorneys at the K&L law firm are below market rates, and Linex has no excuse not to pay fees charged at those rates. Indeed, Linex should be required to produce the Finnegan firm's billing rates which are likely comparable, if not higher, to the rates charged by the K&L Gates firm, since both firms have similar practices and compete in the same legal markets.

### III. CONCLUSION

For the foregoing reasons, and the reasons discussed in Aruba's Supplemental Memorandum on Attorneys Fees (Doc. No. 417-4) and Addendum to Supplemental Memorandum on Attorneys Fees (Doc. No. 429), the Court should award Aruba the fees it properly requests under this Court's Order.

Dated: February 4, 2015                                    K&L GATES LLP


                                                           _/s/ L. Scott Oliver_____
                                                           L. Scott Oliver
                                                           630 Hansen Way
                                                           Palo Alto, CA 94304
                                                           Telephone: (650) 798-6700
                                                           Facsimile: (650) 798-6701
                                                           Email: scott.oliver@klgates.com

                                                           Michael J. Bettinger (SBN 122196)
                                                           Meghana RaoRane (SBN 253531)
                                                           K&L GATES LLP
                                                           4 Embarcadero Center, Suite 1200
                                                           San Francisco, California 94111-5994
                                                           Telephone: 415.882.8200
                                                           Facsimile: 415.882.8220
                                                           mike.bettinger@klgates.com
                                                           meghana.raorane@klgates.com

                                                           Eric C. Rusnak (*Pro Hac Vice*)
                                                           K&L GATES LLP
                                                           1601 K Street, NW
                                                           Washington, DC 20006
                                                           Telephone: 202.778.9000
                                                           Facsimile: 202.778.9100
                                                           eric.rusnak@klgates.com


                                                           **Attorneys for Defendants**
                                                           *Aruba Networks, Inc.*
                                                           *Meru Networks, Inc.*
                                                           *Ruckus Wireless, Inc.*